David Borgen (SBN 99354)
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Jay Angoff (D.C. Bar 248641)
Cyrus Mehri (D.C. Bar 420970)
Steven Skalet (D.C. Bar 359804)
MEHRI & SKALET PLLC
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036
Tel: (202) 822-5100

Attorneys for Plaintiff
*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA STEVENSON,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE CO., and ALLSTATE INDEMNITY CO.,<br><br>    Defendants. | Case No.: 3:15-cv-04788<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. **Violation of the Unfair Competition Law – Commission of Unlawful Business Act or Practice Cal. Bus. & Prof. Code § 17200** *et seq.*<br><br>2. **Violation of the Unfair Competition Law – Commission of Unfair Business Act or Practice Cal. Bus. & Prof. Code § 17200** *et seq.*<br><br>3. **Violation of the Unfair Competition Law – Commission of Fraudulent Business Act or Practice Cal. Bus. & Prof. Code § 17200** *et seq.*<br><br>4. **Unjust Enrichment**<br><br>5. **Violation of the False Advertising Law Cal. Bus. & Prof. Code § 17500** *et seq.*<br><br>6. **Violation of Cal. Ins. Code § 1861.10** |

Plaintiff Andrea Stevenson ("Plaintiff"), brings this action on behalf of herself and all others similarly situated against Defendants Allstate Indemnity Company and Allstate Insurance Company (collectively referred to herein as "Allstate"). Plaintiff, through undersigned counsel, alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## NATURE OF THE ACTION

1. In California, as in other states, drivers are required to maintain auto insurance. For many consumers, who may own more than one vehicle, auto insurance costs take up a considerable portion of a household's monthly budget.

2. Auto insurance companies are not permitted to determine auto insurance premiums on the basis of what the market will bear.

3. Instead, all states have laws requiring that auto insurance companies, including Defendants, calculate premiums based on the risk presented by the policyholder, meaning those objectively discernible characteristics or facts about the insured person which directly impact the likelihood of a covered event occurring (and thus, the cost to the insurer of providing the offered insurance).

4. This case arises from Defendants' practice of using the policyholder's willingness to tolerate a price increase as a factor in calculating premiums, even though Defendants' use of that factor has nothing to do with a person's risk characteristics and has neither been filed with nor approved by the California Department of Insurance ("Department").

5. Using a policyholder's willingness to tolerate a price increase--more technically, the policyholder's elasticity of demand--as a factor in calculating premiums harms policyholders who Defendants judge to be less price-sensitive and more loyal to Defendants: they pay more than they would pay if Defendants did not use the policyholder's willingness to tolerate a price increase as a factor in calculating premiums.

6. Defendants have compiled or reviewed data indicating that people with certain (non-risk based) characteristics are willing to pay more than they should pay based on the risk they present. That data indicates, among other things, that their most loyal customers are willing to pay more than

1

new customers who present the same risk.

7. The use of elasticity of demand as a rating factor thus results in the Defendants' most loyal customers paying more than they would pay based on the risk they present.

8. Defendants have not disclosed their use of elasticity of demand as a rating factor to the Department, and the Department has not approved its use.

9. In their marketing materials, Defendants intentionally omit and fail to disclose their use of the policyholder's elasticity of demand as a rating factor in determining auto insurance premiums.

10. Plaintiff and members of the Class have paid higher prices for their insurance coverage than have other insureds who present the same risk presented by Plaintiff.

11. Plaintiff brings this action on behalf of herself and other similarly situated insureds for violation of California's Unfair Competition law and False Advertising Law, violation of California Insurance Code Section 1861.10, and for unjust enrichment.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Defendants. Moreover, this Court also has jurisdiction over the state law claims by supplemental jurisdiction under 28 U.S.C. § 1367.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Northern District of California, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

14. Plaintiff Andrea Stevenson is a citizen of the State of California and is a customer of Defendants. Ms. Stevenson resides in Richmond, California in the County of Contra Costa.

