UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREA STEVENSON**,<br><br>     Plaintiff,<br><br>vs.<br><br>**ALLSTATE INSURANCE CO.**, ***et al.***,<br><br>     Defendants. | Case No.: 15-cv-04788-YGR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 28 |

Plaintiff Andrea Stevenson brings this putative class action against defendants Allstate Insurance Company and Allstate Indemnity Company (collectively, "Allstate" or "Defendants") challenging Allstate's alleged use of elasticity of demand when formulating its rating factors for automotive insurance in California. Plaintiff brings causes of action in the first amended complaint (Dkt. No. 18, "FAC") for (1) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (2) unjust enrichment, (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and (4) violation of Cal. Ins. Code § 1861.10.

Currently pending before the Court is Defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 28, "Mtn."), arguing, *inter alia*, that Plaintiff's claims are not justiciable because they are subject to the exclusive jurisdiction of the California Department of Insurance ("DOI") Commissioner. Defendants also move to dismiss certain claims on pleading grounds. Alternatively, Defendants request the Court defer to the primary jurisdiction of the DOI and stay this action pending resolution by the DOI Commissioner. Having carefully considered the papers submitted and the pleadings in this action, oral argument held January 12, 2016, and for the

reasons set forth below, the Court hereby **GRANTS IN PART** Defendants' motion to dismiss and **STAYS** the litigation under the primary jurisdiction doctrine.

## I. BACKGROUND

Defendants are Illinois corporations that issue automotive insurance policies nationally, including in California. (FAC ¶ 20.) Plaintiff is a more than twenty-five year auto insurance customer of Allstate. (*Id*. ¶ 15.) Plaintiff alleges that, as a result of Allstate's alleged improper practices, she has "paid higher prices for [her] insurance coverage than have other insureds who present the same risk presented by Plaintiff." (*Id*. ¶ 10.) Specifically, Plaintiff asserts that Allstate improperly uses elasticity of demand ("ED") as an unapproved rating factor when pricing auto insurance for its customers and potential customers – a practice known in the insurance industry as "price optimization." (*Id*. ¶ 35.) ED represents an individual's sensitivity to changes in the price of insurance. (*Id*. ¶ 32.) The more elastic an individual, the more likely they are to seek insurance elsewhere in response to an increase in insurance premiums. (*Id*. ¶ 33.) By contrast, the more inelastic an individual, the less sensitive they are to increase in premiums, *i.e.* the less likely they are to seek insurance elsewhere if their premiums rise. (*Id*. ¶ 34.) Thus, Allstate's inelastic customers – including Plaintiff – pay higher premiums simply because Defendants determined they are less responsive to price increases. (*Id*. ¶ 34.)

In California, auto insurance premiums are approved by the Department of Insurance ("DOI") through a two-step process. (*See id*. ¶¶ 22-31.) First, an insurer (such as Allstate) sets a base rate and obtains approval from DOI for the base rate by filing a rate application. (*Id*. ¶ 22.) Second, the insurer submits a class plan that discloses the rating factors an insurer wants to use and how those rating factors will be applied to the base rate to produce individual premiums. (*Id*. ¶ 25.) For example, mandatory rating factors authorized by statute include mileage driven, driving record, and years of driving experience. (*Id*. ¶ 26.) The regulations also provide optional rating factors that insurers may elect to include in their class plan. (*Id*. ¶ 27.)

Allstate allegedly uses Earnix, Ltd. software to incorporate ED into its rating factors before submitting its class plan to DOI. (*Id*. ¶ 46.) Earnix boasts that it allows insurers to "go beyond traditional risk cost pricing, incorporating [ED] models to maximize profit and growth objectives."

