David Borgen (SBN 99354)
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Jay Angoff (D.C. Bar 248641)
Cyrus Mehri (D.C. Bar 420970)
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel:   (202) 822-5100

Attorneys for Plaintiff
*(Additional Counsel listed on Signature Page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA STEVENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO., and ALLSTATE INDEMNITY CO,<br><br>Defendants. | Case No.: 4:15-cv-04788-YGR<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge:** Hon. Yvonne Gonzalez Rogers<br>**Date:**  November 14, 2023<br>**Time:**  2:00 p.m.<br>**Place:** Courtroom 1, 4th Floor,<br>1301 Clay<br>Street, Oakland, CA  94612 |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT........................................1

II.   FACTUAL AND LEGAL BACKGROUND.............................................................3

III.  SUMMARY OF MATERIAL SETTLEMENT TERMS..........................................6

    A.    The Proposed Settlement Class ...................................................................6

    B.    Benefits to the Settlement Class ..................................................................7

    C.    Settlement Administrator and Administration Costs.............................10

    D.    Class Member Release .................................................................................11

    E.    Proposed Plan of Notice ..............................................................................11

    F.    Opt-Outs and Objections .............................................................................12

    G.    Attorneys' Fees, Costs, and Service Awards............................................13

    H.    Class Action Fairness Act ...........................................................................13

    I.    Results in Comparable Cases ......................................................................13

IV.   LEGAL STANDARD ..............................................................................................15

V.    ARGUMENT ...........................................................................................................16

    A.    The Settlement Agreement warrants preliminary approval...................16

        i.    Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, arms' length negotiations. ...........................................................................18

        ii.    Rule 23(e)(2)(C): The Settlement is fair, adequate, and reasonable. ........19

            1.    The Strengths and Risks of Plaintiff's Case and the Complexity and Likely Duration of Further Litigation......................................19

            2.    The Risk of Maintaining Class Action Status .............................20

            3.    The Amount Offered in Settlement ..............................................20

        iii.    Rule 23(e)(2)(D): The Allocation of the Settlement ..................................23

            1.    The Extent of Discovery Completed and Stage of Proceedings....25

            2.    The Views of Class Counsel..........................................................25

            3.    Government Participant, Class Member Reaction, Other Cases Affected ........................................................................................25

        iv.    Rule 23(e)(2)(A): The Class Representative and Class Counsel have adequately represented the proposed class ................................................. 26

        v.    The proposed Fee and Expense Award is fair and reasonable .................. 27

    B.    Certification of the Settlement Class is appropriate .............................................. 27

    C.    The Court should approve the proposed Notice Plan ........................................... 29

VI.    CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Inter-Con Sec. Sys. Inc.*,
2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ..........................................................................18

*Avina v. Marriott Vacations Worldwide Corp.*,
2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) ...........................................................................26

*Banks v. Nissan N. Am., Inc.*,
2015 WL 7710297 (N.D. Cal. Nov. 30, 2015) ..........................................................................17

*Bravo v. Gale Triangle, Inc.*,
2017 WL 708766 (C.D. Cal. Feb. 16, 2017) .............................................................................27

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ..................................................................................................19

*Celano v. Marriott Int'l Inc.*,
242 F.R.D. 544 (N.D. Cal. 2007) ..............................................................................................28

*Churchill Village, L.L.C. v.* General *Electric*,
361 F.3d 566, 575 (9th Cir. 2004). ...........................................................................................16

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................................15

*Dennis v. Kellogg Co.*,
2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)...........................................................................19

*Edwards v. First American Corporation*,
No. CV-07-03796 SJO, 2016 WL 9176564 (C.D. Cal., Oct. 14, 2016)...................................24

*Edwards v. First American Corporation*,
No. CV07-03796-SJO, 2016 WL 8943464 (C.D. Cal., June 20, 2016) ..............................7, 24

*Eisen v. Carlisle and Jacquelin*,
417 U.S. 156 (1974) ..................................................................................................................29

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011).....................................................................................................29

*Grimm v. Am. Eagle Airlines, Inc.*,
2014 WL 12746376 (C.D. Cal. Sept. 24, 2014)........................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................................16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .................................................................................28

*Harris, et al. v. Farmers Insurance Exchange, et al.*,
Superior Court of California, Case No. BC57948 ...................................... 13, 14, 15

*Hendricks v. StarKist Co.*
No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal., July 23, 2015) ...............24

*Hillman v. Lexicon Consulting, Inc.*,
2017 WL 10433869 (C.D. Cal. April 27, 2019) ....................................................26

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) .................................................................................27

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) .................................................................................17

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................... 17, 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .................................................................................18

*In re Facebook Biometric Info. Privacy Litig.*,
522 F.Supp.3d 617 (N.D. Cal. 2021) .....................................................................24

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-02420 YGR (DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020),
*aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ......................19

*In the Matter of the Rating Practices of Allstate Insurance Company and Allstate Indemnity Company*
(CDI File No. NC-2018-00001) ...............................................................................2

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...................................................................................16

*Kimber Baldwin Designs, LLC v. Silv Communications, Inc.*,
No. 1:16-CV-448, 2017 WL 5247538 (S.D. Ohio, Nov. 13, 2017) ........................24

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .................................................................................30

*MacKay v. Superior Court*,
188 Cal. App. 4th 1427 (2010) ........................................................................... 9, 22

*McCabe v. Six Continents Hotels, Inc.*,
No. 12-CV-04818 NC, 2016 WL 491332 (N.D. Cal. Feb. 8, 2016) ......................24

*McCabe v. Six Continents Hotels, Inc.*
No. 12-CV04818 NC, 2015 WL 3990915 (N.D. Cal., June 30, 2015) ...................................24

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
2021 WL 1788447 (N.D. Cal. May 5, 2021)...............................................................................26

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)...............................................................................................25

*Norton v. LVNV Funding, LLC*,
2021 WL 3129568 (N.D. Cal. July 23, 2021) ...........................................................................26

*O'Connor v. Uber Techs., Inc.*,
No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ...............................16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982).....................................................................................................16

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ...................................................................................................................29

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*,
2012 WL 3809123 (S.D. Cal. Sept. 4, 2012) ...........................................................................30

*Tryfonas, et. al v. The Allstate Corp., et al.*,
Cir. Ct. Madison County, Illinois, No. 2016-L-000880 ...........................................................15

*Trzeciak v. Allstate Prop. & Cas. Ins. Co.*,
569 F. Supp. 3d 640 (E.D. Mich. 2021) ...................................................................................15

*Trzeciak v. Allstate Prop. & Cas. Ins. Co.*,
No. 21-10737 (E.D. Mich. 2021) ..............................................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ...............................................................................................................29

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)......................................................................................................16

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002).....................................................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................................................28

*Wolin v. Jaguar Land Rover N. Am.*,
LLC, 617 F.3d 1168 (9th Cir. 2010) .........................................................................................29

**Federal Statutes**

28 U.S.C.
§ 1711 ................................................................................................................................ 13
§ 1712 ................................................................................................................................ 13
§ 1714 ................................................................................................................................ 13
§ 1715 ................................................................................................................................ 13

Class Action Fairness Act ............................................................................................ 2, 11, 13

**State Statutes**

Cal. Code Civ. Proc. § 1094.5 ................................................................................................ 9

Cal. Code Regs. Title 10, § 2632.11 ...................................................................................... 3

California Insurance Code
§ 1860.1 ...................................................................................................................... 17, 22
§ 1861.10(a) ........................................................................................................................ 2

**Rules**

Fed. R. Civ. P.
23 ........................................................................................................................... 1, 16, 29
23(a) ................................................................................................................................. 28
23(a)(3) ............................................................................................................................ 28
23(a)(4) ............................................................................................................................ 28
23 (b)(3) ........................................................................................................................... 28
23(b)(3) ............................................................................................................................ 29
23(b)(3) ............................................................................................................................ 29
23(c)(2)(B) ....................................................................................................................... 29
23(e) ........................................................................................................................... 16, 30
23(e)(1)(B)(ii) .................................................................................................................. 27
23(e)(2)(C)(ii) .................................................................................................................. 23
23(e)(2)(c)(iii) .................................................................................................................. 27

Rule
23(a) ................................................................................................................................. 28
23(b)(3) ............................................................................................................................ 29
23(e)(2) ............................................................................................................................ 16
23(e)(2)(A) ...................................................................................................................... 26
23(e)(2)(B) ...................................................................................................................... 18
23(e)(2)(C) ...................................................................................................................... 19
23(e)(2)(D) ................................................................................................................ 23, 24

**Other Authorities**

Center for Auto Safety, https://www.autosafety.org/ ............................................................ 9

