David Borgen (SBN 99354)
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Jay Angoff (D.C. Bar 248641)
Cyrus Mehri (D.C. Bar 420970)
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel: (202) 822-5100

Attorneys for Plaintiff
*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA STEVENSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INSURANCE CO., and ALLSTATE INDEMNITY CO, <br><br> Defendant. | Case No.: 4:15-cv-04788-YGR <br><br> Hon. Yvonne Gonzalez Rogers <br><br> JOINT DECLARATION OF PROPOSED CLASS COUNSEL IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

- 1 -

Cyrus Mehri, Jay Angoff, Andrea Gold, and Jeff Osterwise declare as follows:

1. We represent Plaintiff Andrea Stevenson ("Plaintiff" or "Class Representative") in the above-captioned putative class action. We have worked on this litigation—both in this Court and in the proceedings before the California Department of Insurance—since the case was first filed in August of 2015 through to the present. We have led Plaintiff's efforts in this case and have personal knowledge of all matters addressed in this Declaration, including the negotiations that culminated with the filing of the proposed Settlement now pending before the Court.

2. If the proposed Settlement is approved, over a million policyholders of Allstate impacted by the challenged conduct will receive meaningful cash benefits, and will also benefit as a result of meaningful non-monetary relief. Given the significant amount of effort and resources expended in this multi-year litigation, and the relief obtained, Plaintiff's counsel jointly offer this Declaration in support of preliminary approval of the proposed Settlement. Further, Plaintiff's counsel offer this Declaration in support of appointing Plaintiff's counsel as Class Counsel and the named Plaintiff as Class Representative in this Action. In support, we include an overview of the litigation and the proposed Class Counsel's qualifications, as well as the named Plaintiff's efforts throughout this litigation.

## I. Overview of this Litigation

3. On February 18, 2015, the California Department of Insurance issued a notice forbidding insurance companies from using price optimization (the "Notice"). It defines price optimization as "any method of taking into account an individual's or class's willingness to pay a higher premium relative to other individuals or classes." The Notice required any insurer using a factor or factors based on price optimization in its class plan to file a new class plan that removed any such factors by no later than six months from the date of the Notice.

4.      On August 21, 2015, Plaintiff Andrea Stevenson filed her class action complaint in the Superior Court of the State of California against Allstate Insurance Co. and Allstate Indemnity Co. (together "Allstate" or "Defendants"), asserting six causes of action based on Allstate's alleged use of price optimization.

5.      On November 5, 2015, after Allstate removed the case to the U.S. District Court for the Northern District of California pursuant to the Class Action Fairness Act, Stevenson filed her First Amended Complaint ("FAC"), which is the operative complaint.  On November 23, 2015, Allstate moved to dismiss the FAC, and in the alternative to stay the case pursuant to the primary jurisdiction doctrine.

6.      This Court, on March 17, 2016, dismissed Plaintiff's claim under Section 1861.10(a) of the California Insurance Code and stayed the five remaining claims pursuant to the primary jurisdiction doctrine, pending action by the Insurance Commissioner of the State of California (the "Commissioner)."

7.      On May 3, 2016, the California Department of Insurance ("CDI" or the "Department") informed Allstate that it was undertaking an investigation regarding whether Allstate was taking into account an individual's or class's willingness to pay a higher premium relative to other individuals or classes.  On April 27, 2018, both in response to the Court's order and on its own motion, the Commissioner issued a Notice of Hearing for the purpose of determining "(1) whether Allstate has violated California insurance law by using illegal price optimization; (2) how Allstate implemented any such illegal price optimization in its rate and/or class plan; and (3) how any such illegal price optimization impacted Allstate's policyholders." *In the Matter of the Rating Practices of Allstate Insurance Company and Allstate Indemnity Company*

- 3 -

(CDI File No. NC-2018-00001) (hereinafter referred to as the "Department Proceeding"). The Notice of Hearing announced that the Commissioner's findings would be conveyed to this Court.

8.    The Notice of Hearing also noted that Plaintiff could seek to participate in the Department Proceeding by filing a Petition to Participate. Both Plaintiff and a non-profit organization, Consumer Watchdog, successfully moved to participate in the Department Proceeding, which was assigned to Chief Administrative Law Judge (CALJ) Kristin Rosi.

9.    Due to the limited resources of the Department, discovery in the Department Proceeding did not commence until October 29, 2018. For the next three years Plaintiff, along with CDI and CWD, engaged in extensive discovery with Allstate before the CALJ. Allstate ultimately produced more than 400,000 pages of documents, which Plaintiff reviewed, analyzed, categorized and marshalled to support her allegations. In addition, Plaintiff deposed eight Allstate witnesses.

