**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ANDREA STEVENSON,

    Plaintiff,

vs.

ALLSTATE INSURANCE CO. and ALLSTATE INDEMNITY CO.,

    Defendants.

Case No. 4:15-cv-04788-YGR

**DECLARATION OF SCOTT M. FENWICK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL**

Judge: Hon. Yvonne Gonzalez Rogers

I, Scott M. Fenwick, hereby declare:

1.    I am a Senior Director of Kroll Settlement Administration LLC ("Kroll"),[1] the proposed Settlement Administrator in the above-captioned case, whose principal office is located at 2000 Market Street, Suite 2700, Philadelphia, Pennsylvania 19103. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working under my general supervision. This declaration is being filed in connection with Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

2.    Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities, labor and employment, consumer and government enforcement matters. Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years.

3.    Kroll is prepared to provide a full complement of Notice and Settlement administration services in connection with that certain Settlement Agreement and Release (the "Settlement Agreement") entered into in connection with the above-captioned matter, including providing Notice

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined below).

of the Settlement via email and/or postcard as needed, and through the use of a Settlement Website to be created in connection with this matter.

4.    It is Kroll's understanding that it will be provided with a list of Settlement Class Members covered under the proposed Settlement Agreement, and the list is to contain a combination of names, electronic mail addresses, mobile phone numbers, and/or physical addresses, and other data elements pertinent to the administration of the Settlement.

## CAFA Notice

5.    On behalf of Allstate, Kroll will provide notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Upon filing of the motion requesting issuance of the Preliminary Approval Order, Kroll will send the CAFA Notice, via first-class certified mail to (i) the Attorney General of the United States and (ii) to state Attorneys General identified on the service list for the CAFA Notice. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the Settlement referenced in the CAFA Notice.

## Notice by Email

6.    In preparation for disseminating Email Notices, Kroll will work with Class Counsel and Defense Counsel (collectively "Counsel") to finalize the language for the Email Notice.  Once the Email Notice is approved, Kroll will create an Email Notice template in preparation for the email campaign.  Kroll will prepare a file with all available Settlement Class Member email addresses and upload the file to an email campaign platform.  Kroll will prepare email proofs for Counsel's review and approval.  The proofs/test emails for approval will include the body of the email and subject line. Once the proofs/test emails are approved, the email campaign will begin as directed in paragraph 83 of the Settlement Agreement.  Email Notices will be sent to Settlement Class Members with an email address in the class list provided by Allstate and where such Settlement Class Member agreed to accept their Policy statement and/or information through email.

7.    Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable.  At the conclusion of the email campaign, Kroll will provide a report with the email delivery status of each record.  The report will include the number of records that had a successful Email Notice delivery, and a count of the records where delivery failed.  Kroll will also update its

- 2 -
DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

administration database with the appropriate status of the email campaign for each of the Settlement Class Member records.

8.    If the initial Email Notice was delivered successfully, no further action will be taken with respect to the particular potential Settlement Class Member record.

9.    As per paragraph 83 of the Settlement Agreement, the Email Notice will inform Settlement Class Members, in Spanish, of the availability of the Spanish version of the Long Form Notice. A Spanish version of the Long Form Notice will be provided to Settlement Class Members who request it.

10.    As per paragraph 86 of the Settlement Agreement, for Email Notices rejected or "bounced back" as undeliverable, Kroll will send Postcard Notices to such Settlement Class Members, and complete such Notice pursuant to the deadlines described in paragraphs 85-86 of the Settlement Agreement as they relate to the Notice Re-mailing Process.

**Notice by Mail**

11.    Kroll will work with Counsel to format the Postcard Notice for mailing.  Upon approval, Kroll will coordinate the preparation of Postcard Notice proofs for Counsel to review and approve.

12.    As required under paragraph 83 of the Settlement Agreement, Kroll will send the Postcard Notices to the physical addresses of Settlement Class Members: 1) for whom Allstate does not maintain email addresses; and 2) who have agreed to accept their Policy statements and/or information by regular mail.

13.    The Postcard Notice will also inform Settlement Class members, in Spanish, of the availability of the Spanish version of the Long Form Notice.  A Spanish version of the Long Form Notice will be provided to Settlement Class Members who request it.

14.    The Postcard Notice will be sent by first-class mail to all physical addresses as set forth above.  In preparation for the notice mailing, Kroll will send the list of Settlement Class Members through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database, as per paragraph 85 of the Settlement Agreement.  The NCOA process will provide updated addresses for Settlement Class Members who have submitted a change of address with the USPS in the last 48 months, and the process will also standardize the addresses for mailing.

Kroll will then prepare a mail file of Settlement Class Members that are to receive the Postcard Notice via first-class mail.

15.    Postcard Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

16.    As required under paragraph 86 of the Settlement Agreement, Postcard Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record.  If an updated address is obtained through the advanced search process, Kroll will re-mail the Postcard Notice to the updated address ("Notice Re-mailing Process").

17.    The notice program as outlined in the Settlement Agreement and as expected to be implemented by Kroll contemplates a robust list of Settlement Class Members that will allow for direct notice to reach the vast majority of Settlement Class Members through direct mail and email, consistent with due process. Based upon information provided by counsel, and assuming data received is relatively up to date, Kroll estimates an average undeliverable rate of no more than 9% and thus projects direct notice will likely reach 91% of the proposed Settlement Class Members. These assumptions are subject to the accuracy and quality of the data received.  This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[2] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[3]

### Settlement Website

18.    Kroll will work with Counsel to create a dedicated Settlement Website. The Settlement Website URL will be www.AllstateCaliforniaAutoRatingSettlement.com, or such other URL as Counsel agree upon in writing. The Settlement Website will contain a summary of the Settlement, will allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address, provide notice of important dates, such as the Final Approval Hearing, objection

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[3] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010).

