David Borgen (SBN 99354)
dborgen@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Cyrus Mehri (D.C. Bar 420970)
MEHRI & SKALET PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel: (202) 822-5100

Attorneys for Plaintiff
*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA STEVENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO., AND ALLSTATE INDEMNITY CO.,<br><br>Defendants. | No. 4:15-cv-04788-YGR<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD**<br><br>**Judge:** Hon. Yvonne Gonzalez Rogers<br>**Date:** May 22, 2024<br>**Time:** 2:00 p.m.<br>**Place:** Courtroom 1, 4th Floor,<br> 1301 Clay Street<br> Oakland, CA 94612 |

i

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

    A.    Class Counsel's Efforts on Behalf of the Class. ...................................................... 2

II. ARGUMENT ................................................................................................................. 6

    A.    Class Counsel's request for an attorneys' fee award of 30% of the common
           Settlement Fund they have created is fair, reasonable, and appropriate ............... 6

           1.    A qualitative assessment of the results Class Counsel have delivered
                   and the risks they ran supports an award of 30% of the common
                   Settlement Fund rather than any lower percentage. ................................... 6

                   a.    The monetary and non-monetary relief are substantial and
                          significant. ..................................................................................... 7

                   b.    This case presented novelty, complexity, and uncertainty. ............. 7

                   c.    Allstate was vigorously defended, well-funded, and seemingly
                        prepared to continue litigating for many more years. .................... 8

                   d.    Class Counsel have incurred substantial expense, forgone other
                        opportunities, worked for eight-plus years without payment, and
                        shouldered real risks of a minimal recovery or no recovery. .......... 8

                     e.    Enforcing the Insurance Code serves a public interest, and the
                        non-monetary relief obtained here provides a substantial
                        public benefit. ............................................................................... 9

           2.    The reasonableness of the requested fee is also confirmed by a lodestar
                   cross-check. ................................................................................................ 9

                     a.    Class Counsel's hourly rates align with prevailing hourly rates ...... 9

                     b.    The hours class counsel expended were necessary and
                          reasonable. ..................................................................................... 11

                     c.    Empirical evidence shows that the 1.2x  multiplier requested
                        here is smaller than the average multiplier.  ................................. 12

             3.    There is ample case-law support for an attorneys' fee award of
                     one-third, but class counsel's request here is more modest. ...................... 14

    B.    Class Counsel are also entitled to reimbursement of their submitted expenses,
           which have been necessary, reasonable, and appropriate. .................................... 15

    C.    Class Counsel's Request for a Service Award of $5,000 for Ms. Stevenson,
           the Class Representative, is reasonable and appropriate. ...................................... 15

III. CONCLUSION ............................................................................................................. 16

i

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
226 Cal. App. 4th 26 (2014)................................................................................9

4

*Beaver v. Tarsadia Hotels*,
No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL
4310707 (S.D. Cal. Sept. 28, 2017) ...............................................................14

5

6

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015)....................................................................12

7

*Berry v. Magic Memories U.S.*,
2018 Cal. Super. LEXIS 21384 ..............................................................12, 14

8

9

*Blum v. Stevenson*,
456 U.S. 886 (1984).........................................................................................9

10

*Burlington v. Dague*,
404 U.S. 557 (1992).........................................................................................6

11

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)............................................................................9

12

13

*Carillo-Hueso v. Ply Gem Indus. Inc.*,
No. 34-2016-00195734-CU-OE-GDS (Sacramento Cnty. Super. Ct. June 29,
2017) ................................................................................................................10

14

15

*Dixon v. Cushman & Wakefield W., Inc.*,
No. 18-cv-05813-JSC (N.D. Cal. Apr. 21, 2022) ..........................................10

16

*Figueroa v. Capital One, N.A.*,
No. 18cv692 JM(BGS), 2021 U.S. Dist. LEXIS 11962 (S.D. Cal. Jan. 21,
2021) ................................................................................................................14

17

18

*Flowers v. Twilio, Inc.*,
No. RG16804363 (Alameda Cnty. Super. Ct. June 13, 2019) .......................10

19

20

*Githieya v. Global Tel Link Corp.*,
No. 1:15-cv-0986-AT (N.D. Ga. Aug. 30, 2022).........................................10

21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...........................................................................6

22

*Herrera v. Stone Etc.*,
2022 Cal. Super. LEXIS 81890 .....................................................................14

23

24

*Hubbard v. RCM Techs. (USA), Inc.*,
No. 19-CV-6363-YGR, 2021 U.S. Dist. LEXIS 208581 (N.D. Cal. Oct. 28,
2021) ................................................................................................................16

25

26

*In re Animation Workers Antitrust Litig.*,
No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720, 2016 WL 6663005
(N.D. Cal. Nov. 11, 2016)...............................................................................10

27

28

ii

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420 YGR (DMR), 2020 U.S. Dist. LEXIS 233547 (N.D. Cal.
   Dec. 10, 2020) ..................................................................................................................11

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420 YGR, 2020 U.S. Dist. LEXIS 233607 (Dec. 10, 2020) ..........................7

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS 92063 (N.D. Cal. May 25,
   2023) .................................................................................................................................10

*In re Telescopes Antitrust Litig.*,
   No. 20-cv-03642-EJD (VKD), 2023 U.S. Dist. LEXIS 134368 (N.D. Cal. Aug.
   2, 2023) .............................................................................................................................10

*Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*,
   No. 19-cv-03004-YGR, 2020 U.S. Dist. LEXIS 27305 (N.D. Cal. Feb. 18,
   2020) .................................................................................................................................11

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) .......................................................................................................6

*Kieu Phan v. Uka's Big Saver Foods*,
   2019 Cal. Super. LEXIS 15790 ....................................................................................12, 14

*Kranson v. Fed. Express Corp.*,
   No. 11-cv-05826-YGR, 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11,
   2013) ..............................................................................................................................8, 13

