UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREA STEVENSON,**<br>Plaintiff,<br>vs.<br>**ALLSTATE INSURANCE CO., ET AL.,**<br>Defendants. | CASE NO. 4:15-cv-4788-YGR<br><br>**ORDER**<br>**GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; AND**<br><br>**JUDGMENT**<br><br>Dkt. Nos. 81, 82 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiff Andrea Stevenson and defendants Allstate Insurance Company and Allstate Indemnity Company (collectively "Allstate") on December 4, 2023. (Dkt. No. 80.) As directed by the Court's preliminary approval order, on March 4, 2024, plaintiff filed her unopposed motion for attorneys' fees, costs, and service awards. (Dkt. No. 82.) On March 4, 2024, plaintiff also filed her unopposed motion for final settlement approval. (Dkt. No. 81.) The Court held a hearing and took arguments from the parties on May 22, 2024.

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and responses thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed.

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED**. The Court **ORDERS** that class counsel shall be paid $7,500,000 in attorneys' fees and $345,238.33 in litigation costs and class representative and named plaintiff Andrea Stevenson shall be paid a $5,000 incentive

award.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed the putative class action complaint on November 5, 2015 against defendants Allstate Insurance Company and Allstate Indemnity Company alleging the use of elasticity of demand when formulating rate factors for automotive insurance in California. Plaintiff's amended complaint alleges claims for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., unjust enrichment, violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq., and violation of Cal. Ins. Code § 1861.10.

The parties reached a settlement prior to class certification with the assistance of experienced mediator Sanford Kingsley. The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

> [A]ll current and former Allstate California auto insurance Primary Policy Holders whose total premiums were calculated, at any time on or after July 1, 2016, based on Allstate's selection of a rating factor relativity exceeding both the Current and Indicated rating factor relativities for certain coverages in connection with the Years Licensed and/or Multipolicy rating factors. Specifically, those Primary Policy Holders include (a) any Primary Policy Holder whose premiums were determined based on licensure for 29 or more years and had Comprehensive coverage, (b) any Primary Policy Holder whose premiums were determined based on licensure of 34 or more years and had Collision coverage, and (c) any Primary Policy Holder who in addition to their auto policy had a condo, life, and/or mobile home policy and did not have a renters policy ("the Settlement Class").

In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Cyrus Mehri and Jay Angoff of Mehri & Skalet PLLC, Andrea R. Gold of Tycko & Zavareei LLP, and Jeffrey Osterwise of Berger Montague PC as Class Counsel, plaintiff Andrea Stevenson class representative, and Kroll Settlement Administration LLC as the class administrator. (Dkt. No. 80 at 6-8.)

## B. Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendants will pay $25,000,000 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's service award,

2

1  and any *cy pres* payment required under the Settlement Agreement. The Settlement Agreement also
2  requires that Allstate file a new class plan that does not consider an individual's or class's
3  willingness to pay a higher premium, which Allstate recently filed with the California Department of
4  Insurance ("DOI"). Allstate must also explain in writing the basis of any relativity selections it
5  makes that exceed the indicated relativity by more than 5% in any class plan it files over the next ten
6  years, which Allstate has already done. Finally, the Settlement Agreement prohibits Allstate in the
7  future from considering an individual or class's willingness to pay higher premiums in setting its
8  rates.

### 1. *Attorneys' Fees and Costs*

Under the Settlement Agreement, plaintiff's counsel agreed to seek up to $7,500,000 in attorneys' fees and out-of-pocket costs and expenses, which are currently estimated to be at least $340,000. The common settlement fund also includes a provision for settlement administration costs to be paid out of the Settlement Fund, which are currently estimated to be $1,057,30; and $5,000 to be paid to plaintiff Andrea Stevenson as an incentive award in exchange for a general release of all claims against defendants.

### 2. *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards, approximately $16,037,970 will remain to be distributed among the participating class members. Class members will be paid a *pro rata* share of the net settlement amount. Dividing this amount across the 1,293,698 participating class members yields an average recovery of approximately $13.13 per class member.

### 3. *Cy Pres/Remainder*

Any uncashed checks remaining after the Settlement Administrator has made a reasonable effort to locate intended recipients of settlement funds whose checks were returned will be paid to an agreed *cy pres* recipient approved by the Court. The parties have proposed the Center for Auto Safety. The Settlement Fund is non-revisionary; any funds remaining will be sent to the authorized *cy pres* recipient.

### C. Class Notice and Claims Administration

The Settlement Agreement is being administered by Kroll Settlement Administration LLC. Following the Court's preliminary approval and conditional certification of the settlement, the Class Administrator sent notices of the proposed settlement under 28 U.S.C. § 1715(b) ("CAFA notices") to the Attorney General of the United States, the fifty-five (55) state and territorial Attorneys General identified in the service list for the CAFA Notice, and via email to the Nevada Attorney General. The Class Administrator also established a toll-free telephone number for class members to call and obtain information about the proposed settlement, and sent notice to class members via U.S. mail and email.