15. Plaintiff has been a loyal customer of Defendants for more than 25 years.

16. Plaintiff has purchased auto insurance from Defendants. Currently, Plaintiff purchases

2

1    auto insurance for one vehicle from Defendants.

2          17.      Defendants have never notified Plaintiff that they are charging her more than other

3 policyholders presenting the same risk because of her willingness to tolerate a price increase.

4          18.      As explained in more detail below, Plaintiff has been injured in fact and directly harmed

5 as a result of Defendants' failure to disclose their practice of using elasticity of demand as a rating

6 factor.

7          19.      A direct causal relationship exists between Defendants' unlawful conduct and the

8 ascertainable losses suffered by Plaintiff and the Class. Had Defendants' use of elasticity of demand

9 as a rating factor been disclosed, Plaintiff (and other Class members) would have paid less for auto

10 insurance.

11          20.      Defendants Allstate Indemnity Company and Allstate Insurance Company are Illinois

12 corporations with their principal place of business in Illinois. Allstate Insurance Company and Allstate

13 Indemnity Company issue automotive insurance in various states, including California, and throughout

14 the country.

15          21.      Consumers obtain auto insurance via Allstate agencies, independent agencies and

16 Allstate exclusive financial representatives, as well as via www.allstate.com and 1-800 Allstate®.

17 **COMMON FACTUAL ALLEGATIONS**

18 **How Auto Insurance Premiums Are Set in California**

19 **Establishing the Base Rate**

20          22.      Auto insurance premiums in California are set pursuant to a two-step process. First, the

21 insurer must calculate a base rate, which is the same for each policyholder and represents the total

22 annual premium that the insurer must charge in order to cover expenses and obtain a reasonable rate

23 of return. The insurer must obtain the Department's approval of its base rate by filing a rate

24 application. Cal. Ins. Code § 1861.05 (West).

25          23.      Cal. Code Regs. Tit. 10, § 2644.1 *et seq*. sets forth the standards governing the base

26 rate. In the rate application, the insurer seeks the Department's approval of the base rate, but it does

27 not seek the Department's approval of the rating factors it will apply to the base rate to calculate

28

individual premiums.

## Applying Rating Factors to the Base Rate to Calculate Premiums

24. The second step in establishing auto insurance premiums in California is applying rating factors to the base rate in order to produce the premium. California law defines "rating factor" as "any factor, including discounts, used by an insurer which establishes or affects the rates, premiums, or charges assessed for a policy of automobile insurance." Cal. Code Regs. Tit. 10, § 2632.2(a).

25. California also requires insurers to submit a separate filing, called a class plan, which discloses the rating factors the insurer uses and explains how those rating factors are applied to the base rate to produce individual premiums. Cal. Code Regs. Tit. 10, § 2632.11.

26. In California, three mandatory rating factors are authorized by statute: mileage driven, driving record, and years of driving experience. Cal. Ins. Code § 1861.02(a).

27. The statute also authorizes the Commissioner to adopt additional rating factors by regulation. Cal. Ins. Code § 1861.02(a)(4). The Department has promulgated a regulation setting forth the rating factors insurers are permitted to use, Cal. Ins. Code § 2632.5(d), and has specifically provided that "No insurer shall use a rating factor which is not set forth in these regulations." Cal. Code Regs. § 2632.4(a).

28. The Commissioner has not adopted elasticity of demand as a rating factor, and thus does not permit insurers to use elasticity of demand to "establish[] or affect[] the rates, premiums, or charges assessed for a policy of automobile insurance." Cal. Code Regs. § 2632.2(a).

29. In California, insurers, including Defendants, are also barred from using any rating factor that does not bear a substantial relationship to the risk of loss. Cal. Ins. Code § 1861.02(a)(4); Cal. Code Regs. Tit. 10, § 2632.4(b).