(*Id.* ¶ 41.)  The Earnix Rating Factor Optimization module "allows insurers to optimize prices offered to customers while maintaining regulatory compliance." (*See id.* ¶ 41, "Earnix Brochure" at 15, available at http://earnix.com/download/EarnixInsuranceSolutions.pdf.)  Earnix "directly optimizes the rating factors [Allstate submits to DOI in its class plan], providing [Allstate] with new factors that can be uploaded into [its] existing table structure." (*Id.*)  In other words, Earnix software allows Allstate to account for ED in its rating factors submitted for approval, without disclosing to DOI that it is considering ED when compiling its class plan. (*See id.*)

By way of example, DOI regulations allow insurers the option to use "[g]ender of the rated driver" as a rating factor.  Cal. Ins. Code § 2632.5(d)(9).  The Earnix software permits Allstate to incorporate ED into its proposed gender rating factors.  Under a hypothetical theory that a customer assigned "female" gender is more price inelastic, and therefore less likely to respond to a small price changes, Earnix would "optimize" Allstate's rating factor for females upward.  Thus, if based on risk alone Allstate would propose a rating factor of 1.0 for females, Earnix would increase that rating factor (*e.g.* to 1.2) to account for females' inelasticity.  Under this hypothetical, Earnix has determined that female Allstate customers are not as responsive to changes in price, and so Earnix "optimizes" the female rating factor to increase the premium charged to females – based on the theory they are less likely to shop for insurance elsewhere in response to a premium increase.

This is hypothetical by design.  Plaintiff is unable to quantify Allstate's use of ED to optimize its rating factors.  Allstate does not disclose its use of ED in generating the rating factors submitted for approval in its class plan. (*See* FAC ¶ 35.)  However, Allstate's parent company has disclosed in public filings that it used price optimization and that one of its "key goals" in 2011 was to utilize price optimization to increase earnings. (*Id.* ¶ 57.)  Allstate employees, including a former Chief Data Officer, have disclosed Allstate's use of ED since at least 2011. (*Id.* ¶¶ 63-67.)

The gravamen of Plaintiff's claims is that Allstate engaged in price optimization, using Earnix software to incorporate ED into its "premium-setting methodologies" without disclosing the same to DOI in its class plan or to its customers affected thereby. (*Id.* ¶ 7.)  On February 18, 2015, DOI issued a bulletin (the "Bulletin") denouncing the use of price optimization and requiring insurers to cease using it in any way:

3

> 'Price Optimization' is defined as any method of taking into account an individual's or class's willingness to pay a higher premium relative to other individuals or classes….[A]ny use of Price Optimization in the ratemaking/pricing process or in a rating plan is unfairly discriminatory in violation of California law….Any insurer currently using Price Optimization to adjust its rates in the ratemaking/pricing process shall remove the effect of any such adjustments from any filing to be submitted subsequent to the date of this Notice.

(Dkt. No. 29, Bulletin; *see* FAC ¶¶ 36-37.)

Plaintiff brings six causes of action on behalf of herself and all others similarly situated in the FAC, namely for: (1) *unlawful* conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, (2) *unfair* conduct in violation of the UCL, (3) *fraudulent* conduct in violation of the UCL, (4) unjust enrichment, (5) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and (6) violation of Cal. Ins. Code § 1861.10. Defendants now move to dismiss all causes of action, or in the alternative, to stay judicial proceedings under the doctrine of primary jurisdiction.

## II.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 547, 555. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in

the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.  DISCUSSION

Allstate moves to dismiss the FAC on three grounds.  First, Allstate argues the FAC fails to allege facts sufficient to state certain claims.  Second, Allstate contends that Plaintiffs' Fourth Cause of Action for unjust enrichment and Sixth Cause of Action for violation of section 1861.10 are not legally cognizable as independent claims under California law.  Third, and principally, Allstate argues that Plaintiff is barred from bringing her claims in this Court due to the exclusive jurisdiction given to the DOI Commissioner over rate setting issues.

Alternatively, should the Court not dismiss the FAC on the above-mentioned grounds, Allstate requests the Court exercise its discretion to stay judicial proceedings and send Plaintiff's claims to DOI for the benefit of the Commissioner's expertise in rate setting issues under the judicially-created doctrine of primary jurisdiction.  The Court addresses each of Defendants' arguments below.