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE**

**NOTICE THAT** on November 14, 2023 at 2:00 p.m., or as soon thereafter that the matter may be heard, in the Courtroom of the Honorable Yvonne Gonzalez Rogers, of the United States District Court for the Northern District of California, located in Courtroom 1 on the 4th Floor, 1301 Clay Street, Oakland, CA 94612, Oakland Courthouse, Plaintiff Andrea Stevenson ("Plaintiff") will and hereby does move, pursuant to Federal Rule of Civil Procedure 23, this Court for an Order (1) preliminarily approving the Proposed Settlement settling her claims, both on behalf of herself and on behalf of a Settlement Class of similarly situated individuals; (2) certifying the Settlement Class for settlement purposes only; (3) directing notice to the Settlement Class; (4) appointing Plaintiff's counsel as Class Counsel and Plaintiff as Class Representative; and (5) scheduling a final approval hearing. As discussed more fully in the attached Memorandum of Points and Authorities, the Parties have negotiated a Settlement that provides substantial compensation to consumers who allegedly overpaid for auto insurance due to Defendants' alleged use of price optimization/elasticity of demand as a rating factor when determining auto insurance premiums for certain policyholders in California. The proposed notice program, which was negotiated and agreed to by the Parties, includes both email notice, postcard, and long-form notice, and thereby provides the best notice practicable under the circumstances, as required by Federal Rule of Civil Procedure 23. Thus, in this Motion, which is unopposed by Defendants Allstate Insurance Co. and Allstate Indemnity Co., Plaintiff respectfully requests that the Court grant preliminary approval of the Proposed Settlement, direct notice to the proposed Settlement Class, and schedule a final approval hearing.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On February 18, 2015, the California Department of Insurance ("CDI" or the "Department") issued a notice forbidding insurance companies from using price optimization in their rating plans for private passenger auto insurance (the "Notice").  The Notice defines price optimization as "any method of taking into account an individual's or class's willingness to pay a higher premium relative to other individuals or classes."

Plaintiff Andrea Stevenson originally filed this proposed class action on August 21, 2015, in the Superior Court of the State of California, against Allstate Insurance Co. and Allstate Indemnity Co. (together "Allstate" or "Defendants"), asserting six causes of action based on Allstate's alleged use of price optimization in determining auto insurance premiums for customers in California.

After Allstate removed the case to the U.S. District Court for the Northern District of California pursuant to the Class Action Fairness Act, this Court, on March 17, 2016, dismissed Plaintiff's claim under Section 1861.10(a) of the California Insurance Code and stayed the five remaining claims pursuant to the primary jurisdiction doctrine, pending action by the Insurance Commissioner of the State of California (the "Commissioner"), concerning "whether Plaintiff in fact challenges approved rates within the CDI's exclusive jurisdiction."  Dkt No. 43 at 12.

Following an initial inquiry by the Department, on April 27, 2018 the Commissioner issued a Notice of Hearing for the purpose of determining "(1) whether Allstate has violated California insurance law by using illegal price optimization; (2) how Allstate implemented any such illegal price optimization in its rate and/or class plan; and (3) how any such illegal price optimization impacted Allstate's policyholders." *In the Matter of the Rating Practices of Allstate Insurance Company and Allstate Indemnity Company* (CDI File No. NC-2018-00001) (hereinafter referred to as the "Department Proceeding").  Plaintiff successfully moved to participate in the Department Proceeding as an intervenor.

Vigorous litigation and discovery ensued in the Department Proceeding and spanned several years.  In late November 2022, just days before the evidentiary hearing in the Department Proceeding was set to commence, Plaintiff and Allstate reached an agreement in principle to resolve the claims raised in this Action.  That agreement, and the resulting Settlement[1] which is attached as Exhibit 1 to the Joint Declaration of Proposed Class Counsel ("Counsel Decl."), was reached only after extensive litigation and arm's-length negotiations before Sanford Kingsley, an experienced mediator and former California insurance litigator.[2]

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement, attached as Exhibit 1.

[2] A detailed discussion of the procedural history of this litigation is set forth in paragraphs 3 – 20 of

The Settlement provides for a total fund of $25,000,000 and additional non-monetary relief. The Settlement is fair, reasonable, and adequate, and provides meaningful relief to the proposed Settlement Class, while balancing the risks and delays of continued, protracted litigation in the Department Proceeding and this action, including an evidentiary hearing before the California Insurance Commissioner, potential appeal of the finding in the evidentiary hearing before the California Insurance Commissioner, potential writ of mandamus litigation regarding the powers of the California Insurance Commissioner, additional briefing in this Court regarding the impact of the Commissioner's decision on Plaintiff's claims in this Court, class certification briefing, expert reports and discovery, dispositive motion briefing, trial, and the potential for no recovery to Plaintiff at all. Based on an informed evaluation of the facts and governing legal principles, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    FACTUAL AND LEGAL BACKGROUND

California auto insurers are required to calculate their rates in accordance with a class plan filed with and approved by the Department. Cal. Code Regs. tit. 10, § 2632.11. Section 2632.3(a) defines a class plan as "the schedule of rating factors and discounts, and their order and manner of analysis as required by Section 2632.7, in the development of rates and premiums charged for a policy of automobile insurance."

Rating factors are the rating characteristics that an insurer uses—such as driving record, mileage driven, and years licensed—to determine premiums. *Id.* at § 2632.5. California law identifies three mandatory rating factors that an insurer must use and fifteen optional rating factors that an insurer may use in a rating plan. Based on the insurer's loss data, the insurer calculates a number, called a relativity, for each gradation or category of each rating factor that reflects the risk presented by that gradation or category. The process for calculating a relativity includes producing an "indicated relativity" which is a rating relativity based on an estimate of loss costs and expenses that an insured may experience based on the insurance policies written. The relativity for a category exceeds 1.00 if the risk presented by policyholders in that category is greater than average; the relativity is lower than

the Joint Declaration of Plaintiff's Counsel.

1.00 if the risk presented by such policyholders is less than average. Individual premiums are determined by multiplying the base rate, which is the same for all policyholders, by the relativity for the category the insured fits into of each rating factor.

Private passenger auto insurance ratemaking is highly regulated in California. California ratemaking law is unique in that it requires an insurer to perform a mandatory analysis for each rating factor in a particular order, called a sequential analysis, to determine the relativity for each gradation or category of each rating factor. *Id.* at § 2632.7. This process begins with calculating indicated relativities for an individual rating factor. The insurer then selects relativities for all categories within that rating factor using its actuarial judgment. California ratemaking law requires that selected relativities for a rating factor must be balanced to a weighted average of 1.0 for multiplicative factors.[3]

California ratemaking law also mandates that the rating factors have certain weights, meaning that the rating factors must have certain levels of importance in calculating a policyholder's overall rate. *Id.* at § 2632.8. Under the California ratemaking law, the weights of the factors must align in decreasing order of importance as follows: driving safety record must have the most weight followed by annual miles driven followed by years of driving experience followed by the weight for the optional rating factors. To achieve compliance with the weighting requirements of the California ratemaking law, an insurer may use a process referred to as "pumping and tempering" the rating factor relativities using formulas provided by the Department. This process provides a proscribed formula to adjust rating factor relativities for compliance with the weighting requirements.[4]

Under section 2632.7(a), the relativities derived from the sequential analysis process are used to calculate individual premiums. An insurer must file a class plan with the Department for review. An insurer may only calculate premiums in accordance with a class plan that is filed with and

---

[3] As a result of the balancing requirements, alterations in the relativities results in no change to the overall rate level. In other words, a class plan filing is rate neutral. Accordingly, if certain rating factors relativity selections result in higher rates for some classes of insureds, other classes of insureds necessarily receive lower rates.

[4] As a result of the weighting requirements, insurers may need to use pumping and tempering for certain rating factors and/or classifications within a rating factor in order to comply with the California ratemaking law. This necessarily results in adjustments to other rating factors given the sequential structure of the proscribed analysis.

approved by the Department and may not calculate premiums in any other manner unless and until and new class plan is filed with and approved by the Department.

In the class plan Allstate filed in 2011, however, which became effective July 13, 2012 following approval by the Department, and which except for the elimination of gender as a rating factor is still in effect today, Plaintiff alleges that Allstate did not use relativities derived from its sequential analysis to determine premiums for policyholders with certain characteristics. Rather, according to Plaintiff's claim, Allstate used relativities that exceeded both the relativity based on the loss data in the sequential analysis—i.e., the indicated relativity—and also exceeded the relativity Allstate used in its prior class plan, which Allstate refers to in its 2011 class plan as the current relativity. Plaintiff's theory of liability is that such relativity selections were improper and based, at least in part, on consideration of elasticity of demand. Allstate disputes Plaintiff's theory and the allegation that it did not use the rating factor relativities derived from its sequential analysis. Allstate maintains that it selected rating factor relativities consistent with its sequential analysis including the mandated pumping and tempering procedure, and did not in any way consider elasticity of demand.