10.    Near the completion of fact discovery in the Department Proceeding, Plaintiff's Counsel retained Casualty Actuarial Society ("CAS") Fellow and former CAS President Robert Miccolis to offer opinions on Allstate's use of price optimization and its impact on Allstate's customers.

11.    On August 19, 2021, the CALJ set an evidentiary hearing on the merits in the Department Proceeding to begin on May 10, 2022.

12.    On October 21, 2021, Plaintiff, as well as the CDI and CWD, submitted expert reports as pre-filed testimony they intended to enter into evidence at the hearing, with Allstate also submitting pre-filed testimony from its expert witness and four fact witnesses on December 21, 2021. The evidentiary hearing was ultimately rescheduled to begin on December 5, 2022.

13. On March 15, 2022, the parties in the Department Proceeding moved to strike all or portions of the opposing parties' pre-filed direct testimony. On October 17, 2022, the CALJ substantially denied Allstate's Motion to Strike Plaintiff's pre-filed direct testimony, while granting Plaintiff's Motion to Strike portions of the pre-filed direct testimony offered by Allstate.

14. The parties to the Department Proceeding filed a Joint Statement on Pre-Hearing and Hearing Issues on November 2, 2022, which they discussed with the CALJ at a pre-hearing conference on November 17, 2022. The next day, the CALJ issued a comprehensive pre-trial order, and scheduled a final pre-hearing conference for Nov. 28, 2022.

15. With all discovery and pre-hearing motions complete, Plaintiff's Counsel prepared for the evidentiary hearing in the Department Proceeding, including reviewing and marshalling Allstate's documents, preparing for Mr. Miccolis's live testimony, and preparing to cross-examine Allstate's fact and expert witnesses.

16. After extensive and hard-fought negotiations, including through the Thanksgiving holiday, Plaintiff and Allstate reached an agreement in principle on the Friday after Thanksgiving, and informed the CALJ of that agreement on Sunday, November 27, 2022, one week before the scheduled December 5, 2022 start date for the hearing, and one day before the November 28, 2022 final pre-trial conference. At the pre-trial conference the CALJ postponed the hearing date to February 7, 2023. The evidentiary hearing has been subsequently postponed and taken off calendar, as the parties to the Department Proceeding have finalized negotiations related to the resolution of the Department Proceeding. The resolution of the Department Proceeding turns on the ultimate approval of this Settlement.

**II. Settlement Negotiations and Mediation**

17.    Following the close of discovery and exchange of expert reports in the Department Proceeding, in January 2022 Plaintiff and Allstate jointly retained Sanford Kingsley, an experienced former California insurance litigator, as a mediator in the case to explore the possibility of settlement.  Prior to becoming a mediator, Mr. Kingsley at times served as outside counsel for Allstate and had credibility with and knowledge of the company.   Mr. Kingsley also brought breadth and depth of insurance law and practice.  During the next seven months Mr. Kingsley presided over four mediation sessions—the first on January 26, 2022, and the last on August 24, 2022.  All parties to the Department Proceeding also participated in the mediation.

18.    In addition to the mediation sessions, Plaintiff's counsel had frequent discussions with Mr. Kingsley, with Allstate counsel Michael O'Day, and with Mr. Kingsley and Mr. O'Day together.  Plaintiff's counsel also had discussions with CWD and CDI, as did Mr. Kingsley and Mr. O'Day.  And there were also discussions among all four parties to the Department proceeding. Due to the fact that there were four sets of stakeholders, negotiations became more challenging and dynamic than in the typical complex litigation matter.

19.    In their settlement negotiations, the Parties also exchanged and presented analysis of how price optimization by Allstate, assuming it occurred, would have impacted Settlement Class Members. These discussions included actuaries from the Department, Allstate, and intervenor Consumer Watchdog. The actuaries posed questions to one another, permitting the parties to test their assumptions and the strength of their positions.

20.    Notably, a condition precedent to the Settlement between Stevenson and Allstate was that Allstate and CDI would enter into an agreement that would resolve the Department Proceeding.  Accordingly, shortly after Stevenson and Allstate reached an agreement in principle to resolve this Action, negotiations regarding a stipulation to stay and ultimately terminate the

Department Proceeding commenced. These contentious negotiations, in which all parties to the Department Proceeding actively participated with the assistance of Mr. Kingsley, resulted in an agreement among the four parties on the language of a stipulation that would terminate the Department Proceeding. With four sets of stakeholders, negotiations on the stipulation became unusually protracted and, at times, challenging.