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

deadline, opt-out deadline, and provide Non–Renewing Current Primary Policy Holders the opportunity to select an electronic payment method, including Venmo, Zelle, PayPal, e-Mastercard, ACH, or payment by check.

19.     The Settlement Website will also contain relevant case documents including notice of and information about the Settlement, through and including hyperlinked access to the Settlement Agreement, the Long Form Notice, the order preliminarily approving the Settlement, the Final Judgment, and such other documents as Counsel agree to post or that the Court orders posted on the website.  Lastly, the Settlement Website will contain the Kroll privacy policy, including a section on California Privacy Notice and Policy for compliance with the California Consumer Privacy Act and the California Privacy Rights Act.

20.     As per paragraph 62 of the Settlement Agreement, the Settlement Website will be terminated forty-five (45) days after either (a) the Effective Date, or (b) the date on which this Settlement is terminated or otherwise not approved by a court. At such time, Kroll will then transfer ownership of the URL to Allstate.

## Toll-Free Telephone Number

21.     Kroll has established a toll-free telephone number for the Settlement, which will allow Settlement Class Members to call and obtain information about the Settlement through an interactive voice response system and/or by being connected to a live operator.  The toll-free number will be available twenty-four hours a day, seven days a week.

## Post Office Box

22.     Kroll will designate a post office box with the mailing address *Stevenson v Allstate Insurance Company* c/o Kroll Settlement Administration, PO Box <<####>>, New York, NY <<Zip-Zip4>> in order to receive requests for exclusion, and correspondence from Settlement Class Members.

## Activity Log and Written Reports to Counsel

23.     As per paragraph 79, Kroll will maintain and preserve records of all of its activities until one (1) year after the Effective Date, including logs all e-mails, visits to the Settlement Website, and all other contacts with actual and potential Settlement Class Members, in a computerized database with readily retrievable records.  Kroll will also provide Counsel with written reports every two weeks

- 5 -

beginning on the Notice Date, summarizing all statistics and actions taken by Kroll in connection with administering the Settlement.

### Settlement Administration Cost

24.     Based on Kroll's current understanding of the class size and requested administration services, estimated Settlement Administration Costs under the Settlement Agreement will be approximately $1,050,000.  Kroll agrees to cap the Settlement Administration Costs at $1,057,030. The current estimate is subject to change depending on various factors, such as the actual Settlement Class size and/or any Settlement administration scope changes not currently under consideration, which is based on the assumptions outlined in the Settlement Administration Costs proposal between Counsel and Kroll.

### Data Use Limitation

25.     Kroll will solely use Settlement Class Member data for Notice and Settlement administration, award calculations, and issuing Settlement Class Member Payments.

### Technical Controls, Data Security

26.     Kroll is an industry leader in data security.  Kroll is CCPA, HIPAA, and GDPR compliant and maintains numerous industry certifications related to data security, including SOC2 and ISO 2700 certification.  Kroll has technical, physical, and procedural protocols and safeguards in place to ensure the security and privacy of Settlement Class Member data. These include standards related to data retention and document destruction; fully redundant environmental systems and redundant storage; regular audits; and documented plans for both incident and crisis response, including breach protocols and physical controls. Kroll's information security program includes vulnerability management, compliance, security monitoring and security engineering supported by a team of information security professionals, including a Chief Information Security Officer and Chief Privacy Officer.

### Business/Liability Insurance

27.     Kroll maintains standard business insurance, including professional liability insurance, cyber insurance, and crime insurance.

- 6 -

**Administrative and Ethical policies**

28.    Kroll has employee administrative and ethical polices that all employees are required to follow.  These include, but are not limited to:

- Pre-hire background checks;
- Controls for accessing systems, data and applications, along with processes for assigning access;
- Annual Code of Ethics training and certification;
- Annual Information Security training and certification; and
- HIPAA training for all staff.

**Crisis and Risk Management**

29.    Kroll has defined and tested incident response and disaster recovery plans that it employs across the organization.  Should an incident occur, Kroll will take immediate action, which will include notification to clients and Settlement Class Members of the incident consistent with privacy laws and regulations or as otherwise provided in any contractual agreements with its clients. Kroll also has detailed vendor on-boarding and management policies.

**Physical Access Controls**

30.    Security keycard access is required to enter Kroll's facilities.  Additionally, keycard access is required for employees to use the facility elevators and to enter Kroll's office spaces.

**Data Collection, Retention and Destruction**

31.    Kroll only requires the collection of data necessary to effectively administer the Settlement.  If personally identifiable information ("PII") (e.g., Social Security Numbers, account information, dates of birth, etc.) are not necessary for administration, Kroll will not request such PII. Kroll does not and will not share Settlement Class Member data with third parties unless authorized or directed to do so by the Parties or the Court.  Internally, access to data is limited to only those employees working on the particular matter.  In addition, Kroll has standard practices for data retention and destruction.  However, to the extent there are data retention and destruction requirements specific to the Settlement that differ from Kroll's standard policies, Kroll will follow the Settlement guidelines.

- 7 -

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

**Certification**

I declare under penalty of perjury under the laws of the United Sates that the above is true and correct to the best of my knowledge and that this declaration was executed on September 22, 2023, in Inver Grove Heights, Minnesota.

SCOTT M. FENWICK

- 8 -