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2017 U.S. Dist. LEXIS 105463 (N.D. Cal. July 7,
   2017) .................................................................................................................................11

*Laffitte v. Robert Half Int'l, Inc.*,
   1 Cal.5th 480 (2016) ................................................................................................6, 9, 12

*Lashbrook v. City of San Jose*,
   No. 5:20-cv-01236-NC (N.D. Cal. Sept. 2, 2020) ...............................................................10

*Lealoa v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000).....................................................................................................6

*Lenard v. Buy Buy Baby, Inc.*,
   2019 Cal. Super. LEXIS 451 ...............................................................................................14

*Loretz v. Regal Stone, Ltd.*,
   756 F. Supp. 2d 1203 (N.D. Cal. 2010) ...............................................................................11

*Martino v. Denevi*,
   182 Cal.App.3d 553 (1986).................................................................................................12

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 5:16-CV-07013-LHK (N.D. Cal. July 23, 2020) ..........................................................10

*Nitsch v. DreamWorks Animation SKG Inc.*,
   Case No. 14-CV-04062-LHK, 2017 U.S. Dist. LEXIS 86124, 2017 WL
   2423161 (N.D. Cal. June 5, 2017) .......................................................................................11

*Perez v. Rash & Assocs.*,
    No. 4:16-cv-3396-YGR, 2021 U.S. Dist. LEXIS 189889 (N.D. Cal. Oct. 1,
    2021) .................................................................................................................... 13

*Rodriguez v. Cty. of L.A.*,
    891 F.3d 776 (9th Cir. 2018) ................................................................................... 6

*Rodriguez v. United States Bank Nat'l Ass'n*,
    2022 Cal. Super. LEXIS 62099 ....................................................................... 12, 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................. 15

*Ruvalcaba v. Amphenol Corp.*,
    2023 Cal. Super. LEXIS 90289 .............................................................................. 14

*Stanley Donen Films v. Twentieth Century Fox Film Corp.*,
    2018 Cal. Super. LEXIS 25900 ....................................................................... 12, 14

*Tryfonas, et. al v. The Allstate Corp., et al.*,
    Cir. Ct. Madison County, Illinois, No. 2016-L-000880 .......................................... 8

*Trzeciak v. Allstate Prop. & Cas. Ins.*,
    569 F. Supp. 3d 640 (E.D. Mich. 2021) .................................................................. 8

*Willey v. Techtronic Indus. N. Am.*,
    No. RG 16806307 (Alameda Cnty. Super. Ct. Aug. 4, 2017) .............................. 10

*Winterrowd v. Am. Gen. Annuity Ins.*,
    556 F.3d 815 (9th Cir. 2009) ................................................................................. 12

*Yumori Kaku v. City of Santa Clara*,
    No. 17CV319862 (Santa Clara Cnty. Super. Ct. Jan. 22, 2019) ........................... 10

*Zungia v. Ancra Int'l*,
    2020 Cal. Super. LEXIS 72489 ....................................................................... 12, 14

**Other Authorities**

Adjusted Laffey Matrix.
    http://www.laffeymatrix.com/see.html .................................................................. 11

Brian T. Fitzpatrick,
    *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J.
    Empirical Legal Stud. 811 (2010) .......................................................................... 13

Stuart J. Logan, Beverly C. Moore & Jack Moshman,
    *Attorney Fee Awards in Common Fund Class Actions*,  24 Class Action Rep.
    167 (2003) ............................................................................................................. 13

Theodore Eisenberg & Geoffrey P. Miller,
    *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J.
    Empirical Legal Stud. 248 (2010) .......................................................................... 13

Theodore Eisenberg, Geoffrey Miller & Roy Germano,
    *Attorneys' Fees in Class Actions: 2009-2013*,  92 N.Y.U.L. Rev. 937 (2017) ..... 13

William B. Rubenstein and Rajat Krishna,

iv

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

Class Action Fee Awards: A Comprehensive Empirical Study ........................................... 13

William B. Rubenstein et al.,
*Class Action Fee Awards 2006–2011: An Empirical Study, reprinted in* 5
Newberg and Rubenstein on Class Actions (6th ed.) ............................................. 13

v

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT pursuant to Fed. R. Civ. P. 23(h), on May 22, 2024 at 2:00 p.m., or as soon after as the matter can be heard, in the Courtroom of the Honorable Yvonne Gonzalez Rogers, of the United States District Court for the Northern District of California, located in Courtroom 1 on the 4th Floor, 1301 Clay Street, Oakland, CA 94612, Oakland Courthouse, Plaintiff Andrea Stevenson ("Plaintiff") will move for an Order approving an award of $7.5 million dollars for attorneys' fees, $345,238.33 for reimbursement of litigation expenses, and a service award of $5,000 to Ms. Stevenson for her service as the class representative. This motion is based on and supported by the Memorandum of Points and Authorities below, the Joint Declaration of Class Counsel, and the Declaration of Richard Pearl, Esq., which are being filed concurrently with this Motion. Class Counsel submit that the attorneys' fees, litigation expenses, and Service Award requested are fair, reasonable, and appropriate and ask the Court to award them.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

3    After more than eight years of litigation, Plaintiffs have delivered a substantial class

4 Settlement, providing four complementary forms of relief.  *First*, Allstate will pay $25 million,

5 creating a non-reversionary, all-cash common Settlement Fund to resolve the claims in this case,

6 including attorneys' fees and costs. Dkt. 69-3 ¶ 68. *Second*, Allstate has agreed to non-monetary

7 relief prohibiting the company from using "any form of price optimization" to set private passenger

8 auto rates for California policyholders. That non-monetary relief addresses the challenged practice.