The Class Administrator also established a settlement website (the "Settlement Website") at www.AllstateCaliforniaAutoRatingSettlement.com. The Settlement Website includes the settlement notices, the procedures for class members to submit claims or exclude themselves, a contact information page for the claim administrator and the parties, the Settlement Agreement, and the signed order of preliminary approval.

Class members were given until April 9, 2024 to object to or exclude themselves from the Settlement Agreement.  Out of 1,210,254 total class members 68 persons filed timely requests to opt out of the Settlement Class.

As of March 4, 2024, Kroll has received: 2,871 requests for payment method changes for Past Primary Policy Holders, two requests for payment method changes for Remaining Current Primary Policy Holders through the Settlement Website, and 17,316 calls through the toll-free telephone number of which 4,599 callers were connected to live operators. Kroll emailed 373,461 addresses of class members who agreed to receive notice by email; 65,259 of those bounced back. Kroll sent a postcard notice to each individual associated with those emails which bounced back. Based on this, Kroll believes it has reached 1,197,666 of the 1,210,254 persons to whom Notice was mailed or emailed.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class

4

1    certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not
2    address whether the settlement is ideal or the best outcome, but only whether the settlement is fair,
3    free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v.*
4    *Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to
5    assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,
6    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status
7    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and
8    the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a
9    government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at
10   1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.
11   2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).]

**B.     Analysis**

   **1.     *The Settlement Class Meets the Prerequisites for Certification***

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied for the purposes of certification of the Settlement Class. (*See* Dkt. No. 80 at 4-5.)

   **2.     *Adequacy of Notice***

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude

5

themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves. (Dkt. No. 80 at 7.)  Pursuant to those procedures, the Class Administrator Kroll believes it successfully contact 1,197,666 of the 1,210,254 persons to whom it sent notice. (Dkt. No. 81 at 14.)  Kroll initially sent notice via postcard to 836,793 settlement class members for whom defendants did not maintain an email address, and who agreed to accept notice via mail. (Dkt. No. 81-1 at 4.) Kroll also emailed 373,461 notices to accounts that were associated with settlement class members who agreed to accept notice via email. *Id.* Kroll then mailed 65,295 postcards to email recipients whose email notice bounced back. *Id.* 3,382 total postcard notices were returned with a forwarding address. *Id.* Kroll then re-mailed those to the forwarding address provided. *Id.* Of 45,302 postcard notices returned without a forwarding address, Kroll ran an advanced search, and was able to successfully re-mail 33,210 notices to an updated address, of which all but 496 were successfully delivered. *Id.* at 4-5.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. The Settlement Is Fair And Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 80 at 6.)

The reaction of the class was overwhelmingly positive. The Court received three

objections[1] and 68 opt-outs as of the April 9, 2024 deadline. (Dkt. No. 84-1, Exs. A, B.)  These objections and opt-outs constitute overwhelming approval amongst 1,210,254 class members. Thus, over 99.99% of the class did not register objections or opt out. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 80 at 8.)  According to that plan, the settlement agreement will create a $25,000,000 common fund. All Settlement Class members will receive a *pro rata* share of the net proceeds of the fund after attorneys' fees, litigation expenses, a service award to the Class Representative, and the expenses incurred by the Settlement Administrator. Each class member is expected to receive $13.13 in compensation. Any remainder will be distributed to the Center for Auto Safety. The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

Additionally, plaintiff represents that settlement class members who are still active customers of defendant will receive compensation automatically in the form of a policy credit. Plaintiff believes almost half the settlement class will be compensated in this manner. Moreover, settlement class members had the option of using a QR code or visiting the website directly to elect a different form of payment. More than 3,000 settlement class members did so. As a result, the Court believes the current plan of allocation will lead more than half of the settlement class to receive compensation.

### 4. Objections

Three individuals submitted objections – Ben Lehr, Jennifer Williams, and Keira Molter.

---

[1] Plaintiff objects to the characterization of two of the letters received as true objections. Regardless, even if the Court were to disagree, it finds that three objection letters received out of a settlement class of this size still deems to the overall class reaction "overwhelmingly positive."

(Dkt. No. 84-1, Ex. B.) The Court has considered all objections and overrules them for the reasons stated on the record at oral argument, and as further explained below. The Court addresses each objector's arguments in turn.