30. California law also provides that "no insurer may hereafter use a class plan, or charge or collect a premium which does not comply with" the California Insurance Code or the regulations of the Department of Insurance. Cal. Code Regs. Tit. 10, § 2632.10(a).

31. California law also directs that "[n]o person, insurer or organization shall willfully withhold information from, or knowingly give false or misleading information to, the commissioner or to any rating organization, advisory organization, insurer or group, association or other

4

596321.1

organization of insurers, which will affect the rates, rating systems or premiums for the classes of insurance to which the provisions of this chapter are applicable." Cal. Ins. Code § 1859.

<u>**The Use of Elasticity of Demand as a Rating Factor**</u>

32. "Elasticity of demand" is the technical term for an individual's sensitivity to price changes.

33. An individual whose demand is elastic is sensitive to price changes, *i.e.*, he or she will seek insurance elsewhere in response to a relatively small price increase. The more sensitive the individual is to price changes – *i.e.*, the smaller the increase in price that will cause the individual to shop – the more elastic is that individual's demand.

34. Conversely, an individual whose demand is inelastic is relatively non-sensitive to price changes – he or she is relatively unlikely to seek insurance elsewhere in response to a price increase. The more the insurer can raise its prices to such an individual without causing him or her to switch carriers, the more inelastic that individual's demand is. By using elasticity of demand as a rating factor, Defendants charge customers whose demand is inelastic—who are unlikely to seek insurance elsewhere in response to a price increase—more than customers who are likely to shop around in response to a price increase, all other things being equal. Defendants' customers whose demand is inelastic thus pay prices that are higher than they would have paid based on the risk they present, and higher than they would have paid in accordance with the class plan Defendants filed with the Department and that the Department approved.

35. Defendants did not disclose in their class plan their use of elasticity of demand as a rating factor to the Department, and the Department did not approve Defendants' use of elasticity of demand as a rating factor.

<u>**California Has Specifically Prohibited the Use of Elasticity of Demand as a Rating Factor, As Have Other States**</u>

36. The term commonly used by insurance companies and insurance regulators for the use of elasticity of demand as a rating factor is "price optimization." On February 18, 2015, the California Department of Insurance issued a bulletin (the "Bulletin") announcing that "any use of Price Optimization in the ratemaking/pricing process or in a rating plan is unfairly discriminatory in

violation of California law," and ordering any insurer using price optimization to discontinue doing so. The Bulletin defines "price optimization" as "any method of taking into account an individual's or class's willingness to pay a higher premium relative to other individuals or classes." It also notes that "price optimization does not seek to arrive at an actuarially sound estimate of the risk of loss and other future costs of a risk transfer."

37. The California Department of Insurance further explained how price optimization works in a press release accompanying its Bulletin:

> Because price optimization does not use actuarially sound methods to estimate the risk of loss, its use in the ratemaking process is unfairly discriminatory and violates California law. Insurers have utilized price optimization by applying sophisticated models that allow them to identify trends that predict at what price point a consumer would terminate his or her policy or comparison shop. Insurers have relied on these complex models to price policies based on what they believe a consumer will pay, instead of risk based factors as required by law.

38. The Insurance Departments of Delaware, the District of Columbia, Florida, Indiana, Maine, Maryland, Ohio, Pennsylvania, Rhode Island, Vermont and Washington have also issued bulletins finding that price optimization is unlawful.

**Consultants Have Pitched the Use of Elasticity of Demand as a Rating Factor to Insurers On The Basis That It Will Increase Their Profits**

39. Consulting companies have collected extensive data on the elasticity of demand of people with various characteristics and have developed analytic software systems for insurers to use this data (and/or data collected by the insurers themselves) in setting premiums. They market their services to insurers to assist them in incorporating elasticity of demand into their premium-setting methodologies.

40. One such consulting company is Earnix Ltd. ("Earnix"), which was founded in 2001 and has its United States headquarters in Westport, CT.