### A. Pleading Deficiencies

Defendants contend the FAC is facially deficient in three respects, namely that: (1) the UCL and FAL claims (First, Second, Third, and Fifth Causes of Action, respectively) fail because Plaintiff does not allege any injury consistent with her theory of relief; (2) the UCL fraud claim and FAL claim (Third and Fifth Causes of Action, respectively) fail because Allstate's website, when read as a whole, is not misleading; and (3) the UCL fraud claim (Third Cause of Action) fails because Plaintiff does not allege reliance properly.  The Court turns to each:

#### *1. UCL and FAL Claims: Allegations of Injury*

Allstate moves to dismiss the FAC on grounds that Plaintiff does not allege an injury consistent with the FAC as a whole.  More particularly, Allstate argues the FAC does not allege that Plaintiff paid premiums in excess of the rate approved by DOI.  In that regard, Defendants contend that Plaintiff has not alleged she "suffered injury in fact" or "lost money or property as a result of" Allstate's actions.  *See Sevidal v. Target Corp.*, 189 Cal.App.4th 905, 923-24 (2010).

5

Defendants' argument does not persuade. Plaintiff pleads payment of premiums that were artificially inflated based on Defendants' allegedly unlawful practices. Indeed, the crux of Plaintiff's complaint is that DOI's approval of rates was based on Defendants' hidden consideration of ED in generating its rating factors. Plaintiff's alleged injury is thus as she frames it in the FAC, or that she "paid higher prices for [her] insurance coverage than have other insureds" who were not charged more based on price optimization. (FAC ¶ 10.) Plaintiff has alleged an injury consistent with her theory of relief. Defendant's motion on this ground is **DENIED**.

*2. UCL Fraud and FAL Claims: Misleading Statements*

Plaintiff bases her UCL fraud claim (Third Cause of Action) and FAL claim (Fifth Cause of Action) on statements Allstate makes on its website. (FAC ¶¶ 47-54.) For example, in a section entitled "How a car insurance quote is determined," Allstate represents:

> The quote you receive is impacted by the following factors: Your driving record. Your past insurance claims history. Your vehicle type and value. Included safety features in your car, which could effectively limit the extent of bodily damage you suffer in an accident. Included security features in your car, such as anti-theft alarms or devices, which are likely to have an impact on preventing your car from being stolen. Where you live, which could directly influence the safety of your car with respect to theft and certain natural disasters. How often you drive, which tells an insurance company how frequently your car is exposed to risk.

(FAC ¶¶ 50-51.) According to Plaintiff, because Allstate does not inform customers it uses ED as a rating factor, its statements are false and misleading. (FAC ¶ 52.)

Where, as here, an advertisement does not target a particular group, "it is judged by the effect it would have on a reasonable consumer." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 506-07 (2003) (reasonable consumer standard appropriate for UCL and unfair advertising claims). The reasonable consumer standard does not require "a reasonable consumer necessarily be wary or suspicious of advertising claims." *Id*. at 510. A literally true statement may be actionable under the UCL and FAL if "couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information…." *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-33 (1998).

6

Defendants contend that the statements Plaintiff cites as misleading are not actionable because no reasonable consumer would be deceived or misled by its conduct. Defendants point the Court to portions of its website containing language indicating that insurance premiums are influenced by "dozens of factors" and that the listed factors are not "the only factors that insurance companies look at" when determining insurance premiums. (Mtn. at 23:3-12.) Based thereon, Defendants argue that no reasonable consumer could be misled. The Court disagrees.