The policyholders for whom Plaintiff alleges Allstate used relativities that exceed indicated and current relativities are drivers who have certain types of policies in addition to an auto policy, and those licensed for 29 or more years who have comprehensive coverage, and/or have been licensed for 34 or more years and have collision coverage. As a result of Allstate's use of relativities that exceeded both indicated and current in calculating premiums for those policyholders, Plaintiff alleges that Allstate charged those policyholders more than it would have charged them based on the risk they presented. Those policyholders are the members of the Settlement Class.

Allstate denies Plaintiff's allegations. Allstate, relying on its underlying workpapers, contends that the selection of relativities complied with California law and resulted from the application of the proscribed sequential analysis, including the required pumping and tempering, carried out for each rating factor. Allstate asserts that it never used a retention model or any information regarding elasticity of demand in any way in selecting rating factor relativities in its class plan. In addition, Allstate asserts that it did not have information regarding and did not take into account the willingness of any California policyholder or class of policyholders to pay a higher premium in its selection of

5

rating factor relativities.  Allstate did not use the alleged "Earnix" method of setting prices, or any other mechanized pricing methodology including the Broaden the Target program, Complementary Group Rating program, or Table Assignment Number rating program.  Allstate maintains that its rating factor relativity selections were a product of legitimate actuarial considerations that strictly complied with the proscribed sequential analysis process and considered the balancing and weighting requirements as required by California law.  Allstate maintains that it charged all policyholders its filed and approved rates.

### III.    SUMMARY OF MATERIAL SETTLEMENT TERMS

**A.    The Proposed Settlement Class**

The Settlement Agreement ("SA") seeks certification of the following Settlement Class:

> [A]ll current and former Allstate California auto insurance Primary Policy Holders whose total premiums were calculated, at any time on or after July 1, 2016, based on Allstate's selection of a rating factor relativity exceeding both the Current and Indicated rating factor relativities for certain coverages in connection with the Years Licensed and/or Multipolicy rating factors. Specifically, those Primary Policy Holders include (a) any Primary Policy Holder whose premiums were determined based on licensure for 29 or more years and had Comprehensive coverage, (b) any Primary Policy Holder whose premiums were determined based on licensure of 34 or more years and had Collision coverage, and (c) any Primary Policy Holder who in addition to their auto policy had a condo, life, and/or mobile home policy and did not have a renters policy.

SA ¶ 58. Primary Policy Holder is defined in the Settlement Agreement to include the first named insured on any private passenger auto insurance policy issued by Allstate in the state of California during the period July 1, 2016, through September 30, 2022.  SA ¶¶ 29, 47.  The parties estimate that the Settlement Class consists of approximately 1,293,698 Primary Policy Holders.  Counsel Decl. 49.

The definition of the class in the operative complaint is "[a]ll Allstate customers in the state of California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased automotive vehicle insurance, were subject to Allstate's practice of using elasticity of demand as a rating factor, and were charged or paid a higher premium than the risk-based premium."  The Settlement Class differs from the class set out in the operative complaint in two ways.  Guideline 1(a).

*First*, the Settlement Class definition is based on factual developments during many months of fact and expert discovery taken in connection with the proceedings before the Department of Insurance, wherein Plaintiff identified the specific categories of policyholders who were allegedly harmed by Allstate's price optimization strategies.  Counsel Decl. ¶¶ 34-35.  In particular, Class Counsel learned through extensive discovery that, based on Plaintiff's theory of liability, Allstate's alleged price optimization strategies allegedly impacted rates for the policyholders in categories (a)-(c) of the above Settlement Class definition.

*Second*, the Settlement Class is limited *to* qualifying policyholders whose premiums were calculated on or after July 1, 2016.  Notably, the Department published a notice on February 18, 2015, prohibiting the use of price optimization and requiring insurers using price optimization to file new class plans eliminating factors based on price optimization within six months, i.e., by August 18, 2015.  Dkt. No. 29.  By not filing and obtaining the Department's approval of such a new class plan, Plaintiff contends that Allstate was charging unapproved rates beginning approximately 16 months after the date of the Bulletin.  That 16 months is the total of the six months the Department gave insurers to file new class plan, plus 10 months, which is the time it took for the Department to approve Allstate's 2011 class plan.  The start date of July 1, 2016 in the Settlement Class definition approximates the earliest date on which Plaintiff alleges Allstate could have implemented a class plan which did not include price optimization.  *Id.* ¶ 38.

## B.    Benefits to the Settlement Class

The Settlement Agreement obliges Allstate to pay a Settlement Amount of $25,000,000, inclusive of all payments to be made to the Settlement Class, any attorneys' fees, costs and Service Award ordered by the Court, any costs to be paid to the Settlement Administrator, the costs of providing notice to the Settlement Class, and any *cy pres* payment required to be made under the Settlement Agreement.  SA ¶ 61; Guideline 1(c).

After payment of costs of administration and notice and any fees, expenses, and Service Award authorized by the Court, the Net Settlement Amount will be equally distributed among all Settlement Class Members.  SA ¶ 36; Guideline 1(e).

Further, the Settlement Agreement provides meaningful additional non-monetary relief on behalf of the Settlement Class:

- It requires Allstate to file a new class plan that does not consider an individual's or class's willingness to pay a higher premium.  On February 2, 2023, Allstate filed such a class plan with the Department.  With non-material exceptions, it does not use rating factor relativities for either the multipolicy rating factor or the years-licensed rating factor that exceed both indicated and current.  Plaintiff asserts that Allstate's selection of rating factor relativities that do not exceed current and indicated for the years licensed and multipolicy rating factors, all else equal, will result in premiums for those rating factor relativities that Plaintiff estimates are, on an annual basis in total, millions of dollars less with respect to those rating factor relativities.  Counsel Decl. ¶ 40.  Allstate disagrees with this assertion and that its prior rating plan considered an individual's or class's willingness to pay a higher premium.

- Allstate has also agreed to explain in writing the basis of any relativity selections it makes that exceed the indicated relativity by more than 5% in any class plan it files over the next ten years.  The Department thereby will have the opportunity to make its own decision as to the validity of Allstate's explanation, and the public will be able to see Allstate's justification for its selections.  Allstate has provided such an explanation with the filing memorandum accompanying the class plan filed on February 3, 2023, which is presently pending review and approval by the Department.

- The Settlement Agreement also prohibits Allstate from in any way considering an individual's or class's willingness to pay a higher premium in setting its rates.

SA ¶¶ 72-73.  The non-monetary relief contemplated under the Settlement Agreement has substantial value, providing security to Settlement Class Members and California private passenger auto policyholders generally going forward, and substantially constraining Allstate's ability to implement any price optimization measures in the future.  Guideline 1(c).

If any amount remains from the Net Settlement Amount after the Settlement Administrator has made a reasonable effort to locate intended recipients of settlement funds whose checks were returned, this amount will be distributed to the Center for Auto Safety, the *cy pres* recipient selected by the

Parties.  SA ¶ 100.  As will be detailed in a declaration Class Counsel will submit prior to the final approval hearing, the Center for Auto Safety[5] is a known advocate for auto insurance consumers, and its interests are aligned with those of the Settlement Class Members.  The Center for Auto Safety is independent from the Parties, their Counsel, and the Court.  Guideline 8.

The $25,000,000 Settlement Amount combined with meaningful non-monetary relief is a fair and reasonable relief for the Settlement Class in light of Allstate's numerous defenses and the challenging and unpredictable path of litigation Plaintiff would have faced absent a settlement.  In particular, if Plaintiff continued to litigate, she likely would not see any recovery for several years and would face the following risks:

1.      After an evidentiary hearing, the CALJ could find that Allstate has not engaged in price optimization or that any such alleged price optimization did not impact policyholders.

2.      Even if the CALJ found that Allstate engaged in price optimization that impacted policyholders, the Commissioner could nevertheless reject that finding.

3.      While Plaintiff believes the Commissioner's findings pursuant to the Court's primary jurisdiction referral are not appealable—since an appeal of that finding would defeat the purpose of a primary jurisdiction referral—Allstate disputes Plaintiff's position and believes that it has a right to judicial review pursuant to Cal. Code Civ. Proc. § 1094.5.  Allstate also asserts that it has the right to challenge the hearing procedures via an action for a writ for administrative mandamus.  Allstate believes that a stay of this action would be required pending any appeal.