## III.  Relevant Factual and Legal Background

21.     California auto insurers are required to calculate their rates in accordance with a class plan they must file with the Department. Cal. Code Regs. Sec. 2632.11. Section 2632.3(a) defines a class plan as "the schedule of rating factors and discounts, and their order and manner of analysis as required by Section 2632.7, in the development of rates and premiums charged for a policy of automobile insurance."

22.     Rating factors are the rating characteristics the insurer uses—such as driving record, mileage driven, and years licensed—to determine premiums. Based on the insurer's loss data, the insurer calculates a number, called a relativity, for each gradation or category of each rating factor that reflects the risk presented by that gradation or category. The relativity for a category exceeds 1.00 if the risk presented by policyholders in that category is greater than average; the relativity is lower than 1.00 if the risk presented by such policyholders is less than average. Individual premiums are determined by multiplying the base rate, which is the same for all policyholders, by the selected relativity for the category the insured fits into of each rating factor.

23.     Cal. Code Regs. 2632.7 requires that an insurer perform an analysis for each rating factor in a particular order, called a sequential analysis, to determine the relativity for each gradation or category of each rating factor. This process begins with calculating the relativities

supported by the carrier's loss experience—called the indicated relativities--for an individual rating factor. The insurer then selects relativities for all categories within that rating factor, which must balance to a weighted average of 1.0.[1]

24. Section 2632.7 also mandates that rating factors have certain weights, meaning that the rating factors must have certain levels of importance in calculating a policyholder's overall rate. In particular, the weights of the factors set forth in the insurer's class plan must align in decreasing order of importance as follows: driving safety record must have the most weight, followed by annual miles driven, followed by years of driving experience, followed by optional rating factors. An insurer may use a process known as "pumping and tempering" the relativities of a rating factor if the rating factor receives more or less weight than that required under section 2632.7. Pumping the relativities of a rating factor moves relativities away from 1.00, and results in the rating factor being given more weight; tempering the relativities moves them closer to 1.00, and results in the rating factor being given less weight. The formula for pumping and tempering is set forth in Cal. Code Regs. 2632.8.

25. In the class plan Allstate filed in 2011, however, which became effective July 13, 2012 after being approved by the Department, and which except for the elimination of gender as a rating factor is still in effect today, Plaintiff alleges that Allstate did not use relativities derived from its sequential analysis to determine premiums for policyholders with certain characteristics. Rather, according to Plaintiff's claim, Allstate used relativities that exceeded both the relativity based on the loss data in the sequential analysis—i.e., the indicated relativity—and also exceeded the relativity Allstate used in its prior class plan, which Allstate refers to in its 2011 class plan as

---

[1] As a result of the balancing requirements, alterations in the relativities results in no change to the overall rate level: a class plan is revenue-neutral. Accordingly, if the relativity selections for certain rating factors result in higher rates for some classes of insureds, other classes necessarily receive lower rates.

the current relativity.  Plaintiff's theory of liability is that such relativity selections were improper and based, at least in part, on consideration of elasticity of demand.  Allstate disputes Plaintiff's theory and the allegation that it did not use the rating factor relativities derived from its sequential analysis. Allstate maintains that it selected rating factor relativities consistent with its sequential analysis including the mandated pumping and tempering procedure.

26.    The policyholders for whom Plaintiff alleges Allstate used relativities that exceed indicated and current relativities are drivers who have certain types of policies in addition to an auto policy, and those licensed for 29 or more years who have comprehensive coverage, and/or have been licensed for 34 or more years and have collision coverage.  As a result of Allstate's use of relativities that exceeded both indicated and current in calculating premiums for those policyholders, Plaintiff alleges that Allstate charged those policyholders more than it would have charged them based on the risk they presented.  Those policyholders are the members of the Settlement Class.

**IV. Class Recovery and Views of Class Counsel**

27.    Weighing the benefits of the Proposed Settlement against the risks of continuing litigation supports a finding that the Proposed Settlement is a good result for Settlement Class Members, as well as within the range of reasonableness required for preliminary approval.

28.    In the Department Proceeding, Plaintiff has yet to prevail on the key merits questions of whether Allstate engaged in price optimization and, if so, whether and how it impacted consumers.  Even if Plaintiff were to prevail on those questions in the Department Proceeding, she would have to return to this Court and prevail on class certification.  Allstate would oppose certification if the case proceeds. Although Plaintiff believes that certification is appropriate here, the risk remains that the Court could deny Plaintiff's request to certify a class. In that case putative

class members may receive nothing. Further, if the Court did certify a litigation class, Plaintiff would still face potential review on appeal, would need to survive summary judgment, and would need to prove her claims on a class-wide basis at trial, thus delaying any relief for years. The Proposed Settlement allows Plaintiff and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate relief.