9 It is effectively a permanent ban on Allstate's use of price optimization in California: by its terms,

10 the non-monetary relief continues "unless and until" California law or the California Dept. of

11 Insurance ("CDI" or the "Department") were to explicitly approve price optimization (*id.* ¶ 73)—

12 and the chances of that appear to be slim to none. *Third*, Allstate has agreed to bring more

13 transparency to its auto-insurance rate setting: for the next 10 years, Allstate cannot even request

14 to raise the value (or "relativity") of any "rating factor" for automobile policies by more than 5%

15 over the actuarially "indicated" amount without providing a "specific written explanation." *Id.* ¶

16 72.[1] *Fourth*, in response to this litigation and as an additional part of this Settlement, on Feb. 3,

17 2023, Allstate has now filed a new class plan that does not consider an individual's or class's

18 willingness to pay a higher premium. With non-material exceptions, it does not use rating factor

19 relativities for either the multipolicy rating factor or the years-licensed rating factor that exceed

20 both indicated and current. As a result, Plaintiff's counsel estimate that Settlement Class members

21 will pay millions of dollars less per year in total for, due to Allstate's using the relativities in its

22 new class plan rather than those it used in its 2011 class plan. *See* Joint Decl. ¶17. Allstate disagrees

23 with this assertion and that its prior rating plan considered an individual's or class's willingness to

24 pay a higher premium.

25

---

26 [1] *See* Joint Declaration of Class Counsel in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Award ("Joint Decl.") at ¶¶ 4-7 for definitions and explanations of "class plan," "rating factors," "relativities." Unless otherwise specifically defined herein, all capitalized terms have the same meanings as the same terms in the Settlement Agreement.

27

28

Delivering this relief has been a labor intensive and risky undertaking. The legal and factual issues have been novel and complex. Reviewing and analyzing Allstate's records (more than 400,000 pages) was arduous. And the case has been hard fought. Over the last eight-plus years, Class Counsel have invested more than 6,800 hours of time and incurred out-of-pocket costs for necessary litigation expenses of almost $350,000, including $224,677 in expert fees. Joint Decl. ¶¶ 55, 61. This case models why, despite their social importance, class action challenges to insurance company rate practices are rare. They often require an exceptional depth of knowledge about insurance company practices and state insurance regulation, the specialized methods used by insurance companies, actuaries, and regulators, and familiarity with the abstruse near inscrutability of many insurance companies records and filings. At the same time, case like this one also present hurdles posed by defenses rooted in primary jurisdiction and the filed-rate doctrine. This case— and the Settlement Class—benefitted both from the unusual expertise possessed by one of the Class Counsel here, Mr. Angoff, a former state Director of Insurance, and from Class Counsel's high tolerance for risk.

For their efforts, the results they have delivered, and the risks they assumed over the last eight-plus years, Class Counsel now request: (a) an award of $7,500,000 in attorneys' fees, or 30% of the common fund they created, producing a modest lodestar multiplier of 1.2; (b) reimbursement of the approximately $345,238.33 in expenses they have incurred to prosecute this case[2]; and (c) a service award of $5,000 for Ms. Stevenson, the Class Representative, for the time and effort she has devoted to this case, and her perseverance for so many years, with so very little personally to gain. *See generally* this District's Guidelines for Final Approval of Class Settlements, Guidelines 2 and 3 (attorneys' fees and service awards).

### A.    Class Counsel's Efforts on Behalf of the Class.

We provide, here, an overview of Class Counsel's work in this case. Class Counsel's Joint Declaration, filed concurrently, provides more detail both about Class Counsel's efforts, expertise,

---

[2] These expenses include $20,000 for future costs that Class Counsel estimate they will incur through final approval of the Settlement.  Any portion of those estimated costs that are not actually incurred by Class Counsel will be distributed to the Settlement Class.

and experience, as well as and the procedural history of this case. Biographies of Plaintiff's Counsel are attached as Exhibit B to Class Counsel's Joint Declaration.

Class Counsel conducted an extensive, comprehensive pre-suit investigation. That investigation included: (1) analyzing Allstate's relevant class plan, Cal. Code. Regs. tit. 10 § 2632.3(a), and rate filings Allstate had filed with the CDI for evidence of Allstate's use of price optimization; (2) meeting and conferring with regulators and industry representatives at meetings of the National Association of Insurance Commissioners to gather, share, exchange, and refine views about industry participants' use of and regulators' responses to price optimization (and related "adjustments" or deviations from actuarially indicated rates); (3) collecting and scrutinizing materials regarding price optimization including materials on the topic by Allstate, trade associations, and consumer groups; (4) refining and confirming the actuarial bases for challenging price optimization with the assistance of a consulting actuarial expert; (5) reviewing and analyzing the work product of the National Association of Insurance Commissioners' working group on price optimization; (6) searching for former Allstate employees to speak to about Allstate's use of price optimization; and (7) conducting exhaustive legal research regarding applicable sections of the California Insurance Code and CDI regulations, CDI bulletins, instructions and guidance, California's consumer protection statutes, and relevant caselaw. After this Court stayed these proceedings to allow the CDI to exercise primary jurisdiction, the proceedings moved to that forum, where Class Counsel immediately moved to intervene and took responsibility for seeing that the Department Proceeding progressed as quickly as possible given agency constraints, including by leading discovery. Joint Decl. ¶27.

Discovery was contested, labor-intensive, and extensive and went on for about three years. After several motions to compel and an extensively negotiated ESI protocol, Allstate ultimately produced more than 400,000 pages of documents, and Class Counsel assumed primary responsibility for obtaining, reviewing and analyzing those documents. Joint Decl. ¶30. The document review was arduous. Many of the most relevant documents were dense and technical, including dozens of spreadsheets with dozens of tabs containing thousands of entries setting forth indicated relativities, selected relativities, ratings factors, and exposures. *Id.* ¶31.