Objector Ben Lehr filed an objection indicating opposition to the plan because: plaintiff has not proven any wrongdoing, the settlement's distribution of the same payment to each class member is inequitable to class members who would have had to pay more to defendants as a result of the alleged wrongdoing, and the attorneys' fees are excessive. Plaintiff first notes in response that most class actions settle precisely "to avoid definitively adjudicating liability." (*Dkt. No. 84* at 3.) Second, plaintiff notes the objection about an inequitable settlement is somewhat at odds with the first objection, but that in any event, Mr. Lehr neither provides an alternate proposal for distribution of the settlement nor addresses class counsel's arguments as to why the risks of further litigation are outweighed by the proposed settlement. *Id.* Finally, plaintiff notes that Mr. Lehr's objection to the attorneys' fees is generalized and does not explain the basis for the objection. *Id.* Because this objection does not respond to the arguments by both parties in support of the adequacy of the settlement, the Court finds it is merely a generalized objection and it is overruled.

Objector Jennifer Williams filed an objection on the grounds that she feels the lawsuit is unnecessary. Plaintiff responds that this statement, without more, "does not bear on the fairness, reasonableness, or adequacy of the Settlement." *Id.* at 2. Because this objection does not explain the basis for its disapproval with the settlement, it is overruled.

Objector Kiera Molter filed an objection on the grounds that she has been unable to speak with a live person from Kroll in her desire to learn more about the lawsuit and the settlement. She further objects that the provided website and telephone number are not informative enough. Plaintiff responds that the statement is not an objection in itself, as Ms. Molter indicates in her letter she was still trying to decide whether to opt out or not. Further, plaintiff notes that Kroll left Ms. Molter several voicemails that Ms. Molter never returned. (*Id.*) Because this objection does not in itself identify any specific reason to oppose the settlement, and multiple attempts were made ot reach her, it is overruled.

### 5. *Other Findings*

**Notice to Government Agencies (CAFA):** The parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). (Dkt. No. 81-1 at 2.) Kroll confirmed that notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d). *See* (Dkt. 81-1, Ex. A.)

### *6.      Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The following persons are excluded from the Settlement Class: officers, directors, and employees of Allstate; the judge overseeing the proposed settlement and the judge's immediate family; and all persons who timely excluded themselves from the Settlement Class, as identified in **Exhibit B** hereto.

The *cy pres* recipient, the Center for Auto Safety is **APPROVED**. The entity is sufficiently related to the goals of the underlying litigation and there is no conflict with plaintiff or counsel.

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS INCENTIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $7,500,000. Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to approximately 30% of the total settlement amount. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth

Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

One objector challenges the proposed attorneys fee amount as "excessive" but does not provide details on why they believe the proposed feed to be so. *See* (Dkt. No. 84-1, Ex. B.) Using the lodestar method, the Court finds the attorneys' fees sought to be reasonable. The Court has also considered a cross-check using the percentage-of-the-fund method.

While the Court does not generally approve a 30% award, this case is unique in several

respects. First, plaintiff's counsel has spent a far above-average amount of time on this matter. Over the last nearly eight years, counsel has devoted many hours to thoroughly litigating nearly every aspect of this case. Second, with automatic payments set to be distributed, plaintiff's counsel has negotiated a settlement that will likely ensure payments reach over 50% of the settlement class. Finally, despite the fee representing slightly more than the typical 25% benchmark, the lodestar multiplier for the requested fee is 1.2, which, as plaintiff notes in her motion, is lower than many other attorneys fee awards granted by other courts in this district.

The lodestar figure is 6,800 hours at rates between $500 and $1075 for lawyers depending on seniority, and between $325 and $395 for paralegals, for a total of $6,134,091.25. Plaintiff's counsel claims hourly rates that are commensurate with their experience and with the legal market in this district. On the basis of these reasonable hourly rates and amounts, class counsel calculates the lodestar to be $6,134,091.26. Applying that figure to the requested fee of $7,500,000, the lodestar multiplier is 1.2. The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market. The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $7,500,000 to be fair, reasonable, and adequate.

**B.    Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $345,238.33. The Court finds this amount reasonable, fair, and adequate.

**C.    Incentive Award**

11

1    The district court must evaluate named plaintiff's requested award using relevant factors
including "the actions the plaintiff has taken to protect the interests of the class, the degree to
which the class has benefitted from those actions . . . [and] the amount of time and effort the
plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are
discretionary . . . and are intended to compensate class representatives for work done on behalf of
the class, to make up for financial or reputational risk undertaken in bringing the action, and,
sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 1,210,254 others, with very little personally to gain. Plaintiff was deposed, compiled documents, and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs.  Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the requested incentive award payment for plaintiff Andrea Stevenson.

### IV.  CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $7,500,00 in attorneys' fees and $345,238.33.in litigation costs. Plaintiff Andrea Stevenson is granted an incentive award of $5,000.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on December 4, 2024, and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **April 25, 2025.** The Court sets a compliance deadline on **May 2, 2025** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 81, 82.

Dated: May 28, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**