41. Earnix states that its software enables insurers to "go beyond traditional risk cost pricing, incorporating demand elasticity models to maximize profit and growth objectives." It explains

6

that "[i]n today's competitive insurance market, traditional ratemaking based on risk and cost alone is no longer sufficient." *See* Earnix Brochure, "Insurance Pricing and Customer Value Optimization", at p. 2, available at http://earnix.com/download/EarnixInsuranceSolutions.pdf.

42. The reason traditional cost-based ratemaking is no longer sufficient, according to Earnix, is that "[t]here are cases in which consumers may be willing to pay a higher price than what insurers are charging." https://www304.ibm.com/software/brandcatalog/puresystems/centre/details?uid=GSD_11719.

43. A trade publication has characterized Earnix as "applying predictive analytics to the insurance and financial industries to identify various pain points—areas where clients can raise prices without impacting customer retention." *See* http://data-informed.com/earnix-develops-predictive-analytics-optimized-pricing-for-insurers/.

44. According to Earnix, "[t]he financial benefits of price optimization can be significant" for its insurer clients. *See* Earnix Brochure, "Price Optimization in North America: Myth vs. Reality", September 2012, at p. 2. "Companies that adopt optimization as a pricing strategy can realize improvement of 1-4 points in the combined ratio . . . ." *Id.*

45. Other consultants have also boasted about how their technology enables insurers to earn higher profits than they could earn under the traditional lawful cost-based pricing. For example, in a 2007 brochure, consulting company Towers Watson explained that:

> Traditionally, many industries, including the insurance industry, have priced their goods and services based on supply-side factors (cost to produce the product plus a margin for profit). However, this cost plus profit approach leaves a lot of money on the table in the form of lower margins from existing customers.

46. Defendants have used the software package offered by consulting company Earnix Ltd. to assist them in incorporating elasticity of demand into their premium-setting methodologies.

**Defendants Hide Their Use of Elasticity of Demand as a Rating Factor From Their Customers and Regulators**

47.     Defendants provide customers and potential customers with information regarding their auto insurance policies, practices, and rates via marketing materials, including Allstate's website, www.allstate.com.

48.     Yet, Defendants hide their use of elasticity of demand as a rating factor from customers and potential customers.

49.     For instance, Defendants maintain a page on their website titled "Understanding Your Car Insurance Quote." *See* http://www.allstate.com/tools-and-resources/car-insurance/understanding-your-online-car-insurance-quote.aspx.

50.     On that website page, Defendants include a section that purports to explain "How a car insurance quote is determined."

51.     In that section, Defendants state: "The quote you receive is impacted by the following factors:  Your driving record. Your past insurance claims history. Your vehicle type and value. Included safety features in your car, which could effectively limit the extent of bodily damage you suffer in an accident.  Included security features in your car, such as anti-theft alarms or devices, which are likely to have an impact on preventing your car from being stolen. Where you live, which could directly influence the safety of your car with respect to theft and certain natural disasters. How often you drive, which tells an insurance company how frequently your car is exposed to risk."

52.     Defendants do not inform insureds that they are using elasticity of demand as a rating factor.

53.     Defendants' website also includes a page entitled "How Much Can Car Insurance Cost?" *See* http://www.allstate.com/tools-and-resources/car-insurance/car-insurance-cost.aspx.  On that page, Defendants again list the rating factors they use with the exception of elasticity of demand.

54.     Defendants' website also includes a page entitled "Many Factors Affect Your Auto Insurance Premium." *See* http://www.allstate.com/tools-and-resources/car-insurance/factors-affect-your-auto-insurance.aspx.  On that page, Defendants again list the rating factors they use, with the exception of elasticity of demand.  *Id*.

55.     Consultants have also boasted about the fact that the use of elasticity of demand as a rating factor is hidden from regulators.

56. For example, in a presentation to the National Association of Insurance Commissioners Study Group (NAIC), price optimization consulting company Towers Watson stated in writing that the "regulatory process remains the same" because there is "[n]o easy way to see if a company is or is not using the tool."