Allstate primarily relies on *Ford v. Hotwire, Inc.*, 2008 WL 5874305 (S.D.Cal. Feb. 25, 2008) and *Porras v. Stub Hub, Inc.*, 2012 WL 3835073 (N.D.Cal. Sept. 4, 2012) in support of its argument that its website as a whole could not mislead a reasonable consumer. Both cases are distinguishable. In *Hotwire,* the plaintiff alleged that Hotwire violated the FAL by failing to disclose mandatory resort fees to consumers during its booking process. The court granted Hotwire's motion to dismiss because the company explicitly stated, in its Terms of Use, that "'Hotwire rates do not include special fees charged by hotels upon check-out (e.g. …resort fees…). Customers will be required to pay these fees directly to the hotels at check-out time.'" 2008 WL 5874305, at * 2, 4. In *StubHub*, the plaintiff brought an FAL claim against defendant StubHub, alleging StubHub misrepresented on its website that tickets purchased via its marketplace would be authentic and valid for entry, when in fact, they were not. That district court similarly dismissed the plaintiff's FAL claim because StubHub acknowledged in its FanProtect Guarantee that tickets purchased by consumers may not be valid. 2012 WL 3835073, at *6. In both *Hotwire* and *StubHub*, therefore, the defendant expressly disclaimed the fact the plaintiff alleged was concealed from consumers. Not so here. Allstate has not pointed to any portion of its website where it expressly discloses use of ED as a rating factor.

Taking Plaintiff's allegations as true, the FAC alleges a plausible claim that a reasonable consumer could be misled by Allstate's website statements. Accordingly, this basis for dismissal is **DENIED**.

### *3. UCL Fraud Claim: Allegations of Reliance*

Defendants next argue that Plaintiff's claim under the fraudulent prong of the UCL (Third Cause of Action) must be dismissed because the FAC does not plead reliance on the allegedly fraudulent statements. Specifically, Defendants argue that Plaintiff never saw the allegedly fraudulent

7

statements on Allstate's website, and therefore could not have relied upon them.  Plaintiff opposes, arguing that her UCL fraud claim is largely based on Defendants' omissions.  Namely, Defendants never disclosed their use of ED in generating their rating factors.  Had Defendants disclosed this material fact, Plaintiff contends the disclosure would have influenced her decision to remain an Allstate customer.  The Court agrees.  The law unequivocally "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  In that regard, the FAC plausibly alleges that Defendants' omission with respect to its use of ED "played a substantial part, and so [was] a substantial factor, in influencing [Plaintiff's] decision" to purchase insurance through Allstate.  *Id*.  Accordingly, Defendants' motion on this ground is **DENIED**.

### B. Claims Not Legally Cognizable

Defendants move to dismiss the Fourth and Sixth Causes of Action on the grounds that neither unjust enrichment nor violation of Insurance Code section 1861.10 is a legally cognizable claim under California law.

#### *1. Unjust Enrichment*

First, Defendants move to dismiss the Fourth Cause of Action on the basis that unjust enrichment is not a separate cause of action under California law.  *See Walker v. USAA Casualty Ins. Co.*, 474 F.Supp.2d 1168, 1174 (E.D.Cal. 2011) (claim for unjust enrichment not cognizable under California law).  California authorities consistently recognize a common law claim based on principles of reimbursement and restitution due to unjust enrichment.  *See, e.g. Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.4th 988, 998 (2015) (discussing cause of action for unjust enrichment entitling plaintiff to reimbursement); *Hirsch v. Bank of Am.*, 107 Cal.App.4th 708, 721-22 (2003) (plaintiffs stated "a valid cause of action for unjust enrichment based on" defendants' unjust retention of fees at the expense of plaintiffs); *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000) (plaintiff "satisfied the elements for a claim of unjust enrichment" by alleging receipt and unjust retention of a benefit at the expense of another); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution.").  Moreover, the Ninth Circuit recently affirmed that a complaint alleging a

8

quasi-contract claim in restitution under California law should not be dismissed for failure to state a claim under Rule 12(b)(6). *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("a court may 'construe [unjust enrichment] cause of action as a quasi-contract claim seeking restitution'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014)). Whether properly titled "unjust enrichment" or "quasi-contract," Plaintiff has stated a viable claim for relief under California law. Defendants' motion on this basis is therefore **DENIED**.