4.      Were the Commissioner to find that Allstate has price optimized, and were this Court to adopt that finding, Allstate could still seek to have the remaining claims in this case dismissed based on *MacKay v. Superior Court*, 188 Cal. App. 4th 1427 (2010).

5.      Plaintiff could also have faced obstacles to proving damages and obtaining class certification that are typical in any class action.

6.      Plaintiff further would have to survive summary judgment.

---

[5] Center for Auto Safety, https://www.autosafety.org/ (last visited Sep. 15, 2023).

NOTICE OF MOT. AND MEMO. IN SUPP. OF PL.'S UNOPPOSED MOT. FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

7.      Allstate could appeal an adverse result in this Court to the Ninth Circuit Court of Appeals.

The Settlement Agreement avoids all of these risks.

## C.      Settlement Administrator and Administration Costs

The proposed Administrator is Kroll Settlement Administration LLC ("Kroll"), a highly regarded class action administration firm.  Decl. of Scott M. Fenwick of Kroll Settlement Administration ("Admin Decl.") ¶ 2.  To select an Administrator, Class Counsel reviewed bids from three prominent settlement administrators.  Each of these administrators submitted proposals containing similar methods of notice and proposed payments to the class at similar costs.  Ultimately, Kroll's proposal was the most cost effective in light of the Administrator's comprehensive proposed notice program and administration plan.  Counsel Decl. ¶¶ 52-54; Admin Decl. ¶ 3.  The proposals are described in further detail in the Administrator's Declaration.  Admin Decl. ¶¶ 5-21.  Tycko & Zavareei has worked with Kroll four times in the past two years; Berger Montague has worked with Kroll four times in the past two years; and Mehri & Skalet has not worked with Kroll in the past two years.  *Id.* ¶ 55; Guideline 2(a).

The Settlement Agreement provides that, within 14 days of Preliminary Approval of the Settlement, Allstate will deliver to the Settlement Administrator $1,100,000 from the Settlement Amount, which is an estimate of the amount needed to pay for the Notice Program and administration of the Settlement Administrator.  SA ¶ 69.  While the Settlement Administrator may ultimately require more than this $1,100,000 estimate, the Settlement Administrator has agreed to cap Settlement Administration Costs at $1,057,030.  SA ¶ 87; Admin Decl. ¶ 24; Guideline 2(a).

Assuming 1,293,698 Settlement Class members, which is the estimated size of the Settlement Class based on Allstate's review of its records, the Administrator estimates that the costs of notice and administration will be approximately $1,050,000 which is consistent with the costs estimated by the other settlement administration proposals that Class Counsel reviewed, and consistent with amounts charged by other settlement administrators for similar notice and payment methods.  Counsel Decl. ¶ 52; Admin Decl. ¶ 24.  These costs are reasonable in light of the size of the Settlement.

The Administrator will administer payment of the Settlement Amount to Settlement Class Members who are Past Primary Policy Holders or Non-Remaining Current Primary Policy Holders in accordance with the Court's Final Approval Order and will oversee the issuance of payments of the Settlement Amount to Settlement Class Members who are Remaining Current Primary Policy Holders[6]; oversee the provision of Notice to Settlement Class Members; provide CAFA notice; respond to inquiries made by Settlement Class Members via mail or telephone; process any requests for exclusion from the Settlement Class; provide Class Counsel and Allstate regular updates regarding the number of exclusion requests that it received; and perform a number of other Settlement Administration-related functions.  SA ¶¶ 78, 97-98. The Administrator also explains in its declaration its comprehensive procedures for ensuring the security of Settlement Class Member data, its acceptance of responsibility and maintenance of insurance in case of errors.  Admin Decl. ¶¶ 25-28; Guideline 2(b).

**D.      Class Member Release**

As consideration for the benefits conferred through the Settlement, the Settlement Agreement releases Plaintiff's and each Settlement Class Member's claims against Allstate from any claims that were or could have been alleged based on the facts pleaded in the Complaint or FAC in this action.  SA ¶ 101.  The release is appropriately tailored, as it is limited to claims arising from Allstate's alleged use of price optimization in California.  SA ¶ 50; Guideline 1(b).

**E.      Proposed Plan of Notice**

Under the proposed Notice Plan, the Notice will include, among other things: (1) deadlines for Settlement Class Members to "opt out" of the Settlement Class or object to the Settlement; (2) the date of the Final Approval Hearing, and a statement encouraging class members to review the docket or the Settlement Website to confirm whether the date has changed; (3) the web address of the Settlement Website; (4) contact information for class counsel; and (5) information to help Settlement Class

---

[6] Per the Settlement Agreement, Allstate will, at its own cost, under the direction of the Settlement Administrator, issue payment of the Settlement Amount to Settlement Class Members who are Renewing Current Primary Policy Holders in the form of a premium credit. SA ¶ 77.

Members access this action's docket on PACER and in person.  SA ¶¶ 80-89; Admin Decl. ¶¶ 18-19; Guideline 3(a)-(e).

The Notice Plan outlines the three ways in which Notice will be provided: (1) Email notice to Settlement Class Members for those individuals for whom Allstate has email addresses and who have agreed to accept policy information from Allstate via email; (2) Postcard notice for Settlement Class Members who have not provided Allstate their email address; and (3) a Long Form Notice with details regarding the Settlement, available on the Settlement Website or, by request, via regular mail.  SA ¶ 83.  The Notice Program described in this paragraph will be completed no later than 90 days after entry of a Preliminary Approval Order.  SA ¶ 87.  The Notice Program is designed to reach 91% of the likely Settlement Class Members.  Admin Decl. ¶ 17.

The Settlement Website, which will be created and operated by the Settlement Administrator, shall contain: (1) the Long Form Notice described above in English and Spanish; (2) other relevant documents available for download, including important case documents such as the Settlement Agreement, this Motion for Preliminary Approval, the Motion for Final Approval, and any motions for attorneys' fees and/or service award.  Admin Decl. ¶ 18-20.

**F.    <u>Opt-Outs and Objections</u>**

The Notice will inform Settlement Class Members of the procedure to opt out of the Settlement Class.  The Settlement Agreement provides that Settlement Class Members may opt out of the Settlement Class at any point during the "Opt-Out Period," which ends 120 days after Preliminary Approval.  SA ¶¶ 40, 80-81; Guideline 9.  The Notice will specify the opt out deadline and will inform Settlement Class Members of the procedure to opt out of the notice.  SA ¶¶ 80-81.  Among other things, the Notice will inform Settlement Class Members that they may opt-out by sending an opt-out request to the Settlement Administrator.  SA ¶ 81; Guideline 4.

The Notice will also inform Settlement Class Members of the procedure by which they may object to the Settlement Agreement, and to Class Counsel's motions for attorneys' fees and/or a service award. Settlement Class Members' objections must: (1) be in writing; (2) clearly identify the case name and number; (3) state whether it applies only to the Settlement Class Member, or to a larger portion of the Settlement Class; (4) specifically identify the basis for the objection; (5) be submitted to

the Court; and (6) be filed or postmarked on or before the end of the Opt-Out Period, which date shall be specified in the Notice. SA ¶ 81. The Notice will explain that the Court is limited to approving or denying the proposed Settlement, and that it cannot change the terms of the Settlement Agreement. Guideline 5.

## G.     Attorneys' Fees, Costs, and Service Awards

Class Counsel will move the Court for an award of attorneys' fees, which will be capped at thirty percent (30%) of the Settlement Amount, or $7,500,000. SA ¶ 104. Class Counsel will also move the Court for an award of reasonable costs and expenses. Any award of attorneys' fees and/or costs will be paid out of the Settlement Amount. Allstate has agreed not to challenge Class Counsel's request for an award of attorneys' fees up to one third of the Settlement Amount. Class Counsel will also move for approval of a Service Award to the Class Representative of $5,000, which will be paid out of the Settlement Amount. SA ¶ 103. Allstate agrees not to challenge this request. Guidelines 6-7.

## H.     Class Action Fairness Act

The proposed Settlement fully complies with the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1711 *et seq.*; Guideline 10. The proposed Settlement does not provide for a recovery of coupons, does not result in a new loss to any Class Member, and does not treat Class Members inequitably based upon geographic location or any other factor. *See* 28 U.S.C. §§ 1712-14. Moreover, "[u]pon the filing of the motion requesting issuance of the Preliminary Approval Order, Allstate will provide timely notice of such motion as required by 28 U.S.C. § 1715." SA § 75; Guideline 10.