29.     Subject to approval by the Court, the Settlement Agreement will create a $25,000,000 common fund paid by Allstate as monetary consideration for the release of Plaintiff's and the Settlement Class's claims.  That $25 million is inclusive of the amount paid to Settlement Class Members, all attorneys' fees, costs, and expenses awarded to Class Counsel, any Service Award to the Class Representative, all costs and expenses incurred by the Settlement Administrator, and any *cy pres* payment.

30.     Plaintiff's expert opined that Allstate had engaged in price optimization in four different ways: (1) by failing to use loyalty—tenure with Allstate—as a rating factor; (2) by using relativities that exceeded indicated for drivers qualifying for Allstate's Level 3 Distinguished Driver Discount; (3) by using relativities that exceeded indicated for multi-policy policyholders; and (4) by using relativities that exceeded indicated for drivers licensed for 39 or more years who had comprehensive or collision coverage.

31.     Allstate's expert challenged the opinions and methodology of Plaintiff's expert, opining that Allstate's 2011 class plan was not the product of price optimization or consideration of elasticity of demand, and that Allstate's selections of rating factor relativities were actuarially sound.

32.     In preparing for trial and further evaluating the evidence, Plaintiff concluded that her strongest theory was that Allstate engaged in price optimization in the selection of rating factor

relativities that exceeded both current and indicated. Applying this theory of liability, Plaintiff became convinced that her first theory—price optimization through the non-use of a loyalty discount—had essentially no chance of succeeding. That is because loyalty is not a mandatory rating factor but rather only an optional rating factor;  no law requires Allstate to use a loyalty discount.  Further, neither the Department's actuary nor Consumer Watchdog's actuary found that Allstate's non-use of loyalty constituted price optimization.  The claim that Allstate's failure to use such a discount constitutes illegal price optimization thus would have been very difficult to prove and essentially non-viable.

33.    Plaintiff similarly concluded that the theory of price optimization alleged as to the relativities used for the Level 3 Distinguished Driver Discount had virtually no chance  to succeed and was essentially non-viable.   Allstate simply carried over the relativities it used for its Level 3 Distinguished Driver Discount in its 2008 class plan to its 2011 class plan.    It did not increase any of those relativities above the level they were at in its 2008 class plan.  The argument that Allstate used price optimization in these instances of carrying over relativities from its 2008 class plan constitutes illegal price optimization thus would have been very difficult to prove and essentially non-viable.

34.    In contrast, for certain categories of multi-policy policyholders and for drivers licensed for 29 or more years with comprehensive coverage or for 34 or more years with collision coverage, Allstate did not carry over the relativities from its 2008 class plan, but rather increased those relativities so that they exceeded both the relativities Allstate used in its 2008 class plan and those its most recent data indicated it should use.  Plaintiff alleges that Allstate selected relativities for the Years Licensed rating factor in violation of Cal. Code Regs. 26322.7 and 2632.8, and that it had no actuarial justification for selecting relativities exceeding both indicated and current for

the multipolicy rating factor.   Plaintiff's expert opined both that Allstate's justifications for the relativities for those factors were not actuarially sound, and that Allstate knew that more experienced drivers and drivers with other policies were more likely to retain coverage with Allstate.[2]

35.   Plaintiff therefore concluded that her strongest case for Allstate's price optimization was with respect to experienced drivers and multipolicy policyholders.   Thus, the Settlement Class is limited to those policyholders.

36.   However, even with respect to experienced drivers and multipolicy policyholders, Plaintiff's argument that the reason Allstate used relativities exceeding both current and indicated was the relative lack of price insensitivity of the policyholders for whom it used those relativities was based on circumstantial rather than direct evidence.

37.    In addition, as the Court pointed out in its March 17, 2016 Order, *MacKay v. Superior Court,* 188 Cal. App. 4th 1427 (2010) interprets Insurance Code section 1860.1, as immunizing private challenges to approved rates and rating factors.   Allstate disclosed to the Department the relativities it was using it its 2011 class plan, and the Department approved that plan.  If the Court were to continue to follow *MacKay* (over Plaintiff's objection), any recovery by class members before the date the Department promulgated its price optimization Bulletin would be barred.

38.   On the other hand, by not filing and obtaining the Department's approval of a class plan eliminating the effects of price optimization after the Department issued its February 18, 2015 bulletin, Plaintiff contends that Allstate was charging unapproved rates beginning approximately 16 months after the date of the Bulletin.   That 16 months is the total of the six months the

---

[2] Allstate maintains that its relativity selections were the result of applying the sequential analysis and weighting requirements under California law.