Once Class Counsel had marshalled the evidence from the document productions, depositions commenced. Class Counsel took the lead for questioning each of Allstate's witnesses at their depositions.[3] In total, Class Counsel deposed eight Allstate employees. Joint Decl. ¶34. During fact discovery, Class Counsel uncovered evidence indicating discovery misconduct by Allstate (which Allstate denies). Following extensive meet and confers on the issue, Class Counsel briefed a motion for sanctions in the Department Proceeding and conducted written discovery and depositions related to the issue. The CALJ had not heard argument on the motion at the time the Parties entered into the proposed Settlement. *Id.*, at ¶35.

Throughout the Department Proceeding, Class Counsel consulted several insurance experts—ultimately retaining Casualty Actuarial Society ("CAS") Fellow and former CAS President Robert Miccolis to offer opinions on Allstate's use of price optimization and its impact on Allstate's customers. Throughout every stage of the Department Proceeding, Class Counsel also conferred regularly with counsel for CDI and additional Intervenor Consumer Watchdog (CWD) as to what Class Counsel was learning in discovery, to gain insights from CDI and CWD, and to discuss strategies for the investigation and to prepare for the ultimate evidentiary hearing on the merits. Joint Decl. ¶36.

In April 2021, at the conclusion of fact discovery, Class Counsel made an extensive presentation to CDI and CWD, distilling the evidence revealed in discovery and shaping the parties' strategies from that point forward. Joint Decl. ¶38.

As the Department Proceeding progressed toward a merits hearing, Class Counsel, the CDI, CWD, and Allstate each submitted expert reports (in the form of "pre-filed" direct testimony). Allstate also submitted pre-filed testimony of four fact witnesses. Joint Decl. ¶40.

In March of 2022, Class Counsel and Allstate filed *Daubert*-style cross-motions to strike all or portions of each expert and fact witness's pre-filed direct testimony (and related oppositions and replies thereto), and Class Counsel prepared for the final evidentiary hearing—preparing

---

[3] Class Counsel also hired and paid for the court reporters and videographers used at all of the depositions in the Department Proceeding. Joint Decl. ¶ 34, n. 2.

witness and exhibit lists, direct and cross examinations, and conferring with CDI and CWD about trial strategy. Joint Decl. ¶43.

At the same time, mediation commenced, with four full-day mediation sessions conducted in 2022 and multiple settlement discussions between the Parties, as well as between the Parties and mediator Sanford Kingsley, between sessions. CDI and CWD participated in the mediation, but Class Counsel took the lead, including preparing a detailed mediation statement and damages analyses. Joint Decl. ¶45.

On the eve of the final pre-hearing conference (on Sunday Nov. 27, 2022, Thanksgiving weekend, one day before the final pre-hearing conference scheduled for Nov. 28, and just one week before the final evidentiary hearing (or trial), scheduled for Dec. 2, 2022), the Parties reached an agreement in principle.

Even after Plaintiff and Allstate reached their agreement, Class Counsel actively participated in contentious negotiations with all parties to the Department Proceeding to reach an agreement on the language of a stipulation that, with the Commissioner's approval, would terminate the Department Proceeding. With four sets of stakeholders (Plaintiff, CDI, CWD and Allstate), negotiations were unusually protracted and challenging, and required reaching not only an agreement resolving the claims in this case but also a stipulation to stay and ultimately terminate the Department Proceeding, in which all parties also had stakes and interests. Ultimately, the parties' agreement resolving the Department Proceeding depends on resolution of this case too; the termination of the Department Proceeding is contingent on this Court's approval of the proposed Settlement.

From the beginning of this case, throughout the Department Proceeding, and through Settlement, Class Counsel assumed a primary role. Joint Decl. ¶¶ 27-47. Class Counsel's work drove the discovery and case strategy in the Department Proceeding and delivered this Settlement. Without Class Counsel's contributions, described above and in more detail in the Joint Declaration, the relief could not have been delivered. *Id.*

1  **II.   ARGUMENT**

2      **A.   Class Counsel's request for an attorneys' fee award of 30% of the common
3         Settlement Fund they have created is fair, reasonable, and appropriate**.

4      Because the claims in this case arise under California law, California rather than federal

5  law governs the calculation and award of attorneys' fees. *Rodriguez v. Cty. of L.A*., 891 F.3d 776,

6  809 (9th Cir. 2018) (noting that for cases brought under state law, attorneys' fee awards are a

7  "matter to which state law applies" and affirming an award with a multiplier of 2.0). *See also*

8  Declaration of Richard Pearl, Esq. ("Pearl Decl."), filed concurrently.

9      California law authorizes awarding fees "by choosing an appropriate percentage of the fund

10  created." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480 (2016). *See also Ketchum v. Moses*, 24

11  Cal.4th 1122 (2001) (finding unpersuasive the rationale of *Burlington v. Dague*, 404 U.S. 557

12  (1992) and holding that multiplier adjustments to lodestars constitute "earned" compensation for

13  an attorney's willingness to take on contingent risk). In *Laffitte,* the Supreme Court of California

14  awarded fees of one-third of the $19 million common fund.

15          **1.   A qualitative assessment of the results Class Counsel have delivered and
16              the risks they ran supports an award of 30% of the common Settlement
            Fund rather than any lower percentage.**

17      Class Counsel have delivered real value and took large risks here, in a complex and novel

18  case. A qualitative assessment of the relief and the risks justifies a fee award of 30% of the common

19  fund they created.

20      California law, like Ninth Circuit law, allows consideration of a range of qualitative factors

21  when ruling on a fee request. *See Laffitte*, 1 Cal.5th at 489 (giving examples, "'including the quality

22  of the representation, the novelty and complexity of the issues, the results obtained, and the

23  contingent risk presented'") (quoting *Lealoa v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26

24  (2000)); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998) (similarly giving

25  examples including "the quality of the representation, the benefit obtained for the class, the

26  complexity and novelty of the issues presented, and the risk of nonpayment").