## Allstate's Use of Elasticity of Demand as a Rating Factor

57. Defendants' parent company, The Allstate Corporation, has admitted to using elasticity of demand as a rating factor in its annual Form 10-K reports to the Securities and Exchange Commission.

58. For instance, in The Allstate Corporation's 2011 Form 10-K report, it stated that one of its "key goals" was to "improve auto competitive position through price optimization". The Allstate Corporation further stated that its "updated auto risk pricing model"—which it refers to as "price optimization" —was "implemented for 25 states in 2011 and…will continue in other states throughout 2012."

59. In The Allstate Corporation's 2012 and 2013 Form 10-K reports, The Allstate Corporation omits any reference to the specific term "price optimization" but still discuss its use of "sophisticated pricing" to enhance its competitive position.

60. In The Allstate Corporation's 2012 Form 10-K report, The Allstate Corporation states that its "updated auto risk pricing model" was "implemented for 9 states in 2012."

61. In The Allstate Corporation's 2013 Form 10-K report, The Allstate Corporation admits that its "increasingly sophisticated pricing models" are "being reviewed by regulators and special interest groups."

62. In The Allstate Corporation's 2014 Form 10-K report, The Allstate Corporation again admits that its "increasingly sophisticated pricing models" are "being reviewed by regulators and special interest groups."

63. Allstate employees have acknowledged Allstate's use of elasticity of demand in calculating premiums. The Chief Data Officer at Allstate between July 2012 and at least October 2014, for example, says that he has led pricing teams on "retention elasticity" and "price optimization." And as Senior Vice President for Research and Analytics at Allstate in 2011 he says his work included

9

"price optimization" and "retention and elasticity modeling."

64. The Price Optimization Manager/Assistant Actuary at Allstate in 2013 says that one of his duties was to "Manage Price Optimization implementations across all East/West Analytics teams," and that another of his duties was to "Provide training for and establish best practices regarding Economic Demand Modeling." And as a Senior Actuarial Assistant before becoming Price Optimization Manager he "Conducted Optimization Analysis and Demand Modeling for the Private Passenger Auto line of business."

65. The Director of Data Science at Allstate between May 2013 and at least October 2014 says that one of his "top skills" is "price optimization."

66. Further, an Associate Actuary at Allstate in 2014 says that one of his skills is to "proficiently utilize price optimization in Earnix." And an Assistant Actuary at Allstate between November 2013 and at least October 2014 says that in that position one of her duties was to "collaborate with Allstate Research department to revise existing training materials for Price Optimization," and that another one of her duties was to "create documentation for use of new tools and best practices as pertaining to Price Optimization." And in her prior position of Senior Actuarial Assistant, she "conducted price optimization analysis for Private Passenger Auto across multiple states."

67. Finally, a Predictive Modeling Intern for Allstate in 2012 says that he "built multivariate GLM demand models in SAS and Emblem to support Allstate's price optimization initiative and implement market segmentation."

## CLASS ALLEGATIONS

68. Plaintiff, on behalf of herself and all others similarly situated, brings this action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

69. The proposed Class is defined as:

All Allstate customers in the state of California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased automotive

596321.1

vehicle insurance, were subject to Allstate's practice of using elasticity of demand as a rating factor, and were charged or paid a higher premium than the risk-based premium.

70.     Excluded from the Class is Allstate, its parents, subsidiaries, affiliates, officers and directors, any entity in which Allstate has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71.     Membership in the class is ascertainable based on computerized records maintained by Defendants.  Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

72.     The Class is numerous such that joinder of all Class members is impracticable.  The proposed Class contains many thousands of members.