### 2. *Violation of Insurance Code Section 1861.10*

With respect to the Sixth Cause of Action, Defendants move to dismiss on grounds that Insurance Code section 1861.10 does not create a private of action. The California Court of Appeals has twice agreed with Defendants' position, holding that no private right of action exists under Section 1861.10. *Farmers Ins. Exchange v. Superior Court*, 137 Cal.App.4th 842 (2006) (Section 1861.10 did not create private cause of action); *MacKay v. Superior Court*, 188 Cal.App.4th 1427, 1446 n. 14 (2010) (reiterating *Farmers* holding that Section 1861.10 "simply increased the *standing* to use procedures already extant; it did not create a private right of action") (emphasis in original). Moreover, Plaintiff's counsel conceded at oral argument that the Sixth Cause of Action does not provide any additional relief as a practical matter. Consequently, Defendants' motion on this ground is **GRANTED**. Plaintiff's Sixth Cause of Action is **DISMISSED WITH PREJUDICE**.

### C. Exclusive Jurisdiction of the Commissioner

Defendants contend that Insurance Code section 1860.1 ("Section 1860.1") bars Plaintiff's claims as within the exclusive jurisdiction of the Commissioner. Section 1860.1 is a so-called immunity statute that prohibits private causes of action against an insurer challenging their use of auto insurance rates approved by the Commissioner:

> No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance.

9

Cal. Ins. Code. § 1860.1. However, Insurance Code section 1861.03 ("Section 1861.03"), enacted after Section 1860.1 by Proposition 103, explicitly makes the business of insurance subject to California laws applicable to any other businesses. It states, in pertinent part:

> The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act (Sections 51 to 53, inclusive of the Civil Code), and the antitrust and *unfair business practices laws* (Parts 2 (commencing with Section 16600) and 3 (commencing with Section 17500 of Division 7 of the Business and Professions Code).

Cal. Ins. Code. § 1861.03(a) (emphasis supplied).

Although Proposition 103 was approved more than forty years after the legislature codified Section 1860.1, it does not repeal the same, despite the apparent conflict between the two provisions. Courts seeking to reconcile these two seemingly contradictory provisions in the Insurance Code have drawn a distinction between challenges to rates and rating factors approved by the Commissioner on the one hand, and the application of underwriting guidelines on the other. *See Walker v. Allstate Indem. Co.*, 77 Cal.App.4th 750 (2000) (Section 1860.1 immunity continues to bar challenges to ratemaking decisions under the UCL and tort claims in the wake of Proposition 103); *Donabedian v. Mercury Ins. Co.*, 116 Cal.App.4th 968 (2004) (distinguishing *Walker* to hold that a challenge to an insurer's "rating factors and class plan, *as applied*, violated [other provisions of] Proposition 103" are viable and not subject Section 1860.1 immunity) (emphasis in original); *MacKay v. Superior Court*, 188 Cal.App.4th 1427 (2010) (Section 1860.1 bars claim under UCL to challenge insurer's use, not application, of approved rating factor).

These cases, taken together, conclude that challenges to the ratemaking process itself still remain within the exclusive jurisdiction of the Commissioner pursuant to Section 1860.1. As the *MacKay* court concisely stated: "Insurance Code 1860.1 exempts from other California laws acts done and actions taken pursuant to the ratemaking authority conferred by the ratemaking chapter, *including the charging of a preapproved rate*." *MacKay*, 188 Cal.App.4th at 1443 (emphasis in original). The same is recognized by courts in this District. *See King v. Nat'l General Ins. Co.*, --F.Supp.3d--, 2015 WL 5440826, at *6 (N.D.Cal. Sept. 15, 2015) ("The weight of authority in this district and the California Court of Appeals harmonizes Sections 1860.1 and [1861.03] by narrowly construing the

1 Section 1860.1 immunity … As harmonized, challenges to the reasonableness of an approved rate fall
2 within the exclusive ambit of the chapter and are exempt from the requirements of other laws")
3 (quoting *Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063, 1082 (N.D.Cal. 2012)).