## I.     Results in Comparable Cases

Plaintiff has identified three comparable cases which involve similar allegations concerning price optimization of automobile insurance. Guideline 11. These comparable cases, which are discussed here, are also summarized in a chart included as Appendix A to this Motion.

*Harris, et al. v. Farmers Insurance Exchange, et al.*, Superior Court of California, Case No. BC57948*:* The proposed settlement with Allstate is similar in structure to the settlement Plaintiff's counsel reached with Farmers in *Harris*. In both cases, the settlement classes include insureds that the respective plaintiffs alleged paid more for their insurance because the defendant insurer improperly and

unlawfully considered their elasticity of demand in setting their rates.  Specifically, in *Harris*, the settlement class included policyholders with inelastic demand who paid more than the risk they presented justified because they had been with Farmers for nine or more years.  Here, the Settlement Class includes two types of policyholders that Plaintiff alleged have inelastic demand and who Plaintiff asserts paid more than the risk they presented justified: drivers with both an Allstate auto policy and certain other types of Allstate policies, and experienced drivers with comprehensive coverage or collision coverage.  The *Harris* settlement received final approval on September 4, 2020.  Here is how the *Harris* settlement and the proposed Settlement in this case compare:

1.      Amount of the settlement.  The settlement amount in *Harris* was $15 million.  The Settlement Amount here is $25 million.

2.      Additional non-monetary relief.  The additional relief provisions in the *Harris* agreement prohibited Farmers from considering price optimization in setting auto insurance rates, and also prohibited Farmers from challenging the Commissioner's legal authority to regulate the use of price optimization.  The proposed Settlement with Allstate prohibits Allstate from using price optimization when developing auto insurance rates and class plans in California, and also requires Allstate to file a new class plan which does not consider elasticity of demand.  On February 3, 2023, Allstate did file such a new class plan with the Department.  As discussed in section B above, and as more fully set forth in the Joint Declaration of proposed Class Counsel, with non-material exceptions that class plan does not use relativities for the multipolicy or years licensed rating factors that exceed both indicated and current, and in many cases uses relativities that are lower than both indicated and current.  Counsel Decl. ¶¶ 39-44.  Plaintiff's counsel estimate that Settlement Class members will pay millions of dollars less per year in total for the rating factor relativities that are part of the Settlement, all else equal, due to Allstate's using the relativities in its new class plan rather than those it used in its 2011 class plan.  *Id.* ¶ 40.  As stated above, Allstate disputes this assertion.

The additional non-monetary relief also requires Allstate, in its new Class Plan and any subsequent California private passenger Class Plans filed in California for a period of 10 years, to explain in writing the basis for any relativity selections it makes that are 5% more than the calculated indicated relativity.

14

3.    <u>Number of class members and compensation to each class member</u>.  In *Harris*, the class consisted of approximately 750,000 policyholders.  The compensation to each class member before deduction of any court-approved attorneys' fees, expenses, settlement administration costs, and service awards to class representatives was about $20.00.  After such deductions, the net compensation to each class member was $15.15.

In this case, the Class consists of approximately 1,293,698 policyholders, and the compensation to each class member before deduction of any Court-approved attorneys' fees, expenses, settlement administration costs, and service awards to class representative is $19.32.  Counsel Decl. ¶ 49.  After deductions of maximum amounts allowable under the Settlement Agreement for fees, expenses, settlement administration costs and service award, Plaintiff's counsel estimates that the net compensation to each class member will be $12.40.

*Tryfonas, et. al v. The Allstate Corp., et al.*, Cir. Ct. Madison County, Illinois, No. 2016-L-000880 – Plaintiff's counsel represent the plaintiffs in *Tryfonas*.  There, the plaintiffs allege that Allstate uses price optimization when setting insurance rates for customers in Illinois. The plaintiffs filed a motion for class certification on June 24, 2022, which the court denied in November 2022.  The plaintiffs filed petition for leave to appeal the court's denial of class certification, which the Illinois Appellate Court denied in March 2023.  Plaintiffs' petition for leave to appeal the Illinois Appellate Court's decision was denied by the Supreme Court of Illinois on September 27, 2023.

*Trzeciak v. Allstate Prop. & Cas. Ins. Co.*, No. 21-10737 (E.D. Mich. 2021):  Plaintiffs alleged that "Allstate breached their insurance contract and committed silent fraud by overcharging premiums based on non-risk factors that actually disadvantage long-term policy holders." *Trzeciak v. Allstate Prop. & Cas. Ins. Co.*, 569 F. Supp. 3d 640, 643 (E.D. Mich. 2021).  The court found that the plaintiffs failed to state a claim and granted Allstate's motion to dismiss the plaintiffs' amended complaint, with prejudice. *Id.* at 650.

## IV.    **LEGAL STANDARD**

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."

15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  At the preliminary approval stage, courts generally "require a determination of whether the proposed settlement 'falls within the range of possible approval' and 'has no obvious deficiencies.'"  *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at \*4 (N.D. Cal. Mar. 29, 2019).  Moreover, preliminary approval should be granted where the parties have 'show[n] that the court will likely be able to . . .approve the proposal under [the final approval factors in] Rule 23(e)(2)'" and 'certify the class for purposes of judgment on the proposal.'"  *Id.* (citing Fed. R. Civ. P. 23(e)(1)(B)).  The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  In particular, determining whether a proposed settlement is fair, adequate and reasonable depends upon:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likelyduration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C. v.* General *Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

## V.    ARGUMENT

**A.    The Settlement Agreement warrants preliminary approval.**

The Settlement satisfies each factor for preliminary approval in the Ninth Circuit and under Rule 23.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e).  The Settlement provides meaningful relief directly to the Class Members while avoiding the considerable risks of continuing with the litigation.  Without admitting that any class in this action or any similar action could be certified, Allstate supports certification of a class in this action as set forth in the Settlement Agreement for settlement purposes only.

Generally, heightened scrutiny applies if settlement is achieved prior to certification of a litigated class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). But courts have noted that certain factors obviate the concerns that lead to imposition of a higher standard, such as where the settlement is achieved prior to certification but after extensive discovery. *See Banks v. Nissan N. Am., Inc.*, 2015 WL 7710297, at *8 (N.D. Cal. Nov. 30, 2015) ("[U]nlike most pre-certification cases, extensive discovery has been conducted in this case, lessening the concern over informational deficiencies between the parties."); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. 1979) (settlement discussions began after six months of discovery; action pending for three years, court fully briefed). Here, the Settlement was reached after the Parties completed all fact and expert discovery in the Department Proceeding, including reviewing over 400,000 pages of documents produced by Allstate, deposing eight current and former Allstate employees, and exchanging reports by experts opining on actuarial issues and damages. Counsel Decl. ¶¶ 9-16.

Any settlement requires the Parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes her claims and the claims of the proposed Settlement Class are meritorious and that she would prevail if this case proceeded to trial. *Id.* ¶¶ 34-38. Allstate denies liability and has indicated a willingness to continue to litigate vigorously. *Id*. Allstate argues that the selection of relativities for the rating factors in its 2011 class plan complied with California law, including the sequential analysis and factor weighting requirements under the California Insurance Code and regulations. Allstate also notes that it is undisputed that it did not use Earnix as alleged in the Complaint, or any other price optimization software or any mechanized form of price optimization, in preparing the 2011 class plan. Allstate contends that it has never used any price optimization methodology whatsoever in California. Allstate further notes that this Court has found that Section 1860.1 of the California "is a so-called immunity statute that prohibits private causes of action against an insurer challenging their auto insurance rates approved by the Commissioner." Dkt. No. 43.

Thus, Plaintiff anticipates that Allstate would vigorously defend its position during an evidentiary hearing in the Department Proceeding, would seek an administrative appeal of any ruling against Allstate by the Commissioner, would seek to dismiss Plaintiff's claims in this Court on a

17

motion for summary judgment, would oppose a motion for class certification, and would file *Daubert* challenges to any experts upon which Plaintiff relies.  Counsel Decl. ¶¶ 27-28.  Plaintiff also faces a risk of a loss at trial.  In short, it is clear that if this case continues in litigation, the Class Members will have to wait much longer before receiving any recovery—if they recover at all.  In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review.  *Id.* ¶¶ 28, 45-48.

#### i. Rule 23(e)(2)(B): The Settlement is the product of good-faith, informed, arms' length negotiations.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action settlement.  *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 570 (9th Cir. 2019); *see* Fed. R. Civ. P. 23(e)(2)(B).  Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc*., 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

Here, the Settlement is the result of intensive, arms' length negotiation between experienced attorneys who are familiar with the legal and factual issues in this Action, as well as class action litigation generally. Before agreeing upon the terms of the Settlement, the Parties participated in numerous mediation sessions before mediator Sanford Kingsley, who is an experienced former California insurance litigator.  Counsel Decl. ¶ 17.  Plaintiff's counsel also had frequent discussions with Mr. Kingsley and with counsel for Allstate, both separately and together, including particularly intense and intensive discussions during the Thanksgiving holiday in 2022.  Plaintiff's counsel also participated in settlement discussions with all parties to the Department proceeding.  *Id.* ¶ 18.