Department gave insurers to file new class plans, plus 10 months, which is the time it took for the Department to approve Allstate's 2011 class plan.[3]  Plaintiff therefore calculated  the potential injury to the Settlement Class related to her viable theories of price optimization beginning on July 1, 2016.  According to Plaintiff, that amount, before any set off for the amount by which Settlement Class members benefitted due to Allstate's use of relativities that were less than both indicated and current, was $137.5 million.[4]  The $25 million settlement is 18.2% of that $137.5 million.  Allstate, on the other hand, believes that Plaintiff's calculation of $137.5 million is overstated and, among other things, does not account for how changing the relativities for certain coverages would require Allstate to make changes to other relativities and/or other rating factors.  Allstate contends that making those required changes would significantly reduce, if not eliminate, any alleged overcharge to the Settlement Class.

39.    Importantly, the settlement includes meaningful prospective non-monetary relief. Most significant, it includes a requirement that Allstate file a new class plan that does not consider an individual's or class's willingness to pay a higher premium relative to other individuals or classes in setting rates.  On February 3, 2023, Allstate did file a new class plan with the Department.  With non-material exceptions, the new class plan does not use relativities that exceed both indicated and current for any category of multipolicy policyholders.  Moreover, the relativities for half of those categories are lower than both current and indicated.

---

[3] Allstate takes the position that it had no duty to file a new class plan eliminating the effects of price optimization after the Department issued its bulletin, since it never engaged in price optimization to begin with.

[4] Plaintiff's counsel believe the *MacKay* analysis of 1860.1 is indefensible and that *MacKay* should be overruled.  But it has not been.  The possibility of Plaintiff recovering for price optimization pre-dating the Bulletin, therefore, was remote.  As a result, Plaintiff did not calculate the amount that the Settlement Class could, theoretically, have recovered for that time period.  However, Plaintiff expects that the potential pre-Bulletin recovery would be less than the post-Bulletin recovery.

- 13 -

40. Similarly, again with one non-material exception, in its new class plan Allstate has selected relativities that are less than current both for all drivers licensed for 29 or more years with comprehensive coverage, and for all drivers licensed for 34 or more years with collision coverage. And for all drivers in the latter group, the relativity Allstate has selected is also below the indicated. Plaintiff estimates that Allstate's selection of rating factor relativities that do not exceed current and indicated for the years licensed and multipolicy rating factors, all else equal, will result in premiums for those rating factor relativities that Plaintiff estimates are, on an annual basis in total, millions of dollars less with respect to those rating factor relativities. Allstate disagrees with this assertion and that its prior rating plan considered an individual's or class's willingness to pay a higher premium.

41. The non-monetary relief contemplated under the Settlement Agreement has substantial value, providing security to Settlement Class Members and California private passenger auto policyholders generally going forward, and substantially constraining Allstate's ability to implement any price optimization measures in the future.

42. Allstate's new class plan also contains a description of the changes it is making in its new class plan and an explanation of why it is making those changes, as well as an explanation of some of the choices it made in connection with its sequential analysis.

43. Further, the agreement on non-monetary relief in this Settlement Agreement also requires that in any class plan it files within the next ten years, Allstate must explain in writing the basis of any relativity selections it makes that exceed the indicated relativity by more than 5%. This requirement has three major benefits for both Settlement Class members and all Allstate policyholders. First, it substantially reduces the likelihood that Allstate would select a relativity exceeding indicated for a particular rating characteristic for a non-actuarially-justified reason—

such as the lack of price sensitivity of policyholders with that characteristic—since it knows it will have to explain its selection. Second, it gives the Department the opportunity to make its own decision as to the validity of Allstate's explanation—and if it does not find Allstate's explanation to be valid, to discuss with Allstate the possibility of an adjustment to the class plan, and if necessary to disapprove the class plan. And third, it enables the public to see, for the first time, Allstate's justification for its selections.

44. Finally, the non-monetary relief also prohibits Allstate from in any way considering an individual's or class's willingness to pay a higher premium in setting its rates.

**V. Judgment of Experienced Counsel Favors the Settlement**

45. In the judgment of Plaintiff's counsel, the terms of this Settlement are beneficial to Settlement Class Members and meet the legal standard requiring a class settlement to be "fair, reasonable, and adequate" for final approval.

46. After extensive investigation and contested litigation, and reviewing dueling expert reports containing complex actuarial analyses, Plaintiff's counsel fully understand the strengths and weaknesses of this case. Our judgment is informed by our respective firms' experience bringing consumer class actions, by Jay Angoff's expertise as a former state Insurance Commissioner, and by our knowledge of relevant case law regarding California insurance law and class actions. A copy of the firm resumes of proposed Class Counsel are attached to this declaration as Exhibits A-C.