27      Here, consideration of the following factors is appropriate and support a fee award of 30%

28  (a) the significance of the monetary and non-monetary relief, (b) the public interest served by the

litigation and the public benefits provided by the settlement, (c) the quality of representation and the novelty and complexity of the issues litigated, (d) the opposition mounted by a well-funded defendant, and (e) the expense, opportunity costs, delayed Payment, and contingent risks that Class Counsel bore.

### a. The monetary and non-monetary relief are substantial and significant.

The relief delivered for the benefit of over a million Californians (not to mention the prospective practice changes which benefit likely millions more) is robust. The non-reversionary cash recovery here is $25 million. And the full value of the Settlement is increased by: (a) according to Plaintiff's estimate, the future savings of several million more dollars per year under Allstate's new class plan, which was filed in connection with this litigation and Settlement; and (b) the Settlement's non-monetary relief (practice change) provisions, which effectively guarantee a permanent prohibition on Allstate's use of price optimization and also increase transparency in rate setting.[4] *See* Joint Decl. ¶¶ 14-18.

### b. This case presented novelty, complexity, and uncertainty.

Unlike the average wage-and-hour overtime case, or the average Rule 10b-5 "stock drop" material misstatement or omission case, the claims here were not run-of-the-mill. There's not much here that could be recycled from other cases. The issues were novel.

The issues were also complex. Allstate's formulas had no rating factor called "price optimization." Allstate's use of price optimization use had to be inferred. And without direct evidence and in the face of Allstate's denials, persuading a fact-finder that the higher premiums that Allstate charged Class members resulted from price optimization was going to be challenging. Joint Decl. ¶¶ 11.

---

[4] Compare *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2020 U.S. Dist. LEXIS 233607, **77 and 90 (Dec. 10, 2020) (commending counsel for a settlement equal to "11.7 percent of the single damages … [allegedly] sustained," which was an "excellent" result considering the circumstances and risks of the case).

In addition, the uncertainty attendant to the outcome is also evident from the *adverse* outcomes in cases in other jurisdictions. In Michigan, Allstate defeated claims that it "committed silent fraud by overcharging premiums based on non-risk factors …" *Trzeciak v. Allstate Prop. & Cas. Ins.,* 569 F. Supp. 3d 640, 643 (E.D. Mich. 2021). And in Illinois, when the same Class Counsel litigating this case sued Allstate for price optimization in that state, Allstate defeated class certification (under Illinois law). *Tryfonas, et. al v. The Allstate Corp., et al*., Cir. Ct. Madison County, Illinois, No. 2016-L-000880. Even though Class Counsel are confident that the prerequisites for class certification are amply satisfied here, under Rule 23, maintaining class certification here through trial remained a risk. And so did upcoming dispositive rulings on the merits.

### c.   Allstate was vigorously defended, well-funded, and seemingly prepared to continue litigating for many more years.

Class Counsel have been funding this case themselves and battling one of the largest publicly held personal line insurers and biggest auto insurance companies in the country. Allstate was vigorously defended, resisted discovery, denied that it engaged in price optimization, contested expert opinions and moved to strike them. All of this increased Class Counsel's risks. Allstate had ample resources and was seemingly prepared to drag out this litigation, which has already lasted eight-plus years, for many more years.

### d.   Class Counsel have incurred substantial expense, forgone other opportunities, worked for eight-plus years without payment, and shouldered real risks of a minimal recovery or no recovery.

The Court has acknowledged "that two years and six months" can be "a significant amount of time to wait to be awarded fees, particularly for a small firm." *Kranson v. Fed. Express Corp.*, No. 11-cv-05826-YGR, 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11, 2013). Here, the wait has been eight-plus years, during which Class Counsel, working in small firms, have incurred significant carrying costs while also running the risk of a minimal or no recovery. They could have been working on simpler, less risky cases with a higher expectation of easier and quicker recoveries.

### e. *Enforcing the Insurance Code serves a public interest, and the non-monetary relief obtained here provides a substantial public benefit.*

Protecting consumers from arbitrary and unfairly discriminatory insurance practices, as this Settlement does, serves the public interest and provides a substantial public benefit.

### 2. The reasonableness of the requested fee is also confirmed by a lodestar cross-check.

Under California law, the Court has discretion to conduct a lodestar cross-check on a percentage fee, although, as the Supreme Court of California explained in *Laffitte*, a cross-check is not required. *Laffitte*, 1 Cal. 5th at 505-06 ("[W]e emphasize the lodestar calculation [if performed] …. does not override the … primary determination of the fee as a percentage of the common fund … We hold further that trial courts … retain the discretion to forgo a lodestar cross-check ….."). Either way, a lodestar cross-check shows a modest lodestar multiplier here of 1.2x and therefore supports Class Counsel's request.

### a. Class Counsel's hourly rates align with prevailing hourly rates

Generally, when determining a reasonable hourly rate, the relevant standard is the prevailing rate in the "relevant community," *Blum v. Stevenson*, 456 U.S. 886, 895 (1984), which, in turn, is generally the legal community "where the court is located." *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 71 (2014); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). In this case, that means the legal community "in the San Francisco Bay Area specializing in complex, high-stakes litigation." *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 U.S. Dist. LEXIS 68161, at *58 (N.D. Cal. Apr. 17, 2020).

Applying that framework, Class Counsel's requested hourly rates—between $500 and $1075 for lawyers depending on seniority, and between $325 and $395 for paralegals— align with prevailing rates in this market. This alignment is shown by at least four measures:

A. The declaration of Richard Pearl, Esq. Mr. Pearl is the author of CEB's *California Attorney Fee Awards* and has extensive knowledge of Bay Area hourly rates. In his declaration, he attests to the reasonableness of Class Counsel's requested rates.

9

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

B. The rates of Goldstein Borgen Dardarian and Ho (GBDH), a Bay Area firm, one of the firms representing Plaintiff.[5]

C. Hourly rates that have been approved and awarded by this Court and by other courts in this District for comparably experienced and skilled counsel litigating similarly complex civil cases in this District.[6] *See also* Pearl Decl. ¶35.