73.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

> a.     Whether Defendants use elasticity of demand as a rating factor;
>
> b.     Whether Defendants disclosed their use of elasticity of demand as a rating factor to the Department;
>
> c.     Whether the Department approved Defendants' use of elasticity of demand as a rating factor;
>
> d.     Whether Defendants' use of elasticity of demand as a rating factor produces premiums that exceed the risk-based premiums for policyholders who have inelastic demand;
>
> e.     Whether Defendants' use of elasticity of demand as a rating factor results in customers presenting the same risk being charged different premiums based on their elasticity of demand;
>
> f.     Whether Defendants are unjustly enriched through their use of elasticity of demand as a rating factor;
>
> g.     Whether Defendants violate California's Unfair Competition Law through their

596321.1

use of elasticity of demand as a rating factor;

h. Whether Defendants violate California's False Advertising law through their use of elasticity of demand as a rating factor.

74. Other questions of law and fact common to the Class include:

a. The proper method or methods by which to measure damages, and

b. The declaratory relief to which the Class is entitled.

75. Plaintiff's claims are typical of the claims of other members of the Class and there is no defense available to Defendants that is unique to Plaintiff.

76. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, paid more than the risk-based premium due to Defendants' use of elasticity of demand as a rating factor. Furthermore, the factual basis of Allstate's misconduct is common to all Class members, and represents a common thread of deceptive, unfair, and unlawful conduct resulting in injury to all members of the Class.

77. Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has the ability to assist and adequately protect the rights and interests of the Class during litigation. Further, Plaintiff is represented by counsel who are competent and experienced in this type of class action litigation.

78. This class action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

a. Joinder of thousands of individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources;

b. There is no special interest by the Class members in individually controlling separate causes of action;

c. The Class members' individual claims are small compared with the expense of litigating the claim thereby making it impracticable, unduly burdensome, and expensive, if not totally impossible, to justify individual Class members addressing their losses in litigation;

12

1        d.      When liability is determined, the claims of all Class members can be determined

2                through routine mathematical calculations and thus can be determined by the

3                Court and administered efficiently in a manner that is far less onerous,

4                burdensome, and expensive than if it were attempted through filing, discovery,

5                and trial of many individual cases;

6        e.      This class action will promote the orderly, efficient, expeditious, and appropriate

7                adjudication and administration of class claims to promote economies of time

8                and resources;

9        f.      This class action will assure uniformity of decisions among Class members;

10       g.     The resolution of this controversy through this class action presents fewer

11               management difficulties than individual claims filed in which the parties may be

12               subject to varying adjudication of their rights.

13       79.    Furthermore, class treatment is appropriate because Defendants have acted on grounds

14 generally applicable to the Class, making class-wide equitable, injunctive, declaratory and monetary

15 relief appropriate.  In addition, the prosecution of separate actions by or against individual members of

16 the Class would create a risk of incompatible standards of conduct for Defendants and inconsistent or

17 varying adjudications for all parties.

18                            **CAUSES OF ACTION**

19                          **FIRST CAUSE OF ACTION**

20 **Violation of the Unfair Competition Law – Commission of Unlawful Business Act or Practice**

21                  **Cal. Bus. & Prof. Code § 17200 *et seq.***

22       80.    Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-

23 79 above as if set forth herein.

24       81.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business

25 act or practice."

26       82.    Defendants' conduct is "unlawful" because it violates the California Insurance Code

27 and its implementing regulations in the following ways:

28        a.      Defendants' use of elasticity of demand as a rating factor violates Cal. Ins. Code

596321.1

§ 1861.02 because it is not one of the three mandatory rating factors that are authorized by § 1861.02(a) and it has not been adopted by the Commissioner as a permissible rating factor pursuant to § 1861.02(a)(4).

b.  Defendants' use of elasticity of demand as a rating factor violates Cal. Code Regs. Tit. 10, § 2632.4(a) because elasticity of demand constitutes a rating factor that is not set forth in or authorized by California regulations.

c.  Defendants' use of elasticity of demand as a rating factor violates Cal. Ins. Code § 1861.02(a)(4) and Cal. Code Regs. Tit. 10, § 2632.4(b) because elasticity of demand does not bear a substantial relationship to loss.