Plaintiff offers two arguments in opposition. First, Plaintiff contends the *Walker* and *MacKay* courts simply got it wrong; Section 1860.1 immunity did not survive Proposition 103. In Plaintiff's view, *Walker* and *MacKay* ignore both the plain language in Section 1861.03 and also the California Supreme Court's holding in *Farmers v. Superior Court*, 2 Cal.4th 377 (1992). In *Farmers*, the California Attorney General alleged that Farmers refused to offer a good driver discount policy, in violation of the Insurance Code. *Id.* However, *Farmers* did not address immunity under Section 1860.1. Rather, the California Supreme Court addressed only a very narrow issue: whether the doctrine of primary jurisdiction applied such that the case should be stayed pending an administrative process. *Id.* Moreover, and as the *Walker* court noted, the California Supreme Court has continued to recognize the existence of statutory exceptions for ratemaking decisions following *Farmers. See, e.g., Quelimane Co., Inc. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 33, 44-45 (1998) (in the title insurance context, noting that "the Insurance Code does not displace the UCL except as to title company activities related to rate setting"). Plaintiff fails to cite any case agreeing with her view that *Walker* and *MacKay* are unsound.[1] This argument simply does not persuade.

Second, if *MacKay* controls, Plaintiff contends her claims falls within a category the *MacKay* court recognized would not be within the exclusive jurisdiction of the Commissioner. The *MacKay* court acknowledged that "if the underlying conduct challenged was not the charging of an approved rate, but the *application* of an unapproved underwriting guideline, [Section 1860.1] would not be applicable." 188 Cal.App.4th at 1450. The court explained:

> It is possible for an insurance carrier to file with the DOI a rate filing and class plan that satisfies all of the ratemaking components of the regulations, and still result in a violation of the Insurance Code *as applied*. Such a situation would not involve a question of rates, but rather, it could easily involve the very separate, factual question of how

---

[1] To the contrary, Plaintiff submitted a supplemental authority following oral argument that explicitly followed the reasoning in *MacKay*. (*See* Dkt. No. 42.)

11

> the components of the class plan are applied toward members of the public.

*Id.* (alterations and quotations omitted) (quoting *Donabedian*, 116 Cal.App.4th at 992). Plaintiff argues that her claims are not to rates themselves (and therefore subject to Section 1860.1) insofar as the Commissioner did not approve Defendants' use of ED as a rating factor. The Court disagrees.

The gravamen of Plaintiff's allegations is a challenge to approved rates and not the application thereof. As Plaintiff's counsel conceded at oral argument, ED is a selection tool allegedly used by Defendants to choose and calculate factors and rates to submit to the Commissioner for approval. Plaintiff does not – and it seems cannot – allege that ED was taken into consideration after approval when Defendants were applying their approved class plan. Tellingly, Plaintiff is unable to allege that she paid a premium higher than would be calculated using the rate and class plan approved by the Commissioner. If Defendants used ED as an additional, undisclosed, and unapproved rating factor, Plaintiff should be able to allege that she was charged an unapproved rate. Plaintiff's inability to so allege shows that her challenge is to the Commissioner's approval process itself, which is precisely the type of claim Section 1860.1 still protects from litigation. *See MacKay*, 188 Cal.App.4th at 1450.

Based on the foregoing, the Court finds that Plaintiff's claims are likely barred by Section 1860.1 and subject to the exclusive jurisdiction of the Commissioner.[2] The Court, however, heeds the expertise of the Commissioner and recognizes that the Commissioner is in the best position to determine whether Plaintiff in fact challenges approved rates within DOI's exclusive jurisdiction. The Court therefore declines to dismiss Plaintiff's claims pursuant to Section 1860.1 at this juncture. For the reasons discussed more fully in Section III.D below, the Court finds that the more prudent course is to stay the litigation pending action by the Commissioner.

///
///

---

[2] Plaintiff's Third Cause of Action for violation of the UCL fraudulent prong and Fifth Cause of Action for violation of the FAL, however, cannot be immune from suit under Section 1860.1. As the court noted in *MacKay*, "a claim that directly challenges some other activity, such as false advertising…is not rate regulation." 188 Cal.App.4th at 1444.