In advance of the parties' first mediation session, which was on January 26, 2022, the Parties completed fact discovery and expert discovery in the Department proceeding.  Counsel Decl. ¶¶ 74-76. Moreover, as part of the mediation proceeding, Plaintiff requested, and Allstate produced, internal data that the parties used to make a reasonable estimate of the number of Class Members.  *Id.* ¶ 49.  Class Counsel has litigated other cases involving similar factual and legal issues and understands what information is critical to determine membership in the Settlement Class and how to calculate damages.

*See* Section I above.  The Parties' vigorous negotiation of the claims in this action evidence an absence of collusion and the presence of fairness and good faith.

In addition, the Settlement does not include any of the indicia of collusion identified by the Ninth Circuit, including whether (i) plaintiff's counsel receive a disproportionate distribution of the settlement, (ii) the settlement agreement includes a "clear sailing" provision, or (iii) the agreement contains a reverter clause.  *Briseño v. Henderson*, 998 F.3d 1014, 1026-27 (9th Cir. 2021); *In re Bluetooth*, 654 F.3d at 946-47.  There is no clear sailing agreement because any fees awarded will be paid from the common fund, not separately from Allstate.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (finding that a clear sailing agreement "provides for the payment of attorneys' fees separate and apart from class funds.").  And there is no reversionary component: all funds will be distributed pro rata to Class Members.  Counsel Decl. ¶ 49.  To the extent any Class Members do not cash their settlement distribution check, any amounts remaining in the Settlement Fund will be paid to a *cy pres* recipient, subject to the Court's approval.  *Id.*  Under no circumstances will any funds be returned to Allstate.

### ii.    Rule 23(e)(2)(C): The Settlement is fair, adequate, and reasonable.

A review of the relevant factors supports the conclusion that the Settlement falls within the "range of reason" such that the Court should preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule a Final Approval Hearing.

### 1.    The Strengths and Risks of Plaintiff's Case and the Complexity and Likely Duration of Further Litigation

First, as discussed in Section B above, the Settlement is fair, adequate, and reasonable given the strengths and risks of Plaintiff's case.  While continued litigation presents serious risks, the Settlement provides immediate and substantial benefits to Class Members.  It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013).

## 2. The Risk of Maintaining Class Action Status

Second, the risk of maintaining class action status through trial supports preliminary approval of the Settlement. Counsel Decl. ¶ 28. The class has not yet been certified, and Allstate will oppose certification if the case proceeds. Plaintiff "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at \*10 (C.D. Cal. Sept. 24, 2014).

## 3. The Amount Offered in Settlement

Third, the Common Fund of $25,000,000 is a good recovery for the Class. Plaintiff and Allstate dispute the estimated reasonable recovery of the Settlement Class. Using estimates of Plaintiff's counsel (which Allstate vigorously disputes), the $25,000,000 represents approximately 18.2% of the $137.5 million which Plaintiff's counsel estimate the Settlement Class could have reasonably recovered if it had prevailed before the Commissioner, before this Court, and on appeal. Counsel Decl. ¶ 38; Guideline 1(c). Allstate disagrees with Plaintiff's methodology. It maintains that Plaintiff's methodology does not consider the fact that an alteration in rating factor relativities for one coverage requires an equally upward alteration in rating factor relativities for other coverages to comply with the balancing requirements in the California rating law. Allstate also maintains that Plaintiff's methodology does not consider how changes to the rating factor relativities necessarily require changes to other rating factor relativities for other rating factors as a result of the weighting requirements in the California rating law. Allstate asserts that these changes would produce significant, if not complete, offsets to any alleged damages.

Plaintiff believes the Settlement is similar to or better than the outcomes in other lawsuits involving auto insurance price optimization. *See* Section I above; Guideline 11. Plaintiff's expert opined that Allstate had engaged in price optimization in four different ways: (1) by failing to use loyalty—tenure with Allstate—as a rating factor; (2) by using relativities that exceeded indicated for drivers qualifying for Allstate's Level 3 Distinguished Driver Discount; (3) by using such relativities for multi-policy policyholders; and (4) by using such relativities for drivers licensed for 39 or more years who had comprehensive or collision coverage.

Allstate challenged the opinions and methodology of Plaintiff's expert. Allstate's expert opined that Allstate's 2011 class plan was not the product of price optimization or consideration of

elasticity of demand, and that Allstate's rating factor relativities did not constitute price optimization. Allstate's expert further opined that Allstate's rating factor relativity selections were actuarially sound and produced risk-based rates.

In preparing for trial and further evaluating the evidence, Plaintiff concluded that her strongest theory was that Allstate engaged in price optimization in the selection of rating factor relativities that exceeded both current and indicated. Applying this theory of liability, Plaintiff became convinced that her first theory—price optimization through the non-use of a loyalty discount—had essentially no chance of succeeding. That is because loyalty is not a mandatory rating factor but rather only an optional rating factor. Thus, no law requires Allstate to use a loyalty discount. And Allstate's effective rating factor relativity selection of 1.0 (no discount) did not exceed both current and indicated. Further, neither the Department's actuary nor Consumer Watchdog's actuary found that Allstate's non-use of loyalty constituted price optimization. The claim that Allstate's failure to use such a discount constitutes illegal price optimization thus would have been very difficult to prove and essentially non-viable.

Plaintiff similarly concluded that the theory of price optimization alleged as to the relativities used for the Level 3 Distinguished Driver Discount was also very unlikely to succeed. That is because the relativities Allstate used for its Level 3 Distinguished Driver Discount Allstate were simply carried over from its 2008 class plan to its 2011 class plan. Allstate also carried over to its 2011 class plan the relativities it used in its 2008 class plan for several other rating factors, including Model Year, Usage, Experience Group, Economy Car, and the Good Student Discount, and did not increase any of those relativities above the level they were at in its 2008 class plan. The argument that Allstate used price optimization in these instances of carrying over relativities from its 2008 class plan constitutes illegal price optimization thus would have been very difficult to prove and essentially non-viable.

In contrast, for certain categories of multi-policy policyholders and for drivers licensed for 29 or more years with comprehensive coverage or for 34 or more years with collision coverage, Allstate did not merely carry over the relativities from its 2008 class plan, but increased those relativities so that they exceeded both the relativities Allstate used in its 2008 class plan and those its most recent data indicated it should use. Allstate argues that the relativity selections were the result of applying the

sequential analysis and weighting requirements under California law.  Plaintiff maintained that Allstate selected relativities for the Years Licensed rating factor in violation of Sections 2632.7 and 2632.8, and that it had no actuarial justification for selecting relativities exceeding both indicated and current for the multipolicy rating factor.  Plaintiff's expert opined both that Allstate's justifications for the relativities for these factors were not actuarially sound, and that Allstate knew that more experienced drivers and drivers with other policies were more likely to retain coverage with Allstate.  Plaintiff therefore concluded that her strongest case for Allstate's price optimization was with respect to experienced drivers and multipolicy policyholders.  Thus, the Settlement Class is limited to those policyholders.

However, even with respect to experienced drivers and multipolicy policyholders, Plaintiff's argument that the reason Allstate used relativities exceeding both current and indicated was the relative lack of price insensitivity of the policyholders for whom it used those relativities was based on circumstantial rather than direct evidence.

In addition, as the Court noted in its March 17, 2016 Order, *MacKay v. Superior Court,* 188 Cal. App. 4th 1427 (2010) interprets Insurance Code section 1860.1 as immunizing private challenges to approved rates and rating factors.  Dkt. No. 43 at 12.  Allstate disclosed to the Department the relativities it was using in its class plan, and the Department approved that plan.  If the Court were to continue to follow *MacKay* (over Plaintiff's objection), any recovery by class members before the date the Department promulgated its price optimization notice would be barred.