47. $25,000,000 in compensation plus meaningful non-monetary relief, as set forth in section IV above, is fair and reasonable relief for the Settlement Class in light of Allstate's defenses and the challenging and unpredictable path of litigation Plaintiff would have faced absent a

settlement.  In particular, if Plaintiff continued to litigate, she likely would not see any recovery for several years and would face the following risks:

a.  The CALJ could find that Allstate has not engaged in price optimization.

b.  If the CALJ found that Allstate engaged in price optimization, the Commissioner could nevertheless reject that finding.

c.  While Plaintiff believes the Commissioner's findings pursuant to the Court's primary jurisdiction referral are not appealable--since an appeal of that finding would defeat the purpose of a primary jurisdiction referral—Allstate could nevertheless seek such an appeal.

d.  Were the Commissioner to find that Allstate has price optimized, and were this Court to adopt that finding, Allstate could still seek to have this case dismissed based on *MacKay*.

e.  Plaintiff would also have faced obstacles to proving damages and obtaining class certification that are typical in any class action, as discussed in paragraph 28, above.

f.  Allstate could appeal an adverse result in this Court to the Court of Appeals.

48.   Plaintiff therefore had to weigh the strength of her case on the merits against the likelihood of no recovery in this case for many years, and the possibility of no recovery in this case at all.

**VI. Size of the Settlement Class and Allocation Plan**

49.   During settlement negotiations, Allstate disclosed to Plaintiff's Counsel that it estimates that there are approximately 1,293,698 Settlement Class Members. The Settlement thus provides each Settlement Class Member approximately $19.32 in monetary compensation, before deduction of any Court-approved payments.  The entire Net Settlement Amount will be distributed

to the Settlement Class Members and will be divided equally among them.[5]  Settlement Class Members will not need to submit claims for payment.  Instead payments will be made automatically via check or digital payment, for former policyholders, and via policy credit for current policyholders.  Should any funds remain after the close of the check negotiation period, then those funds will be donated to a Court-approved cy pres recipient.

**VII.  Settlement Administrator and Cy Pres Selection**

50.    In preparation for filing for preliminary approval of the Proposed Settlement and direction of notice to the proposed Settlement Class, the Parties solicited bids from experienced notice and settlement administration vendors. The Parties received three totals bids, from Angeion Group, Epic, and Kroll.

51.    CPT Group, Angeion Group, and Kroll all proposed similar methods of notice, including email and postcard notice, longform notice, a settlement website, and a toll-free hotline.

52.    Kroll has capped settlement administration expenses at $1,057,030. This cap aligns with the costs charged by other settlement administrators for a comparable notice plan and effectuation of payment.

53.    It is Plaintiff's counsel's view that Kroll provided the most cost-effective bid.

54.    Based upon these bids, the Parties jointly selected Kroll as the proposed Settlement Administrator, pending the Court's approval.

---

[5] Plaintiff carefully considered other allocation alternatives and concluded that other approaches were impractical.  For example, allocating the Net Settlement Fund based on length of time a Settlement Class Member was insured by Allstate or with consideration of which alleged price optimized rating factors impacted the Settlement Class Member's premium would require the Settlement Administrator to analyze voluminous data and would be prohibitively costly to administer.  In addition, Allstate believes that allocating the Net Settlement Fund based on another metric would exponentially increase the cost and burden of settlement administration.

- 17 -

55.    In the past two years, Plaintiff's counsel have collectively worked with Kroll a total of eight times.

56.    The Parties also cooperatively considered the cy pres recipient. Recognizing its unique mission, which is particularly relevant to the facts of this case, the Parties jointly selected Center for Auto Safety as the proposed cy pres recipient, pending the Court's approval.

57.    Plaintiff's counsel do not have any interest in or pre-existing formal relationship with the proposed cy pres recipient. Plaintiff's counsel also has confirmed that the named Plaintiff does not have any interest in or relationship with the proposed cy pres recipient. Plaintiff's counsel further understands that Allstate does not have any interest or pre-existing relationship with the proposed cy pres recipient.

## VIII.  Other Cases Affected

58.    In accordance with Procedural Guidance for Class Action Settlements, Guideline 1(d), Plaintiff's counsel is aware of no other cases that will be affected by the Settlement.

## IX. Contributions of Class Representative

59.    Plaintiff Andrea Stevenson has expended serious time and effort in helping Plaintiff's counsel litigate this case throughout this eight-year litigation.  She has assisted Class Counsel in investigating the case, assisted with multiple mediations, communicated with Class Counsel throughout the litigation, and risked personal and reputational harms by filing a lawsuit against her insurer.