---

[5] GBDH's hourly rates have been approved by numerous courts, including by the following courts in the last several years (proceeding chronologically): Order Granting Final Approval of Class & PAGA Action Settlement, Serv. Awards to Class Reps., & Att'ys' Fees & Costs, *Carillo-Hueso v. Ply Gem Indus. Inc.*, No. 34-2016-00195734-CU-OE-GDS (Sacramento Cnty. Super. Ct. June 29, 2017) (approving GBDH's 2017 hourly rates); J. & Final Order Approving Settlement of Class Action, *Willey v. Techtronic Indus. N. Am.*, No. RG 16806307 (Alameda Cnty. Super. Ct. Aug. 4, 2017) ("*Willey* Order") (finding that GBDH's "2017 hourly rates are reasonable and commensurate with the prevailing rates for class actions"); Order Re: Mot. for Att'ys' Fees, *Yumori Kaku v. City of Santa Clara*, No. 17CV319862 (Santa Clara Cnty. Super. Ct. Jan. 22, 2019) ("*Yumori Kaku* Order") ("[T]he Court finds the rates charged by Plaintiffs' attorneys and paralegals are reasonable."); Order of Final Approval & J., *Flowers v. Twilio, Inc.*, No. RG16804363 (Alameda Cnty. Super. Ct. June 13, 2019) (finding that GBDH's "2019 hourly rates are reasonable and commensurate with the prevailing rates for class actions"); Order Granting Mot. for Final Approval of Class Action Settlement; Granting Mot. for Serv. Awards; & Granting Mot. for Att'ys' Fees, Costs, & Expenses, *Nevarez v. Forty Niners Football Co., LLC*, No. 5:16-CV-07013-LHK (N.D. Cal. July 23, 2020), ECF No. 416 (finding GBDH's rates "reasonable in light of prevailing market rates in this district"); Order Granting Final Approval of Class Action Settlement; Awarding Att'ys' Fees & Serv. Award; J., *Lashbrook v. City of San Jose*, No. 5:20-cv-01236-NC (N.D. Cal. Sept. 2, 2020), ECF No. 25 (finding that GBDH's 2020 hourly rates were "within the market range of hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation"); Order Re: Mot. for Final Approval; Mot. for Att'ys' Fees, Costs, & Incentive Awards, *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-cv-05813-JSC (N.D. Cal. Apr. 21, 2022), ECF No. 156 (finding the requested rates, including GBDH's 2021 rates, "within the range of other rates approved in wage and hour litigation in this district); Order Granting Final Approval of Class Action Settlement & Awarding Att'ys' Fees, Cost, & Expenses, *Githieya v. Global Tel Link Corp.*, No. 1:15-cv-0986-AT (N.D. Ga. Aug. 30, 2022), ECF No. 369 (approving an attorneys' fees award based on GBDH's 2022 hourly rates).

[6] *See In re Telescopes Antitrust Litig.*, No. 20-cv-03642-EJD (VKD), 2023 U.S. Dist. LEXIS 134368, at *8 (N.D. Cal. Aug. 2, 2023) (approving rates ranging from $1,050 for a senior partner to $550/hour for a junior associate, noting that rates at level "are in line with what other courts in this District have approved for "private plaintiffs' attorneys litigating complex civil cases in the San Francisco Bay Area") (citing cases*); In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS 92063, at *43-44 (N.D. Cal. May 25, 2023) (approving rates of $875-$1,195 per hour for partners and $385-$850 per hour for associates); *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (approving rates of senior attorneys of between $845 to $1,200 per hour, in this district, seven years ago in 2016); *Nitsch v. DreamWorks Animation SKG Inc.*, Case No. 14-CV-04062-LHK, 2017 U.S. Dist. LEXIS 86124, 2017 WL 2423161, at *9 (N.D. Cal. June 5,

D.   The rates of peer national class action firms that are some-time competitors and some-time co-counsel of Class Counsel's firms, including, in this District, Lieff Cabraser Heimann & Bernstein. *See* Pearl Decl ¶ 36.

E.   The Washington D.C. area rates by which two of the Class Counsel firms here, Mehri & Skalet and Tycko & Zavareei LLP, annually set their rates using the Adjusted Laffey Matrix. http://www.laffeymatrix.com/see.html. Although not determinative of the hourly rate here, the Adjusted Laffey Matrix can be informative, lending "some context" to the reasonableness of the rates requested here. *Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, No. 19-cv-03004-YGR, 2020 U.S. Dist. LEXIS 27305, at *10 (N.D. Cal. Feb. 18, 2020) ("Although the *Laffey* rates are not determinative of a reasonable hourly rate in the Bay Area legal market … [they] lend[ ] some context to the reasonableness of counsel's rate"). *See also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2020 U.S. Dist. LEXIS 233547, at *35 (N.D. Cal. Dec. 10, 2020) ("The Court finds the rates here are reasonable based on the Laffey matrix). This Court has previously approved hourly rates that were based on the Adjusted Laffey Matrix for Tycko & Zavareei LLP, one of the Class Counsel firms here. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 U.S. Dist. LEXIS 105463, at * 24 (N.D. Cal. July 7, 2017) (finding that the hourly rates charged by Tycko & Zavareei LLP, which were determined using the Adjusted Laffey Matrix, "are reasonable and commensurate with those charged by attorneys with similar experience in the market");

By all five of these measures, Class Counsel's submitted rates are reasonable.

### b.   *The hours class counsel expended were necessary and reasonable.*

Counsel have billed more than 6,800 hours in this case. After more than eight years—for a case that was litigated and vigorously contested right up to the eve of the final evidentiary hearing,

---

2017) (approving rates for senior attorneys of between $870 to $1,200 per hour, in this district, in 2017); *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (approving billing rates ranging from $900 per hour for partners to $150 per hour for law clerk for Bay Area plaintiff's counsel in complex civil litigation, in 2010).