d.  Defendants' use of elasticity of demand as a rating factor violates Cal. Code Regs. Tit. 10, § 2632.10(a) in that it causes Allstate to collect a premium which is not calculated in accordance with a class plan that complies with California regulation.

e.  Defendants' use of elasticity of demand as a rating factor violates Cal. Ins. Code § 1859 in that Allstate willfully withheld information from, or knowingly gave false or misleading information to, the California Insurance Commissioner concerning its use of elasticity of demand as a rating factor to unlawfully increase Plaintiff's and the Class' insurance premiums.

83.  Plaintiff and the Class members have suffered injury in fact and have lost money as a result of Defendants' unlawful business acts or practices.

84.  Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff seeks an order providing restitution and disgorgement of all profits relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

## SECOND CAUSE OF ACTION

### Violation of the Unfair Competition Law – Commission of Unfair Business Act or Practice

### Cal. Bus. & Prof. Code § 17200 *et seq.*

85.  Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-84 above as if set forth herein.

14

596321.1

86.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

87.     The acts and practices of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL in that Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous.  Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

88.     Defendants have, in the course of their business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices under the UCL by using elasticity of demand as a rating factor.

89.     Defendants have also, in the course of their business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by:

      a.     Engaging in bad faith in using elasticity of demand as a rating factor;

      b.     Not calculating auto insurance premiums based on risk or loss costs but, instead, using elasticity of demand as a rating factor to inflate premiums;

      c.     Making material and misleading omissions about the manner in which they determine auto insurance premiums;

      d.     Using elasticity of demand as a rating factor in a manner that was not transparent, ascertainable, or verifiable by Plaintiff and Class members; and

      e.     Unlawfully and unfairly using elasticity of demand as a rating factor to extract additional premiums from their price inelastic customers, including but not limited to those who are or were most loyal by virtue of their tenure as insureds of Defendants.

90.     The above-described unfair business acts or practices present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

91.     Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff seeks an order providing restitution and disgorgement of all profits relating to the above-described unfair business acts or practices, and injunctive and declaratory relief as may be appropriate.

15

## THIRD CAUSE OF ACTION

### Violation of the Unfair Competition Law – Commission of Fraudulent Business Act or Practice

### Cal. Bus. & Prof. Code § 17200 *et seq.*

92.     Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-91 above as if set forth herein.

93.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

94.     The acts and practices of Defendants as alleged herein constitute "fraudulent" business acts and practices under the UCL in that Defendants' conduct is false, misleading, and has a tendency to deceive the Class and the general public.

95.     Defendants' conduct in using elasticity of demand as a rating factor to inflate auto insurance premiums for its price inelastic customers was likely to deceive, and did in fact deceive, Plaintiff and the Class.

96.     Defendants' conduct in failing to disclose to Plaintiff and members of the Class their use of elasticity of demand as a rating factor to inflate auto insurance premiums for price inelastic policyholders was likely to deceive, and did in fact deceive, Plaintiff and the Class.

97.     Plaintiff and the Class members have suffered injury in fact and have lost money as a result of Defendants' fraudulent business acts or practices.

98.     The above-described fraudulent business acts or practices present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated the fraudulent conduct upon members of the public by engaging in the conduct described herein.

99.     Pursuant to Business and Professions Code §§ 17200 and 17203 Plaintiff seeks an order providing restitution and disgorgement of all profits relating to the above-described fraudulent business acts or practices, and injunctive and declaratory relief as may be appropriate.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

100.     Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-

16

99 above as if set forth herein.

101.    Defendants have been unjustly enriched at the expense of Plaintiff and Class members as a result of their conduct as alleged above.

102.    Defendants have wrongfully and unjustly collected higher auto insurance payments from thousands of insureds than they were entitled to by using elasticity of demand as a rating factor.