**D. Primary Jurisdiction of the Commissioner**

Alternatively, Defendants argue that any claims not dismissed should be stayed pending proceedings before the Commissioner under the doctrine of primary jurisdiction.[3] The primary jurisdiction doctrine "enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws." *Farmers*, 2 Cal.4th at 391. When it is invoked, judicial proceedings are stayed pending administrative procedures, not dismissed. Application of the doctrine is highly discretionary.

In *Farmers*, the State filed suit against multiple insurers alleging violations of the UCL. Based thereon, the California Supreme Court found application of the primary jurisdiction doctrine appropriate given that the "Insurance Commissioner has at his disposal a pervasive and self-contained system of administrative procedure to deal with the precise questions involved [there]in." *Id*. at 397 (internal quotations and citations omitted). Because resolution of the questions presented in the *Farmers* complaint "mandate[d] exercise of expertise presumably possessed by the Insurance Commissioner, and pose[d] a risk of inconsistent application of the regulatory statutes if courts are forced to rule on such matters without benefit of the views of the agency charged with regulating the insurance industry," deference to DOI was appropriate. *Id*. at 399.

Plaintiff contends that a stay is not reasonable or necessary here under the circumstances. Although both *Farmers* and this case involve allegations of insurers using unlawful rating factors, Plaintiff contends that the allegations there were more complex than those at issue here. The Court disagrees. At bottom, Plaintiff challenges the criteria Defendants take into account when formulating their class plan for approval by the Commissioner. In Plaintiff's view, Defendants should have disclosed ED as a rating factor to the Commissioner when they submitted their class plan. (FAC ¶ 35.) These are precisely the types of claims that implicate "questions involving insurance rate making [that] pose issues for which specialized agency fact-finding and expertise is needed in order to both resolve complex factual questions and provide a record for subsequent judicial review." *Id*. at 397.

---

[3] Defendants also contend, in the alternative, that Plaintiff cannot bring her claims because she failed to exhaust her administrative remedies. This argument necessarily fails. The California Supreme Court in *Farmers*, *supra*, unequivocally held that claims "originally cognizable in the courts," such as UCL and FAL claims, are not subject to administrative exhaustion. 2 Cal.4th at 391.

13

Were this Court "to rule on such matters without benefit of the views of the agency charged with regulating the insurance industry" an unavoidable "risk of inconsistent application of the regulatory statutes" would arise. *Id*. at 398. For these reasons, the Court finds that the Commissioner "is best suited initially to determine whether his or her own regulations pertaining to compliance have been faithfully adhered to by an insurer." *Id*. at 399.

Defendants' motion to stay proceedings pursuant to the Commissioner's primary jurisdiction is **GRANTED** as to all remaining causes of action, *i.e.* the First through Fifth Causes of Action. The Court **STAYS** these proceedings pending action by the Commissioner.

### IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED IN PART** as follows:

1. First Cause of Action for violation of the UCL "unlawful" prong is **STAYED** under the doctrine of primary jurisdiction pending action by the DOI Commissioner;
2. Second Cause of Action for violation of the UCL "unfair" prong is **STAYED** under the doctrine of primary jurisdiction pending action by the DOI Commissioner;
3. Third Cause of Action for violation of the UCL "fraudulent" prong is **STAYED** under the doctrine of primary jurisdiction pending action by the DOI Commissioner;
4. Fourth Cause of Action for unjust enrichment is **STAYED** under the doctrine of primary jurisdiction pending action by the DOI Commissioner;
5. Fifth Cause of Action for violation of the FAL is **STAYED** under the doctrine or primary jurisdiction pending action by the DOI Commissioner; and
6. Sixth Cause of Action for violation of Cal. Ins. Code section § 1861.10 is **DISMISSED WITH PREJUDICE** for failure to state a claim.

This Order terminates Docket Number 28.

**IT IS SO ORDERED.**

Dated: March 17, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**