Allstate takes the position that none of Plaintiff's claims can survive as a matter of law based on *McKay* because each of Plaintiff's claims implicates Allstate's ratemaking.  At the motion to dismiss stage, this Court stated that Section 1860.1 "is a so-called immunity statute that prohibits private causes of action against an insurer challenging their auto insurance rates approved by the Commissioner."  This Court also stated that "challenges to the ratemaking process itself still remain within the exclusive jurisdiction of the Commissioner pursuant to Section 1860.1, and that "[t]he gravamen of Plaintiff's allegations is a challenge to the approved rates and not the application thereof."  On the other hand, Plaintiff contends that by not filing and obtaining the Department's approval of a class plan eliminating the effects of price optimization after the Department issued its February 18,

2015 Notice, Allstate was arguably charging unapproved rates beginning at least approximately 16 months after the date of the bulletin.  That 16 months is the total of the six months the Department gave insurers to file new class plans, plus 10 months, which is the time it took for the Department to approve Allstate's 2011 class plan.[7]  Plaintiff therefore calculated the potential injury to the Settlement Class related to her viable theories of price optimization beginning on July 1, 2016.  According to Plaintiff, that amount, before any set off for the amount by which Settlement Class members benefitted due to Allstate's use of relativities that were less than both indicated and current, was $137.5 million.[8]  The $25 million settlement is 18.2% of that $137.5 million.[9]  Allstate, on the other hand, believes that Plaintiff's calculation of $137.5 million is overstated and the calculation fails to account for how changing the relativities for certain coverages would require Allstate to make changes to other relativities and/or other rating factors.  Allstate asserts that Plaintiff's damages calculation is not the product of a sequential analysis, including the balancing and weighting requirements, as required by the California rating law and does not reflect a final rate that would be approved by the CDI.  Allstate contends that making those required changes would significantly reduce, if not eliminate, any alleged overcharge to the Settlement Class.

### iii.    Rule 23(e)(2)(D): The Allocation of the Settlement

Fourth, the proposed method of distributing relief will be effective.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Parties have agreed to allocate the Net Settlement Amount in equal payments to each Settlement Class Member, without need for any Settlement Class Member to submit a claim form.  Counsel Decl. ¶ 49.

---

[7] Allstate takes the position that it had no duty to file a new class plan eliminating the effects of price optimization after the Department issued its bulletin, since it never engaged in price optimization to begin with.

[8] Plaintiff's counsel believe the MacKay analysis of 1860.1 is indefensible and that MacKay should be overruled.  But it has not been.  The possibility of Plaintiff recovering for price optimization pre-dating the Bulletin, therefore, was remote.  As a result, Plaintiff did not calculate the amount that the Settlement Class could, theoretically, have recovered for that time period.  However, Plaintiff expects that the potential pre-Bulletin recovery would be less than the post-Bulletin recovery.

[9] The potential class recovery for each of Plaintiff's remaining causes of action overlaps, because each cause of action would entitle the class to equitable relief, including restitution.

23

The settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The pro rata allocation of the Settlement is fair and reasonable because it provides equal relief to all Class Members who make a claim and is consistent with the distribution of funds in the other settlement of an insurance price optimization case.  *See* Section I above; *see also In re Facebook Biometric Info. Privacy Litig.*, 522 F.Supp.3d 617, 629 (N.D. Cal. 2021) (distribution that would provide "pro rata" share of common fund treated class members equitably to one another and "weigh[ed] in favor of final approval"); *Hendricks v. StarKist Co.* No. 13-CV-00729-HSG, 2015 WL 4498083,  at *7–8  (N.D. Cal., July 23, 2015) (approving a flat payment per class member given the "modest payment amounts at issue," and noting that "some courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." (internal quotation marks omitted)); *Edwards v. First American Corporation*, No. CV07-03796-SJO (FFMX), 2016 WL 8943464, at *8 (C.D. Cal., June 20, 2016) (granting preliminary approval of an allocation plan providing an equal payment to each claimant); *Edwards v. First American Corporation*, No. CV-07-03796 SJO (FFMX), 2016 WL 9176564, (C.D. Cal., Oct. 14, 2016) (granting final approval for same); *McCabe v. Six Continents Hotels, Inc*. No. 12-CV04818 NC, 2015 WL 3990915, at *3, 8–10 (N.D. Cal., June 30, 2015) (preliminarily approving a settlement providing equal payments to each claimant); *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332 (N.D. Cal. Feb. 8, 2016) (granting final approval for same); *Kimber Baldwin Designs, LLC v. Silv Communications, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *1 (S.D. Ohio, Nov. 13, 2017) (granting final approval where "[e]ach Class Member submitting a valid claim [would] receive an equal settlement payment").

Plaintiff carefully considered other allocation alternatives and concluded that other approaches were impractical.  For example, allocating the Net Settlement Fund based on length of time a Settlement Class Member was insured by Allstate or with consideration of which allegedly price optimized rating factors impacted the Settlement Class Member's premium would require the Settlement Administrator to analyze voluminous data and would be prohibitively costly to administer.  Counsel Decl. ¶ 49 n.5.  Allstate believes that allocating the Net Settlement Fund based on another metric would exponentially increase the cost and burden of settlement administration.

### 1.    The Extent of Discovery Completed and Stage of Proceedings

Fifth, the extent of discovery completed and the stage of proceedings favor preliminary approval.  Counsel Decl. ¶¶ 17-20.  The Parties engaged in several years of discovery in the Department Proceeding, completing fact discovery and expert disclosures in that Proceeding.  The parties also exchanged pre-filed direct testimony in the Department Proceeding and received rulings on their motions to exclude evidence from the evidentiary hearing in the Department proceeding.  At the time the Parties reached an agreement in principle to settle this lawsuit on a class-wide basis, Plaintiff had made significant preparations for the evidentiary hearing, which was set to commence within 10 days.  Accordingly, Plaintiff had conducted sufficient discovery and pre-trial preparations to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement.

### 2.    The Views of Class Counsel

Sixth, Class Counsel's view is that this Settlement is a good recovery for the Settlement Class given the risks of continuing the litigation.  Counsel Decl. ¶¶ 45-48.  Both Class Counsel and Allstate's counsel are experienced in class action litigation, including cases concerning auto insurance price optimization.  *Id.* ¶¶ 83-86; Section I above.  "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### 3.    Government Participant, Class Member Reaction, Other Cases Affected

The favorable reaction to the Settlement by a government participant, the California Department of Insurance, weighs in favor of preliminary approval of the Settlement.  As described herein, the Department participated in fact and expert discovery in the Department Proceeding and the mediation and settlement negotiations that led to the Settlement.  Counsel Decl. ¶¶ 9, 12, 14, 18-20.  As a result of the Settlement, the Department and Allstate entered into a separate agreement to dismiss the Department Proceeding, pending approval of CALJ Rosi and, subsequently, the Commissioner.  SA ¶ 16; Counsel Decl. ¶ 20.  Dismissal of the Department Proceeding is contingent on this Court granting final approval of the Settlement and the Settlement reaching its effective date.  SA ¶ 16; Counsel Decl. ¶ 16.

Because the Court has not yet approved the Class Notice, the Settlement Class has not had an opportunity to react, so this factor is neutral. *See Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2019). Moreover, Class Counsel is aware of no other cases that will be affected by the Settlement. Counsel Decl. ¶ 58; Guideline 1(d).

### iv. Rule 23(e)(2)(A): The Class Representative and Class Counsel have adequately represented the proposed class

Under Rule 23(e)(2)(A), the Court should also consider whether the Settlement Class Representative and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *6 (C.D. Cal. Oct. 25, 2019). Here, Plaintiff Stevenson has adequately represented the class by "actively participat[ing] in the prosecution of this case," *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021), and "[t]here are no indications that [Plaintiff has] failed to adequately represent the interests of the class." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021).

Class Counsel have also adequately represented the class. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases, and in litigating cases concerning insurance price optimization. Counsel Decl. ¶¶ 82-86. Jay Angoff, as a former state insurance commissioner, brought specialized knowledge to the case. Counsel Decl. ¶ 46. Notably, Class Counsel vigorously sought, fought for, and successfully obtained the key document discovery, and deposed current and former Allstate employees responsible for developing Allstate's class plans in California and who possess with other relevant information. Counsel Decl. ¶¶ 9, 70. Class counsel also retained a qualified expert witness to opine on Allstate's price optimization and its impact on Allstate's customers, and successfully defended the expert's opinions from Allstate's motion to strike the opinions. At the same time, Plaintiff's counsel successfully moved to strike certain parts of the pre-filed direct testimony submitted by Allstate's expert witness. *Id.* ¶¶ 10, 13. Allstate believes that the rulings were in error and disagrees that Plaintiff's expert is qualified to offer admissible testimony and similarly moved to strike. Finally, Class Counsel prepared for and participated in

NOTICE OF MOT. AND MEMO. IN SUPP. OF PL.'S UNOPPOSED MOT. FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

several mediation sessions and dozens of settlement negotiations, forcefully advocating for the Settlement Class.  *Id.* ¶¶ 17-20, 76.