60.    Ms. Stevenson has been continuously insured by Allstate for more than 35  years. She has no conflict of interest with the class members, and she was willing to accept a fiduciary role on behalf of the class.  She reviewed and approved the Complaint and Amended Complaint

filed in this action, reviewed and approved the co-counseling agreement establishing the legal team for the class, and attended meetings prior the filing of the Complaint.

61. Ms. Stevenson spent more than 25 hours searching her personal archives to locate documentation of her various Allstate insurance policies. She had to search through many boxes which were stored in her garage from several moves over the years.

62. Ms. Stevenson was diligent in preparing and transmitting necessary documentation for the prosecution of the claims in this matter and in responding to requests from counsel for additional information and documentation regarding her insurance policies.

63. After the Court stayed this matter pursuant to the primary jurisdiction doctrine and the Department proceeding commenced, Ms. Stevenson remained actively involved in the prosecution of these claims, responding to additional requests for documents and information relevant to the CDI proceedings. She also participated in more than 30 telephone calls regarding the status of the case overall, including calling when her policy was renewing. She also conferred with her attorneys regarding settlement negotiations.

64. In light of Ms. Stevenson's commitment of time, effort, and dedication to the interests of absent class members, even in the face of her concern that her auto insurance would be cancelled or her premium would increase because of her involvement in this case, Plaintiff's counsel believe it is appropriate under applicable law that she be appointed as Class Representative and be awarded a service award in the amount of $5,000. If awarded, this award would be paid by Allstate from the net Settlement Fund.

65. At no point was Ms. Stevenson ever promised any such award, nor did she condition her representation, service, or support on the expectation of receiving money. Further, Plaintiff's

counsel did not promise or guarantee Ms. Stevenson (or any other Settlement Class Member or potential class member) that they would receive such an award.

## X. Class Counsel's Efforts on Behalf of the Settlement Class

66.    Prior to filing Plaintiff's initial Complaint, proposed Class Counsel conducted a comprehensive investigation to prepare Plaintiff's allegations.  This investigation included, among other things, (1) review of the class plan and rate filings that Allstate filed with the Department of Insurance;  (2) attendance at NAIC meetings on price optimization, analysis of handouts at those meetings and discussion with both regulators and industry representatives at such meetings; (3) analysis of Allstate's presentations on price optimization to the NAIC, and of the responses to such presentations; (4) conferring with a consulting actuarial expert; (5) review and analysis of the price optimization-related work product of the National Association of Insurance Commissioners and its working group on price optimization; and (6) internet research, including finding and reviewing (a) LinkedIn profiles of current and former Allstate employees discussing their expertise in price optimization; (b) Allstate management's statements regarding price optimization; (c) insurance trade association and consumer group discussions of price optimization; and (d) presentations by actuaries regarding price optimization .

67.    To prepare Plaintiff's Complaint, Class Counsel worked with Plaintiff to prepare the allegations specific to her.  In addition, to prepare both the initial Complaint and First Amended Complaint, Class Counsel researched the California Insurance Code; applicable regulations; Department Bulletins, instructions and guidance; California's consumer protection statutes and other relevant statutes; and relevant caselaw.

68.    Next, Class Counsel researched and successfully responded to Allstate's Motion to Dismiss Plaintiff's First Amended Complaint, drafting the opposition and arguing the motion before the Court.

69.     After the Court stayed this action pursuant to the primary jurisdiction doctrine, Class Counsel successfully petitioned for Plaintiff to intervene in the Department Proceeding noticed by the Commissioner of Insurance pursuant to the Court's order.  In the Department Proceeding Class Counsel assumed primary responsibility for obtaining, reviewing and analyzing the documents ultimately produced by Allstate and for questioning Allstate's witnesses at depositions.

70.     For example, during fact discovery in the Department Proceeding, Class Counsel: (a) analyzed Exhibit 6 of Allstate's 2011 class plan, which set forth the indicated, current and selected relativities for each category of each rating factor Allstate uses in calculating premiums; (b) drafted two sets of requests for production and engaged in numerous meet and confer discussions in connection with those requests; (c) successfully moved to compel the production of Allstate's documents, drafting the motions and briefs and arguing the motions before the CALJ; (d) responded to written discovery propounded by Allstate; (e) reviewed more than 400,000 pages of documents ultimately produced by Allstate and (f) prepared to depose and deposed eight Allstate employees.

71.     During fact discovery, proposed Class Counsel also uncovered what they alleged to be discovery misconduct on the part of Allstate.  Thus, proposed Class Counsel briefed a motion for sanctions related to such alleged misconduct before the CALJ and also took further written discovery and depositions related to the issue of Allstate's alleged misconduct.  Allstate strongly disputes Plaintiff's allegations and denies that it has engaged in any discovery misconduct.  Allstate put forward significant evidence, including fact evidence and expert opinions and analysis, supporting its position on this issue.