11

NOTICE OF MOTION, MOTION, AND MEMO. IN SUPP. OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD, CASE NO. 4:15-cv-04788-YGR

with discovery disputes and *Daubert* motions and with the Parties having fully prepared to try the case—the hours here are reasonable. Pearl Decl. ¶41.

For the Court's convenience, Exhibit C to the Joint Declaration summarizes the major tasks undertaken and the hours that Class Counsel dedicated to them. *See generally* this District's Guidelines for Final Approval of Class Settlements, Guideline 2 ("categories of activities related to the action by each biller"). Counsel's detailed underlying time records are also available for *in camera* review.[7]

### c.   *Empirical evidence shows that the 1.2x multiplier requested here is smaller than the average multiplier.*

In *Laffitte,* the 33⅓ % award affirmed by the Supreme Court of California resulted in a lodestar multiplier of "2.03 to 2.13." 1 Cal.5th at 487. That is higher than the lodestar multiplier of 1.23x requested here.

Similarly, in other California cases cited above where the lodestar multiplier was specified, the multiplier was higher than the request here. *See, e.g.*, *Rodriguez*, 2022 Cal. Super. LEXIS 62099, *12 (multiplier of 2.13x); *Herrera,* 2022 Cal. Super. LEXIS 81890, **11 (1.26x); *Zungia*, 2020 Cal. Super. LEXIS 72489, *7 (1.99x); *Kieu Phan*, 2019 Cal. Super. LEXIS 15790, *7 (1.36x); *Berry*, 2018 Cal. Super. LEXIS 21384, *14 (1.75x); *Stanley*, 2018 Cal Super. LEXIS 25900, *2 (2.74x). *See also* Pearl Decl. ¶43.

More broadly, there have been at least five empirical studies of lodestar multipliers. The results of those studies are summarized in the following table:

---

[7] California law does not require review of time sheets. *Laffitte*, 1 Cal.5th at 505 (affirming that trial courts have the direction to use "counsel declarations summarizing overall time spent, rather than demanding and scrutinizing daily time sheets in which the work performed [is] broken down by individual task"). *See also Winterrowd v. Am. Gen. Annuity Ins.,* 556 F.3d 815, 827 (9th Cir. 2009) (quoting *Martino v. Denevi*, 182 Cal.App.3d 553, 559 (1986) ) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." (citation omitted) (internal quotation marks omitted).

| STUDY | YEARS STUDIED | NUMBER OF CASES | AVERAGE MULTIPLIER |
|---|---|---|---|
| William B. Rubenstein and Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study,* William B. Rubenstein et al., *Class Action Fee Awards 2006–2011: An Empirical Study, reprinted in* 5 Newberg and Rubenstein on Class Actions § 15:89, Table 2 (6th ed.) | 2006-2011 | 790 | 1.42 |
| Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U.L. Rev. 937, 965 tbl. 12 (2017) | 2009-2013 | 294 | 1.48 |
| Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 833–34 (2010). | 2006-2007 | 204 | 1.65 |
| Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 272 tbl.14 (2010) | 1993-2008 | 368 | 1.81 |
| Stuart J. Logan, Beverly C. Moore & Jack Moshman, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167 (2003) | 1973-2003 | 1,120 | 3.89 |

What these data show is that across decades of class action practice, in thousands of cases throughout the country, the typical lodestar multiplier appears to be at least 1.5 times hourly rates in the *average* case. The requested lodestar multiplier here— of 1.2 times hourly rates— is lower than that. It is fair and reasonable. *See also Perez v. Rash Curtis & Assocs.*, ("Perez I"), No. 4:16-cv-03396-YGR, 2020 U.S. Dist. LEXIS 61861, **61-63 (N.D. Cal. April 17, 2020) (awarding attorneys' fees equal to 33.33% of an $89 million common fund, reflecting a lodestar multiplier of more than 13x); *Perez v. Rash & Assocs.*, ("Perez II"), No. 4:16-cv-3396-YGR, 2021 U.S. Dist. LEXIS 189889, **2, 14 (N.D. Cal. Oct. 1, 2021) (awarding attorneys' fees equal to 37% of a common fund of $75.6 million, reflecting a lodestar multiplier of 4.8x); *Kranson*, No. 11-cv-05826-YGR, 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11, 2013) (awarding a multiplier of 1.5 in a

case in which the Court did "not believe that the issues presented [in this case were]... novel or overly complex," noting that under California law "[f]ee enhancements serve an important purpose" in contingent cases). *See also* Pearl Decl. ¶44.

### 3. There is ample case-law support for an attorneys' fee award of one-third, but class counsel's request here is more modest.

At least two other federal district judges in this Circuit have accurately described that, "'California courts routinely award attorneys' fees of one-third of the common fund.'" *Figueroa v. Capital One, N.A.*, No. 18cv692 JM(BGS), 2021 U.S. Dist. LEXIS 11962, at \*24-25 (S.D. Cal. Jan. 21, 2021) (quoting *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL 4310707, at \*9 (S.D. Cal. Sept. 28, 2017)). It is common for state courts awarding fees under California law to award fees of 33⅓% while also noting that that 33⅓% "is the average generally awarded in class actions," and that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). *Ruvalcaba v. Amphenol Corp.*, 2023 Cal. Super. LEXIS 90289, \*13 (Tsao, J.). Accord: *Rodriguez v. United States Bank Nat'l Ass'n*, 2022 Cal. Super. LEXIS 62099, \*11 (Riff, J.) (33⅓ %, noting that that "is the average generally awarded" and supported by empirical studies); *Herrera v. Stone Etc.,* 2022 Cal. Super. LEXIS 81890, \*\*11-12 (Williams Court, J.) (same); *Zungia v. Ancra Int'l*, 2020 Cal. Super. LEXIS 72489, \*7 (same); *Lenard v. Buy Buy Baby, Inc.*, 2019 Cal. Super. LEXIS 451, \*17-18 (Nelson, J.) (same); *Kieu Phan v. Uka's Big Saver Foods*, 2019 Cal. Super. LEXIS 15790, \*6 (Williams Court, J.) (same); *Berry v. Magic Memories U.S.*, 2018 Cal. Super. LEXIS 21384, \*\*13-14 (Hogue, J.) (same); *Stanley Donen Films v. Twentieth Century Fox Film Corp.*, 2018 Cal. Super. LEXIS 25900 (Berle, J.) (awarding 33.3%of $12.6 million common fund).