103.    It would be inequitable to allow Defendants to retain these ill-gotten gains, and the Plaintiff and Class members are entitled to restitution and/or disgorgement of all revenues obtained by Defendants as a result of their unlawful conduct.

### FIFTH CAUSE OF ACTION
**Violation of the False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 *et seq.***

104.    Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-103 above as if set forth herein.

105.    In violation of Cal. Bus. & Prof. Code § 17500 *et seq.*, the advertisements, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of Defendants' auto insurance policies.

106.    Defendants knew or reasonably should have known that their statements regarding the rating factors they use were untrue and/or misleading.

107.    Specifically, the following statements on the Defendants' website are untrue and misleading and Defendants knew, or reasonably should have known, that they were untrue and/or misleading:

    a.    "The quote you receive is impacted by the following factors:  Your driving record. Your past insurance claims history. Your vehicle type and value. Included safety features in your car, which could effectively limit the extent of bodily damage you suffer in an accident.  Included security features in your car, such as anti-theft alarms or devices, which are likely to have an impact on preventing your car from being stolen. Where you live, which could directly

596321.1

influence the safety of your car with respect to theft and certain natural disasters. How often you drive, which tells an insurance company how frequently your car is exposed to risk."

108.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## FIFTH CAUSE OF ACTION

### Violation of Cal. Ins. Code § 1861.10

109.    Plaintiff repeats, reasserts, and incorporates the allegations contained in paragraphs 1-108 above as if set forth herein.

110.    Cal. Ins. Code sec. 1861.10(a) authorizes "any person" to "initiate...any proceeding permitted...pursuant to" Chapter 9 of the Insurance Code, and to "enforce any provision of" Article 10 of Chapter 9 of the Insurance Code.

111.    Plaintiff is a person initiating a proceeding permitted pursuant to Chapter 9 of the Insurance Code within the meaning of Section 1861.10(a) because Section 1861.03(a) of Chapter 9 of the Insurance Code makes the unfair business practices laws applicable to the business of insurance.

112.    Section 1861.02(a)(4) of the Insurance Code prohibits the use of rating factors that do not have a substantial relationship to risk of loss, and it is a provision of Article 10 of Chapter 9 of the Insurance Code. Plaintiff is a person seeking to enforce that provision within the meaning of Section 1861.10(a).

113.    Plaintiff and the Class members have suffered injury in fact and have lost money as a result of Defendants' use of elasticity of demand as a rating factor in violation of Section 1861.02(a)(4).

114.    Pursuant to Insurance Code Section 1861.10(a) and (b), Plaintiff seeks an order providing restitution and disgorgement of all profits resulting from Defendants' use of elasticity of demand as a rating factor, injunctive and declaratory relief as may be appropriate, and attorneys' fees and expenses.

596321.1

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for judgment in favor of Plaintiff and the Class and against Defendants as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rule of Civil Procedure 23 and certifying the Class defined herein;

B. Designating Plaintiff as a representative of the Class and her counsel as class counsel;

C. Declaring Defendants' use of elasticity of demand as a rating factor to be unlawful and granting equitable and/or injunctive relief;

D. Awarding Plaintiff and members of the Class their compensatory damages in an amount to be determined at trial;

E. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

F. Plaintiff's reasonable attorneys' fees and non-taxable expenses;

G. Plaintiff's taxable costs;

H. Pre- and post-judgment interest at the maximum rate permitted by applicable law; and

I. Granting such further relief as the Court deems just.


Dated: November 5, 2015

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


 /s/ David Borgen
David Borgen

Shanon Carson (PA Bar 85957)
Peter Kahana (PA Bar 33587)
Jeff Osterwise (PA Bar 201589)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4613

596321.1

Jonathan K. Tycko (D.C. Bar 45851)
Andrea R. Gold (D.C. Bar 502607)
TYCKO & ZAVAREEI LLP
2000 L Street NW, Suite 808
Washington, DC 20036
Tel:  (202) 973-0900
Fax: (202) 973-0950

Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

596321.1