>    **v.**    **The proposed Fee and Expense Award is fair and reasonable**

Class Counsel intends to seek attorneys' fees in an amount not to exceed 30% of the $25,000,0000 Common Fund (*i.e.*, $7,500,000), as well as reasonable expenses incurred in the litigation.  Subject to the Court's consideration of a detailed fee application, the proposed award of attorneys' fees is fair.  *See* Fed. R. Civ. P. 23(e)(2)(c)(iii); *see, e.g., In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) (25% of the common fund is benchmark for Ninth Circuit).

In addition, Class Counsel have diligently tracked time throughout the case, and as of August 31, 2023, had spent 6,757 hours litigating the case totaling $5,897,270 in lodestar with $347,404 in expenses, including $224,677 in expert fees.  Counsel Decl. ¶ 78; Guideline 6.  Counsel expects to spend significant additional time throughout the approval process, notice, and claims administration.  *Id.* ¶ 80.  A conservative estimate of the multiplier sought is 1.27, which is well within the range commonly awarded in the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (surveying cases and finding 83% of multipliers between 1.0 and 4.0, and 54% between 1.5 and 3.0).  Any multiplier will diminish over time given the substantial work needed to administer the Settlement.

Class Counsel will also seek a reasonable and fair Service Award for Plaintiff Stevenson.  Guideline 7.  The Settlement Agreement authorizes the Class Representative to seek a service award of up to $5,000, which is well within the range of approval for class action settlements that provide significant benefits to the class.  *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ("Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable.").

**B.**    **Certification of the Settlement Class is appropriate**

On a motion for preliminary approval, the Parties must also show that the Court "will likely be able to … certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

The Settlement Class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3).[10]

The Settlement Class as defined meets Rule 23(a)'s numerosity requirement. The class definition encompasses 1,293,698 Class Members. Counsel Decl. ¶ 49. This number of Class Members demonstrates that joinder is a logistical impossibility. *See, e.g., Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members)). The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Settlement Class's claims here depend on the common contention that Allstate, in violation of California law, used price optimization to charge the Settlement Class Members' auto insurance premiums calculated from relativities that exceeded the indicated relativities. There are at least two common questions in this case: (1) whether Allstate used price optimization in its 2011 class plan; and, if so, (2) whether customers who paid more for their auto insurance due to such price optimization are entitled to restitution.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Here, the Settlement Class Representative's claims are typical of the claims of Class Members because all claims rise from Allstate's price optimization in its 2011 class plan.

Finally, the adequacy requirement is satisfied where the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination,

---

[10] Neither this motion nor the "Settlement Agreement shall be construed as an admission by Allstate that this Action or any similar case is amenable to class certification," nor shall this motion or the Settlement Agreement "prevent Allstate from opposing class certification or seeking decertification of the Settlement Class if final approval of [the] Settlement Agreement is not obtained, or not upheld on appeal, including review by the United States Supreme Court, for any reason." Allstate supports certification of the class for settlement purposes only. SA ¶ 64.

"courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).  Here, the Settlement Class Representative has no conflicts of interest with the Class, and she and Class Counsel have vigorously prosecuted this case on behalf of the class.  *See* Counsel Decl. ¶¶ 59-63, 69-76.

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Common questions predominate over any questions affecting only individual members here.  These questions can be resolved using the same evidence for all class members and are exactly the kind of predominant common issues that make class certification appropriate.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (cleaned up).  Class certification here is also "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case.  There are millions of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress.  *See Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.") (citations omitted).

C.       **The Court should approve the proposed Notice Plan**

The Parties' proposed Notice Plan meets the procedural and substantive requirements of Rule 23.  Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation.  *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

NOTICE OF MOT. AND MEMO. IN SUPP. OF PL.'S UNOPPOSED MOT. FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Here, direct notice will be made via email and U.S. Mail, using addresses in Allstate's records. The proposed Notice Plan is the best notice practicable and is reasonably designed to reach the Class Members.  Admin. Decl. ¶ 17.  Courts have approved similar notice plans.

Moreover, the substance of long-form Class Notice and Summary Notice will fully apprise class members of their rights.  SA at Exs. C-D.  Under Rule 23(e), notice to class members "must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 962 (9th Cir. 2009)).  The Class Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the Settlement Website, where they can obtain more detailed information, explains how to view case filings on PACER or at the Court, and provides a toll-free number for Class Members to call with questions. SA at Ex. D; Guideline 3.  This approach to notice is adequate and will fully apprise Class Members of their rights under Rule 23(e). *See, e.g., Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 2012 WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (approving mailed notice where notice would include the settlement website with full details and the claim administrator's toll-free number).

## VI.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed Settlement; (2) certify the Settlement Class; (3) direct notice to the Settlement Class through the proposed notice program; (4) appoint Plaintiff's counsel as Class Counsel and Plaintiff as Class Representative; and (5) schedule the final approval hearing.

Respectfully submitted this 2nd day of October, 2023.


GOLDSTEIN, BORGEN, DARDARIAN & HO

/s/ *David Borgen*
David Borgen (SBN 99354)
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Cyrus Mehri
cmehri@findjustice.com
Jay Angoff
jay.angoff@findjustice.com
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel: (202) 822-5100

Andrea Gold
agold@tzlegal.com
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, DC 20006

Jeffrey Osterwise
josterwise@bm.net
BERGER MONTAGUE PC
1818 Market Street. Suite 3600
Philadelphia, PA 19103

# Appendix A

**STEVENSON V. ALLSTATE INS. CO, ET AL.**

## APPENDIX A – INFORMATION CONCERNING COMPARABLE OUTCOMES

| Case | *Harris et al. v. Farmers Insurance Exchange, et al.*, **Los Angeles Super. Ct. Case No. BC57948** | *Tryfonas, et al. v. The Allstate Corp., et al.*, **Cir. Ct. Madison County, Illinois, No. 2016-L-000880** | *Trzeciak v. Allstate Prop. & Cas. Ins. Co.*, **No. 21-10737 (E.D. Mich. 2021)** |
|---|---|---|---|
| **Claims Released** | All claims that were raised or could be raised in the operative complaint—*i.e.*, all claims relating to overpayment for Farmers' auto insurance caused by Farmers' unlawful consideration of demand elasticity in setting its rates. | N/A | N/A |
| **Total Settlement Fund** | $15 million | N/A | N/A |
| **Number of Class Members** | Approximately 609,000 members | N/A | N/A |
| **Number of Class Members to Whom Notice Was Sent** | 608,912 | N/A | N/A |
| **Methods of Notice** | Email notice, long-form notice, and publication notice via several prominent local newspapers, Facebook, and Google Display Network | N/A | N/A |
| **Number and Percentage of Claims Submitted** | N/A – direct payment, no claims process | N/A | N/A |

**STEVENSON V. ALLSTATE INS. CO, ET AL.**

| | | | |
|---|---|---|---|
| **Average Recovery Per Class Member** | Approximately $24.60 before deduction of any Court-approved attorneys' fees, expenses, settlement administration costs, and service awards to class representatives. | N/A | N/A |
| **Amounts distributed to Cy Pres Recipients** | $1,069,485.77 to the Center for Auto Safety | N/A | N/A |
| **Administrative Costs** | $573,000 to Settlement Administrator | N/A | N/A |
| **Attorneys' Fees and Costs** | $4,950,000.00 in attorneys' fees; $233,877.81 in costs. | N/A | N/A |
| **Total Exposure if Plaintiffs Prevailed on Every Claim** | $42,000,000 | N/A | N/A |
| **Value of Injunctive Relief** | Farmers was prohibited from considering price optimization in setting auto insurance rates, and was prohibited from challenging the Commissioner's legal authority to regulate the use of price optimization. | N/A | N/A |
| **Other** | | In *Tryfonas*, the plaintiffs allege that Allstate uses price optimization when setting insurance rates for customers in Illinois. The plaintiffs filed a motion for class certification, which the court denied in November 2022. The plaintiffs' petition for leave to appeal that decision was denied by the | In *Trzeciak*, the plaintiffs alleged that "Allstate breached their insurance contract and committed silent fraud by overcharging premiums based on non-risk factors that actually disadvantage long-term policy holders." *Trzeciak v. Allstate Prop. & Cas. Ins. Co.*, 569 F. Supp. 3d 640, 643 (E.D. Mich. 2021). |

**STEVENSON V. ALLSTATE INS. CO, ET AL.**

|  |  | Supreme Court of Illinois on September 27, 2023. | The court found that the plaintiffs failed to state a claim and granted Allstate's motion to dismiss the plaintiffs' amended complaint with prejudice. *Id.* at 650. |
| --- | --- | --- | --- |