72.     After the completion of fact discovery in the Department Proceeding, proposed Class Counsel assisted their expert—CAS Fellow and former CAS President Robert Miccolis—who ultimately opined on Allstate's use of price optimization.

73.     Class Counsel also successfully briefed and argued Plaintiffs' opposition to Allstate's motion to strike Mr. Miccolis's pre-filed direct testimony and successfully moved to strike certain portions of Allstate's expert's pre-filed direct testimony, as well as portions of the pre-filed testimony of Allstate's fact witnesses.

74.     With all discovery and pre-hearing motions complete, Class Counsel prepared for the evidentiary hearing in the Department Proceeding, including reviewing and marshalling Allstate's documents and reviewing actuarial standards with Mr. Miccolis and preparing for Mr. Miccolis's live testimony, reviewing Allstate's expert's pre-filed testimony and preparing to cross examine him, preparing to cross examine Allstate's other witnesses, and preparing Plaintiff's exhibit and witness lists.

75.     After the Parties agreed to seek postponement of the evidentiary hearing so that they could explore the possibility of settlement through mediation, proposed Class Counsel drafted an extensive mediation statement and prepared for and participated in four formal mediation sessions before Mr. Kingsley.

76.     Thereafter, Class Counsel engaged in extended settlement negotiations with Allstate, both with and without Mr. Kingsley, in an effort to reach a class settlement with meaningful cash and injunctive relief, without the possibility of any cash reverting back to Allstate.

## XI. Attorneys' Fees and Costs

77.     The Parties did not discuss fees or expenses until after negotiating the material terms of the Settlement.

78.     Plaintiff's counsel has diligently tracked time throughout the case, and as of August 31, 2023, had spent 6,563 hours litigating the case, totaling $5,769,156 in lodestar. Costs, as of August 31, 2023, are in excess of $340,000.

79.     For purposes of the lodestar calculation, Plaintiff's counsel have based all of their rates off of the Adjusted Laffey Matrix.  See http://www.laffeymatrix.com/see.html

80.     Plaintiff's counsel expects to spend significant additional time throughout the approval process, notice, and settlement administration.

81.     Plaintiff's counsel will separately move the Court for an order of Attorneys' Fees and Costs before the deadline for Settlement Class members to either exclude themselves or object to the Settlement, and Allstate has agreed not to oppose Class Counsel's requests for attorneys' fees of up to $7,500,000 and reimbursement of litigation costs and expenses.

## XII. Qualifications of Proposed Class Counsel

82.     Plaintiff is represented by Mehri & Skalet PLLC, Tycko & Zavareei LLP, Berger Montague PC, and local counsel Goldstein, Borgen, Dardarian & Ho. Cyrus Mehri and Jay Angoff, of Mehri & Skalet PLLC, along with Andrea R. Gold of Tycko & Zavareei LLP and Jeff Osterwise of Berger Montague, seek appointment as Class Counsel.

83.     Mr. Mehri and Mr. Angoff of Mehri & Skalet PLLC, together have decades of experience in complex litigation and serving as class counsel. A copy of the Mehri & Skalet Firm Resume is attached as **Exhibit A**, which details the firm's relevant experience.

84.     Ms. Gold of Tycko & Zavareei LLP, has nearly 17 years of experience in complex litigation and has served as class counsel in numerous nationwide class actions. A copy of the Tycko & Zavareei LLP Firm Resume is attached as **Exhibit B**, detailing Ms. Gold's and the firm's relevant experience.

85.     Mr. Osterwise of Berger Montague PC has nearly 18 years of experience in complex litigation and has served as class counsel in numerous nationwide class actions. A copy of the Berger Montague Firm Resume is attached as **Exhibit C**, detailing the firm's relevant experience.

86.     Proposed Class Counsel have each taken an active role in this Action since its inception. They are well-aware of the history of this litigation, including prior to the filing of the original Complaint. They are qualified to speak on the efforts undertaking in developing Plaintiff's legal theories, the discovery taken, and negotiations of the Proposed Settlement. They respectfully submit that Plaintiff's counsel have diligently served the interests of the proposed Settlement Class, including in negotiating the Settlement Agreement and presenting the Proposed Settlement for preliminary approval. In light of their experience, and in light of their significant role in this litigation, they respectfully support their appointment as Class Counsel.

We declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| *Cyrus Mehri*    September 26, 2023 | *Jay Angoff*    September 26, 2023 |
| Cyrus Mehri          Date | Jay Angoff          Date |
| *Andrea Gold*    September 26, 2023 | *Jeffrey L Osterwise*    September 26, 2023 |
| Andrea Gold          Date | Jeff Osterwise          Date |