Applying California law, Class Counsel's request here for an award of 30% of the common Settlement Fund is fair, reasonable and appropriate. Pearl Decl. ¶¶ 4, 25, 32, 42. The 30% requested is $830,000 less than the one-third awards that "California courts routinely award." *Figueroa* 2021 U.S. Dist. LEXIS 11962, at \*24-25.[8]

---

[8] The common Settlement Fund is $25 million. Thirty percent is $7.5 million. One-third would be

**B.      Class Counsel are also entitled to reimbursement of their submitted expenses, which have been necessary, reasonable, and appropriate.**

Counsel are entitled to reimbursement for standard out-of-pocket expenses they incur in investigating and prosecuting a case, and those expenses are payable out of the common fund. *Perez v. Rash Curtis,* 2020 U.S. Dist. LEXIS 68161, at **64-65 (citing cases). Over the last eight-plus years, Class counsel have advanced $345,238.33 in out-of-pocket costs for the benefit of the Class. The categories of these expenses are itemized at paragraph 61, Table 2 of Class Counsel's Joint Declaration.[9] These costs were reasonable and are recoverable. Pearl Decl. ¶48.

**C.      Class Counsel's Request for a Service Award of $5,000 for Ms. Stevenson, the Class Representative, is reasonable and appropriate.**

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. Here, Class Counsel request a Service Award for Andrea Stevenson, the Class Representative, in the amount of $5,000, which is well within the range of service awards in this district, and is appropriate for Ms. Steven's time, efforts, and perseverance over the last eight-plus years. She compiled documents, regularly corresponded with Counsel (participating in more than 30 telephone calls regarding the case) and conferred with Counsel regarding settlement negotiations. Ms. Stevenson came forward to do these things, representing the interests of the Class, with very little personally to gain. *See generally* this District's Guidelines for Final Approval of Class Settlements, Guideline 3.

"Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that

---

$8.3 million—$833,333 more.

[9] Further itemization of Class Counsel's expenses is available at the Court's request.

1  confers substantial benefits on others." *Hubbard v. RCM Techs. (USA), Inc.*, No. 19-CV-6363-
2  YGR, 2021 U.S. Dist. LEXIS 208581, at *17-18 (N.D. Cal. Oct. 28, 2021). The requested Service
3  Award, a modest $5,000, should be approved.

4  **III.   CONCLUSION**

5      Class Counsel's work, in this Court and before the CDI, catalyzed the CDI to focus its
6  attention on alleged price optimization practices in California and to open an administrative
7  proceeding to investigate Plaintiff's claim that Allstate was engaging in price optimization. It is the
8  result of Class Counsel's leadership and crucial and extensive work in the Department Proceeding,
9  and because of the claims that Class Counsel filed on Plaintiff's behalf, that Allstate has now
10  agreed, and Class Counsel have delivered, the substantial relief and reforms embodied in the
11  Settlement Agreement. Under that Agreement, negotiated by Class Counsel, Allstate has filed a
12  new class plan that, with non-material exceptions, lowers the relativities that class members have
13  complained about in this case, often by at least 10% compared to the higher relativities in
14  Allstate's 2011 class plan that was in effect when this lawsuit was filed, thus saving class members
15  money; (b) Allstate has committed that, going forward, it will explain in writing the basis for any
16  relativity that exceeds the indicated relativity by more than 5%, a burden not placed on any other
17  insurer in California and one that will both enable the CDI to challenge that explanation, if
18  inadequate, and allow the public to see and evaluate Allstate's explanation for itself; (c) Allstate
19  will pay $25 million to resolve the claims in this case; and (d) Allstate has committed not to use
20  price optimization in California, in any form, for at least a decade. These are robust reforms and
21  achievements.

22
23
24
25
26
27
28

1    For all the reasons stated above, Class Counsel ask the Court to grant this motion, awarding

2    them attorneys' fees of $7.5 million, constituting 30% of the common Settlement Fund recovery;

3    reimbursement of their out-of-pocket expenses of $ 345,238.33; and awarding Ms. Stevenson, the

4    Class Representative, a Service Award of $5,000.

5

6    Respectfully submitted this 4th day of March, 2024.

7

8    /s/ David Borgen
     David Borgen (SBN 99354)

9    dborgen@gbdhlegal.com
     GOLDSTEIN, BORGEN, DARDARIAN & HO

10   155 Grand Avenue, Suite 900
     Oakland, CA 94612
     Tel: (510) 763-9800
11   Fax: (510) 835-1417

12   Cyrus Mehri
     cmehri@findjustice.com
13   MEHRI & SKALET PLLC
     2000 K Street, NW, Suite 325
14   Washington, DC 20006
     Tel: (202) 822-5100
15

16   Andrea Gold
     agold@tzlegal.com
17   TYCKO & ZAVAREEI LLP
     2000 Pennsylvania Avenue, NW, Suite 1010
18   Washington, DC 20006

19   Jeffrey Osterwise
     josterwise@bm.net
20   BERGER MONTAGUE PC
     1818 Market Street. Suite 3600
21   Philadelphia, PA 19103

22

23

24

25

26

27

28